States. Since 1913 the Mormon Church has used the Scouting program as an integral part of its ministry to boys and young men.  Scouting is the exclusive youth activity for males in the Mormon Church.

5.    The Mormon Church knew or should have known that HANSON was a dangerous child molester yet for at least fifteen years repeatedly put him in to positions that gave him access to young boys, dozens of whom he raped and sodomized.

6.    HANSON was known by church authorities to be a sexual offender with children while he was still a teenager.

7.    In approximately 1986, HANSON was a scout leader in a ward of the Mormon church in Provo, Utah.  In his capacity as LDS ward scout leader, HANSON sexually abused DC, RS, and MD, in Utah.

8.    HANSON was subsequently arrested and charged with multiple counts of attempted forcible sodomy and aggravated sexual abuse of a child in Utah County, Fourth Judicial District, State of Utah, Criminal No. 87-72.

9.    Hanson pleaded guilty to reduced charges of Lewdness Involving a Child in October 1987.

10.    Robert O. Hansen was HANSON'S ward bishop in 1987.   Robert O. Hansen was aware of specific allegations against Hanson, yet spoke as a character witness and argued for leniency at the sentencing hearing. He told the court that HANSON was not a child molester. Hansen told the court that HANSON had merely exercised bad judgment. HANSON was sentenced to probation and therapy.

-5-

Dockets.Justia.com

11. On information and belief, HANSON failed to complete court ordered sexual deviancy therapy. Instead, Hanson moved to Texas in 1988 and joined an LDS ward in Dallas.

12. Bishop Robert O. Hansen informed the bishop of the Dallas LDS ward about HANSON'S criminal law problems in Utah. Notwithstanding HANSON'S known sexual abuse of boys in Utah, church officials in Texas put HANSON in church positions working with youth in the ward.

13. HANSON moved to West Lafayette, IN, in approximately 1989, and joined a local ward of the LDS church.

14. In Indiana, HANSON became a scout leader in the local LDS ward. Through his position as ward scout leader, HANSON befriended a church member's family. HANSON began grooming and later sexually abusing their son, PM. HANSON abused PM on scout camp outings in multiple locations including Indiana, Arkansas and Iowa.

15. HANSON moved to Reston, Virginia, and then to Beaumont, Texas. In Texas, HANSON joined the local ward of the Mormon church and again was put into the church's scouting program. In Beaumont, HANSON abused more boys, including DB.

16. HANSON moved to Waukesha, Wisconsin, in approximately 1995. He joined the local ward of the Mormon church. The church put him in charge of the Blazers, younger scouts ages 11 to 12. The church also made him Young Men's Leader. In those positions, HANSON sexually abused more boys in Wisconsin including BH.

17. HANSON moved to Warren County, New Jersey, in approximately 1998, and joined the Ledgewood ward of the Mormon Church. Church authorities again put HANSON into

-6-

scouting and youth leadership positions. In those positions, HANSON raped Plaintiff DAVID

V. AMES, a minor at that time, on hundreds of occasions and in multiple locations including

Warren, Morris and Middlesex counties, New Jersey, as well as other locations throughout the

United States and Canada.

18.  HANSON also brought BH from Wisconsin to New Jersey on his vacations and

repeatedly sexually assaulted BH in New Jersey.

19.  Despite being placed in scouting leadership positions in Mormon church wards in

Texas, Indiana, Wisconsin and New Jersey, Mormon Church officials never registered HANSON

with the Boy Scouts of America.

20.  In 2000, HANSON was arrested and charged with 42 counts of aggravated child sexual

abuse in Warren County, New Jersey.

21.  In 2001, HANSON pleaded guilty and was sentenced to multiple concurrent sentences

of 15 to 30 years.

22.  In 2004, HANSON was sentenced to a consecutive 40 year term of imprisonment in

Waukesha County, Wisconsin.

### FIRST COUNT
### SEXUAL BATTERY AND VIOLATION OF N.J.S.A. 2A:61B-1

1.  Plaintiff incorporates by reference the allegations contained in all preceding paragraphs

of this Complaint as if fully set forth herein under this Count.

-7-

2.    At all times material hereto, the Plaintiff, David V. Ames, was a minor and a resident of the State of New Jersey. He was a member of the Church of Jesus Christ of Latter-Day Saints and attended the Mormon Church ward in Ledgewood, New Jersey.

3.    At all times relevant hereto, specifically in or about 1998 through 2000, HANSON sexually raped, molested, battered and fondled said minor child by subterfuge, duress and force. These acts complained above constitute violation of N.J.S.A. 2A:61B-1 *et seq.*

4.    As a direct and proximate result of the conduct described hereinabove, Plaintiff David V. Ames has suffered and will continue to suffer physical and emotional pain and dysfunction to his general, non-economic damage in an amount to be determined.   As a further result of the sexual abuse, Plaintiff, DAVID V. AMES has incurred and/or will continue to incur costs for counseling and psychological treatment, and has lost earning capacity to his damage in an amount to be proved at trial.

WHEREFORE, Plaintiff, David V. Ames, hereby demands judgment against Defendant WILLIAM SCOTT HANSON for compensatory and punitive damages, interest, costs of suit, attorneys' fees, and such other relief as the court or jury may deem proper.

## SECOND COUNT
## NEGLIGENCE AND BREACH OF FIDUCIARY DUTY

1.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

-8-

2.    Defendant COP had a "special relationship" with Plaintiff and with HANSON. Knowing that HANSON was a pedophile that was abusing children, Defendant had a duty to warn or protect foreseeable victims, including Plaintiff.

3.    Furthermore, at all relevant times, the Mormon Church's bishops, stake presidents, scout leaders and Defendant COP's hierarchal officials were all mandatory child abuse reporters pursuant to N.J.S.A. 9:6-8 *et seq.*

4.    COP, through its officials and other Mormon Church leaders, breached both a statutorily mandated duty and a duty of reasonable care by failing to report their knowledge of HANSON's sexual abuse of children to civil authorities and the parents of minor children members of the Ledgewood Mormon Stake..

5.    But for the breach of duty, acts, omissions and deceit of Defendant, COP, HANSON would not have been able to abuse Plaintiff, DAVID V. AMES because HANSON would have been arrested, prosecuted and convicted or would have been in prison or under an order of supervision or would otherwise have been publicly identified as a child molester.

6.    Moreover, Defendant COP adopted guidelines for handling victims of child sexual abuse and sex offenders.  Plaintiff, DAVID V. AMES, is of the class of people whom the guidelines were designed to protect. The harm Plaintiff, DAVID V. AMES, suffered as a result of Defendant COP's negligence was the harm contemplated in Defendant COP's Handbook of Instruction to clergy.

7.    Notwithstanding Defendant COP's duty, it failed to train and supervise its hierarchal clergy in the proper implementation of its guidelines, policies and procedures regarding the

-9-

treatment of victims of child sexual abuse, to monitor and insure compliance with their guidelines, policies and procedures, treatment of child sexual abusers and reporting of child sexual abuse.

8.    Defendant COP knew, or in the exercise of reasonable care should have known, that its failure to warn appropriate law enforcement or child protective services agencies about HANSON or to warn foreseeable victims and church members.

9.    As a result of the molestation and breach of trust, Plaintiff, DAVID V. AMES, has suffered and will continue to suffer physical and emotional pain and dysfunction to his general, non-economic damage in an amount to be determined.   As a further result of the sexual abuse, Plaintiff, DAVID V. AMES has incurred and/or will continue to incur costs for counseling and psychological treatment, and has lost earning capacity to his damage in an amount to be proved at trial.

10.    Defendant COP's conduct was the result of a willful, reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the health, safety and welfare of Plaintiff.   Defendant COP's conduct is socially intolerable and Plaintiff gives notice of intent to seek exemplary damages.

WHEREFORE, Plaintiff, David V. Ames, hereby demands judgment against Defendant COP for compensatory and punitive damages, interest, costs of suit, attorneys' fees, and such other relief as the court or jury may deem proper.

-10-

## THIRD COUNT
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1.  Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

2.  Defendant COP knew that many children had been sexually molested as a result of its bishops, stake president and other agents having previously failed to report child sexual abuse to civil authorities.

3.  Defendant COP further knew or should have known that it was substantially certain that HANSON would continue to sexually abuse children, including Plaintiff, if it failed to warn parents or failed to report HANSON to civil authorities and that such abuse would result in severe emotional distress to the Plaintiff.

4.  Defendant COP's conduct was an outrageous violation of societal norms and went so far beyond all possible bounds of decency, so as to be regarded as atrocious, and utterly intolerable in a civilized community, and resulted in severe emotional distress.

5.  By permitting HANSON to continue as aforesaid, Defendant COP directed extreme and outrageous conduct toward the Plaintiff in a fashion intended to produce emotional distress, or recklessly in deliberate disregard of a high degree of probability that emotional distress would follow.

6.  As a further result of the sexual abuse, Plaintiff has incurred and/or will continue to incur costs for counseling and psychological treatment, and has lost earning capacity to his damage in an amount to be proved at trial. As a result of the Defendant COP's conduct, Plaintiff

-11-

has suffered and will continue to suffer physical and emotional pain and dysfunction to his general, non-economic damage in an amount to be proved at trial.

WHEREFORE, Plaintiff, David V. Ames, hereby demands judgment against Defendant COP for compensatory and punitive damages, interest, costs of suit, attorneys' fees, and such other relief as the court or jury may deem proper.

## FOURTH COUNT
### EMPLOYER LIABILITY FOR EMPLOYEE'S/AGENT'S ACTS ADMINISTRATIVE NEGLIGENCE AND RESPONDEAT SUPERIOR

1.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

2.    Defendant COP is vicariously and/or directly liable for compensatory and punitive damages since it knew, or had reason to know of the particular unfitness, incompetence, and/or dangerous attributes of HANSON and could reasonably have foreseen that such qualities created a risk of harm to other persons and in particular this Plaintiff whose injuries were proximately caused by HANSON'S characteristics as aforesaid.

3.    Defendant COP is liable for punitive damages in addition to compensatory damages since HANSON'S conduct and characteristics were especially egregious and Defendant COP participated in the conduct as an enabler, by demonstrating willful indifference and by subsequently ratifying HANSON'S intentional acts against Plaintiff by Defendant COP's continued relationship with HANSON as High Priest, Scout leader and Young Men's Leader in New Jersey.

-12-

4.    As a further result of the sexual abuse, Plaintiff has incurred and/or will continue to incur costs for counseling and psychological treatment, and has lost earning capacity to his damage in an amount to be proved at trial. As a result of the Defendant COP's conduct, Plaintiff has suffered and will continue to suffer physical and emotional pain and dysfunction to his general, non-economic damage in an amount to be proved at trial.

WHEREFORE, Plaintiff, David V. Ames, hereby demands judgment against Defendant COP for compensatory and punitive damages, interest, costs of suit, attorneys' fees, and such other relief as the court or jury may deem proper.

### FIFTH COUNT
### CONSPIRACY

1.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as if fully set forth herein under this Count.

2.    Defendant COP, by and through its agents and representatives, agreed or otherwise conspired to cover up incidents of sexual abuse of minors by Melchizedek priests and scout leaders and to prevent disclosure, prosecution and civil litigation including, but not limited to: failure to report incidents of abuse to law enforcement or child protection agencies; denial of abuse it had substantiated; aiding criminal child molesters in evading detection, arrest and prosecution; allowing them to cross state and international borders for purposes of gaining access to uninformed parents whose innocent children could be sexually abused; failure to warn; and by failure to seek out and redress the injuries its priests and scoutmasters had caused. Based on these actions, Defendants COP, HANSON, and other unnamed subordinate agents and

-13-

representatives of COP, all or some of whom owing an independent duty to warn/protect the Plaintiff from sexual abuse, conspired for the unlawful purpose of concealing and suppressing information on the danger and threat that its priests posed to unsuspecting children, including the Plaintiff.

3.    As a further result of the sexual abuse, Plaintiff has incurred and/or will continue to incur costs for counseling and psychological treatment, and has lost earning capacity to his damage in an amount to be proved at trial. As a result of the Defendant COP's conduct, Plaintiff has suffered and will continue to suffer physical and emotional pain and dysfunction to his general, non-economic damage in an amount to be proved at trial.

WHEREFORE, Plaintiff, David V. Ames, hereby demands judgment against Defendant COP for compensatory and punitive damages, interest, costs of suit, attorneys' fees, and such other relief as the court or jury may deem proper.

DATED: July 25, 2006

ROSS & RUBINO, LLP

BY: _____
Stephen C. Rubino
Attorneys for Plaintiff

-14-

## JURY DEMAND

Plaintiff, DAVID V. AMES, hereby demands a trial by jury as to all Counts contained herein.

DATED: July 25, 2006

ROSS & RUBINO, LLP

BY:

Stephen C. Rubino
Attorneys for Plaintiff

-15-

EXHIBIT 6

Exhibit____ Page 362

# Ross & Rubino, LLP

## Attorneys at Law

Stephen C. Rubino

Edward J. Ross*

Deborah Anniello*

Jonathan L. Ross**

*Member NJ and PA Bar
**Member NY Bar
LL.M. - Taxation

8510 Ventnor Avenue
Margate, New Jersey 08402
(609) 487-9864

FAX (609) 487-8398

scr@rossandrubino.com

February 21, 2006

Westmont Office
Sentry Office Plaza - Suite 100
216 Haddon Avenue
Westmont, NJ 08108
(856) 365-0500

Pennsylvania Office
P.O. Box 471
Fort Washington, PA 19034
(215) 627-1106

Reply to Margate Office

**WITHOUT PREJUDICE.  FOR SETTLEMENT DISCUSSIONS ONLY**

*Via UPS Next Day Air*
Office of General Counsel
Church of Jesus Christ of Latter-day Saints
50 East North Temple Street
2nd Floor, West Wing - 2WW
Salt Lake City, UT 84150

Von Keetch, Esquire
Kirton & McConkie
1800 Eagle Gate Tower
60 East South Temple Street
Salt Lake City, UT 84150

Re:    **David Victor Ames**

> *"There'll be a blip here, a blip there. A mistake here, a mistake there. But by and large, the welfare of women and children is as seriously considered as is the welfare of the men in this church, if not more so. We're working very hard at it. There are cases. They're everywhere. They're all over this world. It is a disease. It's an illness. It's a sickness. It's a reprehensible and evil thing. We recognize it as such."*
>
> *Gordon B.  Hinckley, President*
> *The Church of Jesus Christ of Latter-day Saints*

Gentlemen:

I along with <u>Timothy D.  Kosnoff</u> and <u>Michael T.  Pfau</u>, represent David Ames who was sexually assaulted by William Scott Hanson.  Mr.  Ames was a minor throughout the duration of the

EXHIBIT 7

1
2
3
4
5
6
7
8
9

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

10

11   "JANE DOE" (a pseudonym),
12   and MICHAEL F. OSBORNE, on behalf of
     "REBECCA DOE" (a pseudonym), a minor,

**02- 2 - 0 4 1 0 5 - 1 KNT**

13                          Plaintiffs,

COMPLAINT

14   vs.

(Sexual Abuse of a Child;
Negligence and Breach of
Fiduciary Duty;
Intentional Infliction
of Emotional Distress)

15   THE CORPORATION OF THE
16   PRESIDENT OF THE CHURCH OF JESUS
     CHRIST OF LATTER-DAY SAINTS, a
17   UTAH CORPORATION SOLE, aka the
     "MORMON CHURCH" and
18   "JOHN ROE" (a pseudonym),

NOT SUBJECT TO
MANDATORY ARBITRATION

19                          Defendants.

20

21

22                        I. GENERAL ALLEGATIONS

23                             PARTIES:

24                                1.

25

26   Plaintiff JANE DOE (whose identity is made known to all defendants by separate

27   cover letter) is an adult having attained the age of majority on April 15, 1999, and all

28   times relevant hereto was, and now is a resident of the State of Washington.

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 1

Timothy D. Kosnoff Law Offices, P.C.
800 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-3070 Fax (425) 837-9692
Internet: timkosnoff@attbi.com

02/11/2002 14:28 FAX

2.

Plaintiff MICHAEL F. OSBORNE, is the duly appointed guardian ad litem for REBECCA DOE, (a pseudonym), a minor. Both OSBORNE and REBECCA DOE are and were residents of the State of Washington at all times relevant hereto. JANE DOE and REBECCA DOE are sisters.

3.

Defendant JOHN ROE, (a pseudonym used to protect the identity of plaintiffs but whose identity is made known to all defendants) (hereinafter "ROE") was the stepfather of Plaintiffs JANE DOE and REBECCA DOE, minor children, and as such, was in a position of parenthood and trust with respect to them.

4.

At all relevant times, Plaintiffs were members of the Church of Jesus Christ of Latter-day Saints, also known as the "Mormon Church." ROE was also a member of the Mormon Church, a "High Priest" and the High Priest Group Leader within the Mormon Church Federal Way Stake. As such, he was subject to the control and discipline of the Church.

5.

Defendant ROE is presently incarcerated in the Washington State Department of Corrections.

6.

Defendant CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, also known as the Mormon Church, operates its worldwide affairs as the Corporation of the President of the Church of Jesus Christ of Latter-day Saints and Successors, a Utah Corporation Sole ("COP"). COP is a corporation governed by a single individual, the "President" of the Mormon Church. The President wields ultimate and absolute authority within the Mormon Church. The acts of the President, in his capacity as head of the Mormon Church, are the acts of COP. COP is registered to do business

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 2

Timothy D. Kosnoff Law Offices, P.C.
800 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-3070 Fax (425) 637-9692
Internet: tlmkosnoff@attbi.com

1 within, and conducts continuous and systematic activities within, the State of
2 Washington.

3                                      7.

4 COP administers the Mormon Church through a multi-level structure. At the local
5 level are "wards," consisting of a geographic area administered by a "bishop." An
6 average size ward would have approximately 250 families. Several wards are
7 grouped into a "stake," which is administered by a "stake president." Stakes are, in
8 turn, grouped into "areas," which are administered by an "area president." All
9 bishops, stake presidents, and area presidents are answerable, directly or indirectly,
10 to COP and are its agents and servants. The wards, stakes and areas of the Mormon
11 Church are instruments of COP and are not separate corporate entities. At all
12 relevant times, LDS Social Services (LDSSS), was a Mormon Church-run social
13 service organization and was an agent of COP.

14                                     8.

15 Plaintiffs allege that at all times relevant hereto, the acts and events complained of
16 occurred in King County, Washington.

17                                     9.

18                         JURISDICTION AND VENUE

19 That the subject matter hereof and the parties hereto, is subject to the jurisdiction of
20 the above-entitled court; and that venue is proper;

21                                   FACTS

22                                     10.

23 Adherents of the Mormon faith who have been baptized into the Church are known
24 as "members." COP has the power to limit or restrict the capacity in which any
25 member serves the Church, and may place such conditions on a member's service as
26 may be in the interests of the Church and of its members and prospective converts.

27                                     11.

28 Adult male members of the Church are eligible to be ordained as a "Priest." There

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 3

Timothy D. Kosnoff Law Offices, P.C.
800 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-3070 Fax (425) 837-9692
Internet: timkosnoff@attbi.com

Exhibit ___ Page 367

1  are various levels of priesthood, including elevation to the position of "High Priest."
2  A High Priest is held out by the Mormon Church as someone who is "morally
3  worthy" and deserving of the trust of its members. At all relevant times, the
4  Mormon Church assumed special responsibilities toward its members
5  including a system of disciplinary action meant to identify sexual predators and
6  other dangerous individuals within the membership in order to protect innocent
7  members from harm they might inflict.

8                                   12.

9  Ward bishops provide counseling of both a pastoral and non-pastoral nature to
10  members. Bishops have "comprehensive pastoral and administrative
11  responsibility" at the ward level, including providing "assistance to the needy" and
12  counseling members who "have problems and questions." COP directs its bishops
13  to "know [their] members well and ... understand the circumstances that cause their
14  problems."

15                                   13

16  It is the policy of the COP that members should bring their problems and questions
17  to the church and to "consult freely with their bishops and receive from them the
18  counsel they need."

19                                   14.

20  Beginning in approximately 1988 and continuing through approximately 1998,
21  Defendant ROE subjected Plaintiff JANE DOE to countless of acts of childhood
22  sexual abuse which acts were also violations of chapter 9A.44 RCW or RCW 9.68A.040
23  or prior laws of similar effect at the time the acts were committed.

24                                   15.

25  In approximately 1993, JANE DOE complained to her family's ward bishop that she
26  was being sexually abused by ROE. JANE DOE met with the bishop who questioned
27  her at length about the details of the abuse.

28                                   16.

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 4

Timothy D. Kosnoff Law Offices, P.C.
800 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-3070 Fax (425) 837-9692
Internet: timkosnoff@atltbl.com

1   Shortly thereafter, the ward bishop met with ROE in the bishop's office at the ward
2   chapel. The two men discussed JANE DOE'S disclosures regarding the abuse.  ROE
3   admitted to the bishop that he had sexually abused JANE DOE.

                                            17.

5   After meeting with ROE , the bishop arranged a separate meeting at the church with
6   ROE and the plaintiffs' mother. The bishop led JANE DOE to believe he had called
7   the meeting to tell JANE DOE'S mother about ROE'S abuse of her. The bishop
8   excluded JANE DOE from the meeting and directed her to remain outside his office
9   in the hall during the meeting.

                                            18.

11  The bishop, however, failed to inform plaintiffs' mother that ROE was sexually
12  abusing her daughter. Instead, the bishop pretended to know nothing about the
13  abuse of JANE DOE and  that the purpose of the meeting was to discuss why JANE
14  DOE and ROE "were not getting along at home." By this deception, the bishop led
15  JANE DOE to believe that her mother knew about the abuse but did not care enough
16  about her to protect her. Consequently, JANE DOE was made to feel ashamed,
17  humiliated and too frightened to tell anyone else about the abuse.

                                            19.

19  The bishop failed and refused to report the child abuse to the police or civil
20  authorities knowing, or having reason to know, that JANE DOE was being sexually
21  abused and that there were other minor children in the home at risk from abuse by
22  ROE.

                                            20.

24  As a direct and immediate consequence of the bishop's and COP's deceit, failure to
25  warn, report or protect JANE DOE from ROE, JANE DOE was made to endure the
26  sexual abuse of her stepfather for the next five years.

                                            21.

28  Beginning soon after JANE DOE'S disclosures of ROE'S abuse to COP and the

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 5

Timothy D. Kosnoff, Law Offices, P.C.
600 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-S070 Fax (425) 637-9692
Internet: timkosnoff@attbi.com

1  bishop in approximately 1993 and continuing through approximately 1998,
2  Defendant ROE subjected Plaintiff REBECCA DOE to acts of childhood sexual abuse
3  which acts were also violations of chapter 9A.44 RCW or RCW 9.68A.040 or prior
4  laws of similar effect at the time the acts were committed. As described above, the
5  abuse of JANE DOE and REBECCA DOE was ongoing, persistent and involved
6  countless, separate and individual instances of abuse.

7                                    22.

8  In 1998, JANE DOE disclosed ROE'S abuse to a close friend. That friend notified
9  church officials of ROE'S abuse of JANE DOE. Sometime between 1993 and 1998,
10 defendant COP had installed a new bishop for the Federal Way ward. Church
11 officials notified the new bishop, who immediately informed ROE of JANE DOE'S
12 disclosures. The bishop, however, never notified JANE DOE'S mother.

13                                   23.

14 The bishop did, however, call JANE DOE into his office and discouraged her from
15 reporting the abuse to the police. The bishop failed and refused to report the abuse
16 to the police or child welfare authorities.

17                                  24.

18 Finally, on or about November 1998, JOHN ROE told plaintiffs' mother about ROE'S
19 sexual abuse of JANE DOE. Upon learning of the abuse for the first time, Plaintiffs'
20 mother acted promptly to get ROE out of the family's home and initiated divorce
21 proceedings shortly thereafter.

22                                  25.

23 Stake President Mitchell contacted Plaintiffs' mother and directed that JANE DOE
24 go to LDS Social Services, a church-run social service agency, for "therapy."
25 Mitchell represented to JANE DOE and her mother that church officials would get
26 the matter reported to civil authorities.

27                                  26.

28 In approximately 1999, at the direction of Stake President Mitchell, JANE DOE
   COMPLAINT FOR PERSONAL INJURIES
   IN TORT ( CHILD SEXUAL ABUSE
   AND NEGLIGENCE ) - 6

                        Timothy D. Kosnoff Law Offices, P.C.
                          800 Bellevue Way N.E., Suite 300
                           Bellevue, Washington 98004
                        (425) 837-3070 Fax (425) 837-9692
                          Internet: timkosnoff@attbi.com

02/11/2002 14:31 FAX

1  discussed her abuse with LDS Social Services therapist Tonya Singleton.

2                                    27.

3  COP, Stake President Mitchell, both of the Federal Way ward's bishops and LDS

4  Social Services therapist Tonya Singleton all failed and refused to report the abuse

5  to civil authorities.  In approximately December 1999, REBECCA DOE disclosed her

6  abuse to her mother. Finally, in approximately January 2000, upon realizing that

7  church officials had lied to and deceived them about reporting the matter to civil

8  authorities, Plaintiffs' mother reported the abuse to the police. ROE was

9  subsequently arrested and charged with multiple counts of felony child sexual

10  abuse.

11                                   28.

12  As a direct result of ROE'S abuse and the acts and/or omissions of COP and its

13  agents, Plaintiffs have suffered, and continue to suffer great pain of mind and body,

14  shock, emotional distress, physical manifestations of emotional distress,

15  embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of

16  life; were prevented and will continue to be prevented from performing their daily

17  activities and obtaining the full enjoyment of life; have sustained loss of earning s

18  and earning capacity; and have incurred and will continue to incur expenses for

19  medical and psychological treatment, therapy, and counseling.

20                        II. FIRST CAUSE OF ACTION
                              (Child Sexual Abuse)
21                                 ROE only

22  Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth under this

23  count and further alleges:

24                                   29.

25  Between 1988 and 1998, ROE engaged in unpermitted and harmful sexual contact

26  and abuse upon the persons of both plaintiffs.

27                                   30.

28  As a direct result of the sexual abuse and sexual exploitation and breach of trust,

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 7

Timothy D. Kosnoff Law Offices, P.C.
800 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-3070 Fax (425) 837-9692
Internet timkosnoff@attbi.com

1    each plaintiff has suffered and will continue to suffer physical and emotional pain

2    and dysfunction to her general, non-economic damage in an amount to be

3    determined. As a further result of the molestation, each plaintiff has incurred

4    and/or will continue to incur costs for counseling and psychological treatment, and

5    has lost earning capacity to her damage in an amount to be proved at trial.

6                          31.

7    ROE'S conduct was the result of a wilful, reckless and outrageous indifference to a

8    highly unreasonable risk of harm and a conscious indifference to the health, safety

9    and welfare of plaintiffs. ROE's conduct is socially intolerable and plaintiffs give

10    notice of intent to seek an award of punitive damages.

11

12             **III. SECOND CAUSE OF ACTION**

13         (Negligence and Breach of Fiduciary Duty)
                   COP only

14    Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth under this

15    count and further alleges:

16                      32.

17    Defendant COP had a "special relationship" with plaintiffs and with ROE.

18    Knowing that ROE was a pedophile who was actively abusing JANE DOE, COP had

19    a duty to warn Plaintiffs' mother and otherwise protect plaintiffs from sexual abuse

20    by ROE.

21                      33.

22    Furthermore, at all relevant times, the Mormon Church's bishops, stake presidents

23    and LDS Social Services therapists were all mandatory child abuse reporters

24    pursuant to R.C.W. 24.44.

25                      34.

26    The Mormon Church's bishops, stake presidents and therapist within the State of

27    Washington breached both a statutorily proscribed duty and a duty of reasonable

28    care by failing to report their knowledge of ROE'S sexual abuse of Plaintiffs.

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 8

Timothy D. Kosnoff Law Offices, P.C.
800 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-3070 Fax (425) 837-9692
Internet: timkosnoff@attbi.com

35.

But for the breach of duty, acts, omissions and deceit of COP, church bishops, stake presidents and area presidents, ROE would not have been able to continue to abuse JANE DOE and would never have been able to abuse REBECCA DOE.

36.

Moreover, COP adopted guidelines for handling victims of child sexual abuse and sex offenders. Plaintiffs are of the class of people whom the guidelines were designed to protect. The harm Plaintiffs suffered as a result of Defendant's negligence was the harm contemplated in Defendant's handbook.

37.

Notwithstanding Defendant COP's duty, it failed to train and supervise its hierarchal clergy in the proper implementation of its guidelines, policies and procedures regarding the treatment of victims of child sexual abuse, to monitor and insure compliance with their guidelines, policies and procedures, treatment of child sexual abusers and reporting of child sexual abuse.

38.

Defendant COP knew, or in the exercise of reasonable care should have known, that its failure to report ROE'S sexual abuse to appropriate law enforcement or social services agencies or to notify Plaintiffs' mother would result in ROE'S continued sexual abuse of JANE DOE and the commencement of sexual abuse of REBECCA DOE.

39.

As a result of the molestation and breach of trust, each plaintiff has suffered and will continue to suffer physical and emotional pain and dysfunction to her general, non-economic damage in an amount to be determined. As a further result of the sexual abuse, each plaintiff has incurred and/or will continue to incur costs for counseling and psychological treatment, and has lost earning capacity to her damage in an amount to be proved at trial.

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 9

Timothy D. Kosnoff Law Offices, P.C.
800 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-3070 Fax (425) 837-9692
Internet: timkosnoff@attbi.com

02/11/2002 14:33 FAX                                                    ☑018

40.

COP's conduct was the result of a wilful, reckless and outrageous indifference to a highly unreasonable risk of harm and a conscious indifference to the health, safety and welfare of plaintiffs. COP's conduct is socially intolerable and plaintiffs give notice of intent to seek an award of punitive damages.

III. THIRD CAUSE OF ACTION
(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)
ROE and COP

Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth under this count and further alleges:

41.

Defendants knew that many children had been sexually molested as a result of its bishops, stake president and other agents having previously failed to report child sexual abuse to civil authorities.

42.

Defendants further knew that it was substantially certain that ROE would continue to sexually abuse JANE DOE and begin abusing REBECCA DOE if it failed to warn plaintiffs' mother or failed to report ROE to civil authorities and that such abuse would result in severe emotional distress to the plaintiffs.

43.

Defendants' conduct was an outrageous violation of societal norms and went so far beyond all possible bounds of decency, so as to be regarded as atrocious, and utterly intolerable in a civilized community, and resulted in severe emotional distress.

44.

As a further result of the sexual abuse, each plaintiff has incurred and/or will continue to incur costs for counseling and psychological treatment, and has lost

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 10

Timothy D. Kosnoff Law Offices, P.C.
800 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-3070 Fax (425) 637-9692
Internet: timkosnoff@attbi.com

Exhibit____ Page 374

1   earning capacity to her damage in an amount to be proved at trial. As a result of the

2

3   defendants' conduct, plaintiffs have suffered and will continue to suffer physical

4

5   and emotional pain and dysfunction to their general, non-economic damage in an

6

7   amount to be proved at trial.

8                                           45.

9

10  Plaintiffs give notice of intent to seek an award of punitive damages.

11

12                                        PRAYER

13  PLAINTIFFS PRAY for judgment against defendants, and each of them, as follows:

14

15      a)  For an amount commensurate with Plaintiffs' injuries, including all

16      special and general damages, to be determined at the time of trial, and

17      punitive damages;

18

19      b)  For Plaintiff's costs and disbursements herein;

20

21      c)  For Plaintiff's pre-judgment interest on all liquidated amounts.

22      d)  For Plaintiff' attorney's fees; and

23

24      e)  For such other, further and different relief as the court deems just and

25      equitable.

26  Dated this 6th day of February, 2002.

27

28  TIMOTHY D. KOSNOFF, WSBA No. 16586
    Attorney for Plaintiffs

COMPLAINT FOR PERSONAL INJURIES
IN TORT ( CHILD SEXUAL ABUSE
AND NEGLIGENCE ) - 11

Timothy D. Kosnoff Law Offices, P.C.
800 Bellevue Way N.E., Suite 300
Bellevue, Washington 98004
(425) 637-3070 Fax (425) 837-9692
Internet: timkosnoff@attbi.com

Exhibit___ Page 375

FILED

2007 JAN 11  PM 4: 50

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE. WA.

The Honorable William L. Downing

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| | |
|---|---|
| ROB RINDE f/k/a ROBERT LARRY LEROY PITSOR, JR., | NO.  06-2-09825-1 SEA |
| Plaintiff, | CERTIFICATE OF SERVICE |
| v. | |
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, and the "MORMON CHURCH" THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an unincorporated association, | |
| Defendant. | |

The undersigned hereby certifies that on January 11, 2007, copies of the following

document:

1.   Notice for Hearing;
2.   Corporation of the President of the Church of Jesus Christ of Latter-day Saints' Motion to Dismiss and/or Motion for Summary Judgment;
3.   Declaration of Paul D. Rytting;
4.   Declaration of Michael Rosenberger;
5.   Proposed Order; and
6.   this Certificate of Service

CERTIFICATE OF SERVICE - 1

**GORDON MURRAY TILDEN LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

ORIGINAL

Exhibit _____ Page 376

were served at the following addresses via the methods indicated:

> Michael T. Pfau
> Michelle A. Menely
> Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim LLP
> 600 University, Suite 2100
> Seattle, WA  98101-4185
> Co-Counsel for Plaintiff Rob Rinde
> ( ) Mail      ( XX ) Hand Delivery        ( ) Via e-mail
> ( ) Fax       ( ) Federal Express

> Timothy D. Kosnoff
> Law Offices of Timothy D. Kosnoff
> One Union Square
> 600 University Street, Suite 2101
> Seattle, WA  98101
> Co-Counsel for Plaintiff Rob Rinde
> ( ) Mail      ( XX ) Hand Delivery        ( ) Via e-mail
> ( ) Fax       ( ) Federal Express

DATED this 11th day of January, 2007.

_Jacqueline Lucien_

Jacqueline Lucien

CERTIFICATE OF SERVICE - 2

Exhibit___ Page 377

FILED

2007 JAN 29  PM 5:05

... COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA.

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

ROB RINDE f/k/a ROBERT LARRY LEROY PITSOR, JR.,

Plaintiffs,

v.

THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF · LATTER-DAY SAINTS, a Utah corporation sole; and the "MORMON CHURCH" THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an unincorporated association,

Defendants.

NO. 06-2-09825-1 SEA

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

**NOTED FOR: FEBRUARY 9, 2007**
**11:15 A.M.**

**THE HONORABLE WILLIAM L. DOWNING**

## I.    INTRODUCTION

Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints' ("COP") Motion to Dismiss and/or Motion for Summary Judgment is an attempt to relitigate an issue previously argued and addressed by Judge Zilly on June 30, 2006. Furthermore, COP's allegations of "blatantly false misrepresentations" are nothing more than

PLAINTIFF'S MEMO IN OPP OF MOT TO DISMISS - 1 of 12
[175163 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
000 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit____ Page 378


ORIGINAL

hyperbole in an attempt to paint plaintiff's counsel in a negative light to this court. As discussed in more detail below, this Court should deny COP's motion for the following reasons: 1) COP's argument has already been briefed, considered, and addressed by Judge Zilly; 2) COP's argument that they are not "doing business" in the State of Washington is incorrect; and 3) COP's claim that the Church, "as a practical matter," cannot be sued is disingenuous, as the Church has sued and has been sued no less than 11 times.

## II. STATEMENT OF RELEVANT FACTS

### A. PROCEDURAL HISTORY.

#### (1) PLAINTIFF NAMED BOTH COP AND THE CHURCH IN THE ORIGINAL COMPLAINT.

Despite arguing otherwise, defendant is well-aware that plaintiff intended to name both COP and the Mormon Church itself in the Original Complaint.[1] In fact, that intention was the primary subject of plaintiff's Motion to Amend/Remand filed by plaintiff in the Federal District Court.[2]

COP's removal was based on its determination that plaintiff had named only one defendant – COP – and that complete diversity existed. As was discussed in detail in plaintiff's Motion to Amend/Remand, it was plaintiff's position (communicated to COP prior to the removal) that plaintiff had, indeed, named the Mormon Church as a defendant.[3] In ruling on the Motion to Amend/Remand, Judge Zilly did not agree that plaintiff had originally

---

[1] Declaration of Michelle a. Menely, Exhibit A.

[2] Plaintiff originally filed this action in this Court. Asserting that there was complete diversity, defendant removed the matter to Federal Court on April 19, 2006. *See* court file herein.

[3] At about the time COP appeared in this action, a telephone conversation occurred between plaintiff's counsel, Tim Kosnoff, and defense counsel, Chuck Gordon. During that conversation, defense counsel advised that it was COP's intention to remove the action to federal court. In response, Kosnoff, specifically advised Gordon that the Mormon Church, itself, was a named defendant and that diversity did not exist. *See,* Declaration of Tim Kosnoff, ¶2 (filed in support of Reply to Opposition to Motion to Amend/Remand (U.S.D.C. Dkt No. 9) attached as Exhibit B (without attachments) to the Declaration of Michelle A. Menely, filed herewith.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit___ Page 379

named the Mormon Church, but allowed plaintiff to amend, which amendment necessitated remand to this Court.[4]

### (2) Sequence of Events

Approximately five months **after** the briefing on the Motion to Amend/Remand was complete, counsel for the parties to this case began trying the case of *R.K. vs. Corporation of the President of the Church of Jesus Christ of Latter day Saints.*[5] In the week or two prior to the commencement of the trial, the parties exchanged proposed jury instructions – including the instruction in which COP admitted it "stands in the shoes of the Church."[6]

### III. Argument

### A. Events That Occurred After the Motion to Amend/Remand was Briefed Do Not Render Plaintiff's Assertions False.

COP's allegations of "blatantly false" misrepresentations by plaintiff are wholly incorrect. COP supports this offensive assertion by pointing to the language of a jury instruction in a separate case that was submitted approximately five months **after** the briefing was completed on the Motion to Amend/Remand in this matter. It is beyond dispute that a statement (or admission) made five months after a pleading was filed does not render statements in the original pleading "misrepresentations" or "blatant falsehoods." In this circumstance, defendant's assertion is disingenuous at best and, at worst, it is an attempt to poison this Court as to the veracity of plaintiff's counsel. Defendant's attempt should be disregarded.

---

[4] Menely Decl. at **Exhibit C.** Judge Zilly allowed Plaintiff to amend its Complaint and join the Mormon Church because – among other reasons – "[t]he absence of the Mormon Church as a named defendant could preclude Mr. Rinde from recovering damages for any fault attributable to the Mormon Church." *Id.* at 2:20-22. Despite defendant's allegation of "forum shopping" Judge Zilly declined to "impute an improper motive to Plaintiff." *Id.* at 3:1-2. If anyone is forum shopping, it is the Defendant, as this Motion is nothing but a back-door approach to attempt to circumvent Judge Zilly's June 30, 2006 ruling.

[5] The case was set for trial to commence on October 2, 2006. Menely Decl., ¶4.

[6] *Id.*

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Furthermore, defendant's assertion that it could not "rebut" this alleged falsehood is incorrect. Fed Civ. R. 7(g) provides the parties with an ability to file a sur-reply to strike materials contained in a reply brief. One would presume that defendant would have filed a Motion to Strike if they truly believed that the reply brief was full of "blatant" falsehoods, as alleged to this Court.

## B.   PLAINTIFF HAS THE RIGHT TO NAME DEFENDANTS AS HE SEES FIT.

Defendant asserts that because plaintiff has named COP in this action, the inclusion of the Mormon Church is futile. However, at least prior to the proposed jury instruction, plaintiff could not know whether COP would defend this claim by asserting that it did not prescribe the policies and practices of the local wards of the Mormon Church or that it is not the entity responsible for the acts or inactions of the Bishops, Stake Presidents, or other officials – such as Gordon Conger – involved in this case. If so, and if COP successfully defends this action by asserting that agents of the "Mormon Church" are responsible for plaintiff's injuries, plaintiff would be left with an "empty chair" entity. Plaintiff should not be placed in that position.

Furthermore, while COP now admits that "legally it stands in the shoes of the Church" *plaintiff is unsure what this means for purposes of this (and other) continuing cases. Does* COP now admit, **for all purposes – and for all cases –** that any person or entity who would otherwise be an agent of the Mormon Church is an agent of COP? Does this admission include Gordon Conger?[7] Does COP stipulate that such admission applies to evidentiary issues?[8] If so, plaintiff offers to dismiss the Mormon Church, itself, from this litigation.[9]

---

[7] If Defendant is genuine regarding their Motion, Defendant should have no problem stipulating that Gordon Conger is an agent of both COP and the Mormon Church, since they've already taken the position in this litigation that he is at least capable of being an agent for purposes of attending depositions. Menely Decl. at ¶5.

[8] For example, if the Mormon Church were a defendant and if a statement by Gordon Conger would qualify as an "admission of a party opponent (the Mormon Church)" would COP stipulate that such statement would be an admission for purposes of COP?

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

However, in the absence of an **unequivocal** stipulation regarding the relationship between COP and members of the Mormon Church, plaintiff must be allowed to pursue the litigation strategies of his choice.[10]

## C.    COP (AND THE MORMON CHURCH) SHOULD BE JUDICIALLY ESTOPPED FROM ARGUING THAT THE MORMON CHURCH IS NOT AN ENTITY THAT CAN SUED OR BE SUED.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining advantage by asserting one position in a court proceeding and later seeking a second advantage by taking a clearly inconsistent position." *City of Spokane v. Marr*, 129 Wn.App. 890, 893, 120 P.3d 652 (2005) citing *Johnson v. Si-Cor, Inc.*, 107 Wn. App. 902, 906, 28 P.3d 832 (2001). The doctrine applies "only if a litigant's prior inconsistent position benefited the litigant or was accepted by the court." *Id.* Here, for the reasons discussed below, COP should be judicially estopped from asserting that the Mormon Church is not an entity that can be sued.

### (1) *SCOTT V. COP* – COP IMPLIEDLY ARGUED FOR THE OPPOSITE.

In the case of *Scott v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints*, U.S.D.C., District of Oregon (Cause No. 98-366AA) the plaintiff named four defendants (1) the Corporation of the Presiding Bishop, (2) **the Mormon Church**, (3) the Corporation of the President of the Church of Jesus Christ of Latter-Day saints, and (4) Gregory Lee Foster. All four defendants appeared and answered the

---

[9] Lest we be accused later of failing to disclose our litigation strategy (even though the information is privileged), it is important to state that this discovery in this case is in its infancy. Plaintiff still move to add Gordon Conger, a Washington State resident, as a party.

[10] The fact that plaintiff's counsel has, or has not, included the Mormon Church as a defendant in prior actions is not dispositive of whether plaintiff should be permitted to do so in this case. Plaintiff's counsel should not be required to divulge their litigation strategies and theories to defense counsel. However, lest plaintiff be accused of agreeing with defendant's assertion, plaintiff points out that theories and strategies relating to prosecution of clergy sex abuse cases are evolving over time. The *Doe* and *R.K.* matters were filed years ago (in 2002 and 2004, respectively) and plaintiff's counsel's theories and strategies have been evolving during that time frame. With respect to the *David Ames* case, counsel in this case are not directing the litigation strategies of the New Jersey counsel.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Complaint.[11] The defendants in that action – including COP – then brought a motion for determination of diversity. In brining the motion, COP asserted that it was "concerned" that inclusion of the Mormon Church destroyed diversity.[12] In rendering the decision, the judge in *Scott* agreed that the inclusion of the Mormon Church destroyed diversity and remanded the matter to the Oregon Superior Court. By raising the issue in the manner it did, and by obtaining a remand as a result, COP impliedly argued that the Mormon Church was a properly-named defendant. COP cannot now take the exact opposite position. It's motion to dismiss should be denied for this reason alone.

### (2) OTHER REPORTED CASES.

Defendant asserts that because COP exists, the Mormon Church is not an entity that can sue or be sued. In support of this assertion, COP asserts that it is the entity that has employees and possesses assets (and that the Mormon Church, itself, has none).[13] However, as was argued before Judge Zilly, and as is being repeated here for this Court's reference, reported cases from around the country indicate that the Mormon Church itself: 1) has been involved in litigation, both as a plaintiff and as a defendant; 2) has employees; and 3) possesses assets.

The Mormon Church, itself, is the named **plaintiff** in the following actions:[14]

- *Church of Jesus Christ of Latter-day Saints vs. Jefferson County*, 741 F. Supp. 1522 (N.D. Ala. 1990) ("church which unsuccessfully applied for rezoning to allow development of land for place of worship filed action against county....");

- *Church of Jesus Christ of Latter-day Saints vs. Jefferson County, Alabama*, 721 F. Supp. 1212 (N.D. Ala. 1989) ("vendors of property

---

[11] Menely Decl. at Exhibit **D**.

[12] Menely Decl., Exhibit **E**, pg. 2:15-17.

[13] Motion, pg. 9, ll. 7-15.

[14] Menely Decl. at Exhibit **F**.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

and purchaser, a church, brought action challenging denial of zoning change to all construction of worship facility on the property....");

- *Stotts v. Church of Jesus Christ of Latter-day Saints vs. Lindsey Constr. Co.*, 882 P.2d 1106 (Okla. App. 1984) (in defending claim against it, church defendant instituted a third-party complaint):

It is disingenuous for the COP (on behalf of the Mormon Church) to "pick and choose" – claiming that the Mormon Church is an entity capable of suing – and suing in its own name when it suits the Church's purpose – but then denying that it can be sued when it doesn't suit the Church's purpose. The mere fact that the Mormon Church has elected to sue in its own name should judicially estop it from arguing that it is not an entity that can be sued.

The Mormon Church, itself, was the named defendant in the following cases:[15]

- *Davis v. Church of Jesus Christ of Latter-day Saints*, 852 P.2d 640 (Mont. 1993) (defending fraud claim);

- *Hotaling v. Church of Jesus Christ of Latter-day Saints*, 118 F.3d 1999 (4th Cir. 1997) (defending copyright infringement action);

- *Church of Jesus Christ of Latter-day Saints v. Superior Court of State of Arizona*, 714 P.2d 431 (Ariz. App. 1985) (defending claim of parents of child who was killed after being struck by an automobile when he rode his bicycle from church parking lot into city street);

- *Church of Jesus of Latter-day Saints v. Superior Court of State of Arizona*, 764 P.2d 759 (Ariz. App. 1988) (defending claim by mother of victim of child abuse).

The reported cases indicate that the Mormon Church, the unincorporated entity, **has employees:**[16]

- *Church of Jesus Christ of Latter-day Saints vs. Industrial Commission of Arizona*, 724 P.2d 581 (Ariz. App. 1986) (claimant was "injured

---

[15] Menely Decl at **Exhibit G.**

[16] Menely Decl. at **Exhibit H.**

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 – FACSIMILE (206) 676-7575

while **employed** by the Church of Jesus Christ of Latter-Day Saints....") (emphasis added);

- *Church of Jesus Christ of Latter-day Saints vs. Industrial Comm'n of Utah*, 590 P.2d 328 (Utah 1979) (case involved workman's compensation claim by person who was "**employed** by Plaintiff [the Church]") (emphasis added);

- *Schmoyer v. Church of Jesus Christ of Latter-day Saints*, 343 S.E.2d 551 (N.C. App. 1986) (plaintiff's-decedent was "**employed as a custodian** at the Church of Jesus Christ of Latter-Day Saints.") (emphasis added.)

Finally, the issue of whether the Mormon Church itself **has assets** was called into question by at least one reported case: *Church of Jesus Christ of Latter-day Saints v. Scarborough*, 189 F.2d (1951) (plaintiff brought action against the Church to "recover $7000 which **was on deposit** with the Church....") (emphasis added).[17]

Where the Mormon Church has, itself, instituted (and defended) prior actions, it disingenuous, at best, to assert that it not an entity capable of being sued. At a minimum, the very existence of the other cases demonstrates that there is a question of fact on the issue of whether the Church itself can be sued.

### D.   THE MORMON CHURCH IS AN UNINCORPORATED ASSOCIATION.

The determination of whether the "Mormon Church" is an unincorporated association has already been made. First, Judge Zilly, relying on defendant's own admissions, specifically held that the Mormon Church is an unincorporated association with members in all 50 states.[18] Moreover, in *Scott v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints, et. al.,* defendant affirmatively declared that the Mormon Church is an incorporated association, stating "[t]he Church of Jesus Christ of Latter-day

---

[17] Menely Decl. at Exhibit I.
[18] Menely Decl. at Exhibit C (pg. 2, ll. 1-2).

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Saints **is an unincorporated religious association** with a worldwide membership ...."[19] In fact, in the *Scott* case, the defendant affirmatively stated "Defendants **would affirmatively represent to this court that the proper defendant herein is the unincorporated association** of the Brentwood Ward of the Portland Oregon Stake."[20]  Accordingly defendant is now estopped from arguing that the "Church is not an unincorporated association."

E.    THE MORMON CHURCH CAN BE SUED AND IT "DOES BUSINESS" WITHIN THE STATE OF WASHINGTON.

RCW 4.28.080 provides the process by which a defendant can be served with process. That statute provides, in pertinent part: (1) If the suit be against a[n] .... **association** doing business within this state, to **any agent,** cashier or secretary thereof.

The issue of whether an entity "does business" in Washington generally arises in the context of whether jurisdiction can be obtained over the defendant under the long-arm statute. While the issue in this case is not jurisdiction, that case law provides guidance as to when an entity is "doing business" in this state.  Under the long-arm statute, a foreign corporation is subject to jurisdiction of this state if the corporation "transacts business in this state. . . ." *Washington Equip. Mfg. Co. v. Concrete Placing Co.,* 85 Wn.App. 240, 246, 931 P.2d 170 (1997).[21]  A foreign corporation "transacts business" in this state if it "purposefully avail[s] itself of the benefits of this state. . . ." *Id.*  The determination of whether a corporation "purposefully avails" itself generally turns on whether the corporate entity actually sought Washington business. *Id.*  Here, there can be no real question as to whether the Mormon Church meets this test.

---

[19] Menely Decl. at Exhibit J at pg. 3, ll. 4-10; Exhibit K at ¶4.

[20] Exhibit J at footnote 1.

[21] The *Washington Equip.* case went on to address the other criteria for assertion of jurisdiction over a foreign corporation.  The issue here is not whether jurisdiction is properly asserted, it is whether the Mormon Church "does business" within this state.  Consequently, analysis of the other factors relating to jurisdiction are not addressed herein.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

Exhibit    Page 386

First, the Mormon Church actively recruits Washington citizens into membership into the Church through its Missionary program.[22] Second, the members are **required** to pay one-tenth of their gross income to the Church.[23] In fact, the Church actually audits the members to ensure compliance with their mandatory tithing requirements.[24] Interestingly, in certain circumstances, the Mormon Church will even accept "marketable real estate" as payment of the requisite tithe.[25] The tithing is paid directly to the member's "ward," and the "ward" then deposits those funds into a local checking account and all funds are to be handled through that checking account (prior to transfer to Church headquarters).[26]

The tithing money is used, among other things, to provide welfare services to needy members within that Ward.[27] These welfare services include "food, clothing, shelter, medical assistance, or other life-sustaining aid for the needy."[28] Presumably, in order to pay for food for its members, the ward must spend money at a store to purchase that food. The same holds true for clothing, shelter, medical assistance, and other life-sustaining aid for the needy.

The fact that the Mormon Church has assets and does business in the State of Washington is further exemplified by the fact that each ward has financial records and a budget.[29] The wards do business in the state, as the ward must "operate on a budget" and ensure that "projected expenses do not exceed anticipated income."[30] It makes no sense for the ward to have a budget, if it is not spending money, and thus doing business within the State of Washington.

---

[22] Menely Decl., Exhibit **L** at 7-4 through 7-5.

[23] Menely Decl., Exhibit **L** at 9-1.

[24] Menely Decl., Exhibit **L** at 9-1.

[25] Menely Decl., Exhibit **L** at 9-3.

[26] Menely Decl., Exhibit **L** at 9-1, 9-2 and 9-3.

[27] Menely Decl. at Exhibit **L** 9-1.

[28] Menely Decl. at Exhibit **L** 9-1.

[29] Menely Decl. at Exhibit **L** at 1-2, 1-3, 1-4,1-5,9-1, and 9-2.

[30] Menely Decl. at Exhibit **L** at 9-2.

PLAINTIFF'S MEMO IN OPP OF MOT TO DISMISS - 10 of 12
[175163 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit    Page 387

Where the Mormon Church is requiring all members in the State of Washington to pay ten percent of its annual gross income, and to pay that money directly to the appropriate ward of the church, it defies logic to assert that it is not "doing business" in the State of Washington.

**F.    THE MORMON CHURCH CAN BE SERVED WITH PROCESS – AND HAS BEEN.**

Because the Mormon Church "does business" in the State of Washington, Plaintiff can serve the Mormon Church by serving any agent of the Church.  *See* RCW 4.28.080.  The Mormon Church has multiple agents within this state – presumably any Bishop or other clergy would suffice.  Here, plaintiff served Gordon Conger as the agent for the Church. Mr. Conger has served as the Seattle Temple President for the Mormon Church from 2001 to 2004.[31]  Additionally, the Mormon Church has identified Gordon Conger as its "spokesman" for several prominent sexual abuse cases, including cases brought by the same firm who represents Plaintiff in this case.[32]  Plaintiff has served Conger as "an agent" for the Mormon Church and doing so is sufficient service of process.

**G.    ARGUMENT IN FRONT OF THE SAME JUDGES**

Plaintiff defers to this Court regarding COP's unorthodox proposal that it hear this motion concurrently with an identical Motion to Dismiss to be heard by the Honorable Linda Inveen, but are confident that both judges are capable of making individual, independent decisions.

\* \* \* \*

\* \* \*

\* \*

\*

---

[31] Menely Decl. at **Exhibit M**.

[32] Menely Decl. at **Exhibit N**.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit ___ Page 388

## IV. CONCLUSION

For the above stated reasons, plaintiff respectfully requests that this Court DENY COP's Motion to Dismiss and/or for Summary Judgment.

RESPECTFULLY SUBMITTED this _29th_ day of January 2007.

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP

By _Michelle Menely_
    Michael T. Pfau, WSBA No. 24649
    mpfau@gth-law.com
    Michelle A. Menely, WSBA No. 28353
    mmenely@gth-law.com
    Yvonne M. Mattson, WSBA No. 35322
    ymattson@gth-law.com
    Co-Counsel for Plaintiff

LAW OFFICES OF TIMOTHY D. KOSNOFF

By _____
    Timothy D. Kosnoff, WSBA No. 16586
    timkosnoff@comcast.net
    Co-Counsel for Plaintiff

PLAINTIFF'S MEMO IN OPP OF MOT TO DISMISS – 12 of 12
[175163 v9.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 • FACSIMILE (206) 676-7575

FILED

2007 JAN 29   PM 5: 05

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

ROB RINDE f/k/a ROBERT LARRY LEROY
PITSOR, JR.,

        Plaintiffs,

v.

THE CORPORATION OF THE PRESIDEN OF
THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, a Utah Corporation
sole; and the "MORMON CHURCH" THE
CHURCH OF JESUS CHRIST OF LATTER-
DAY SAINTS, an unincorporated association,

        Defendants.

NO. 06-2-09825-1 SEA

DECLARATION OF MICHELLE A.
MENELY IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO
DEFENDANT COPRORATION OF THE
PRESIDENT OF THE CHURCH OF
JESUS CHRIST OF LATTER-DAY
SAINTS MOTION TO DISMISS
AND/OR FOR SUMMARY JUDGMENT

NOTED FOR: FEBRUARY 9, 2007
11:15 A.M.

THE HONORABLE WILLIAM L. DOWNING

I, Michelle A. Menely, hereby certify and declare as follows:

I am one of the attorneys for Plaintiff Rob Rinde f/k/a Larry Leroy Pitsor, Jr., in this

action. I have personal knowledge of and am competent to testify to the facts set forth below.

1.     Attached hereto as **Exhibit A** is a true and correct copy of an email dated April

20, 2006, between counsel regarding naming COP and the unincorporated association.

2.     Attached hereto as **Exhibit B** is a true and correct copy of the Declaration of

Timothy D. Kosnoff Re" Reply to Opposition Motion to Amend Complaint to Clarify Status of

Defendants and Motion to Remand, dated May 26, 2006 (without attachments).

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit _____ Page 390



3.    Attached hereto as **Exhibit C** is a true and correct copy of the Order dated June 30, 2006, from United States District Court regarding Plaintiff's Motion to Amend Complaint to Clarify Status of Defendants, Plaintiff's Motion to Remand back to King County Superior Court.

4.    The *R.K.* case was set for trial to commence on October 2, 2006 – approximately five months after these issues were briefed before Judge Zilly. In the week or two prior to commencement of trial, the parties exchanged proposed jury instructions – including the instruction in which COP admitted it "stands in the shoes of the church."

5.    Gordon Conger was present during a deposition in this case as the representative of defendant.

6.    Attached hereto as **Exhibit D** is a true and correct copy of the Answer to Defendants Gregory Foster, the Church of Jesus Christ of Latter-Day Saints, Corporation of the President and Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints to Plaintiff's Third Amended Complaint.

7.    Attached hereto as **Exhibit E** is a true and correct copy of Judge Aiken's Opinion and Order in *Scott*.

8.    Attached hereto as **Exhibit F** is a true and correct copy of a case in which COP was the Plaintiff in the case.

9.    Attached hereto as **Exhibit G** is a true and correct copy of a case in which COP was the Defendant in the case.

10.    Attached hereto as **Exhibit H** is a true and correct copy of a case involving COP in an employment case.

11.    Attached hereto as **Exhibit I** is a true and correct copy of a case in which this issue of whether the Mormon Church itself has assets was called into question.

DECL. OF M. MENELY RE: PLTF. OPP. TO DEF. MSJ - 2

06-2-09825-1 SEA
[175059 v09.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

12.     Attached hereto as **Exhibit J** is a true and correct copy of the Church Defendants' Reply on their Motion for Judicial Determination of Diversity Jurisdiction in *Scott*.

13.     Attached hereto as **Exhibit K** is a true and correct copy of Affidavit of Dwayne L. Liddell in Support of Church Defendants' Motion for Judicial Determination of Diversity Jurisdiction in *Scott v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, et. al.*

14.     Attached hereto as **Exhibit L** is a true and correct copy of the General Handbook of Missions, published by The Church of Jesus Christ of Latter-day Saints.

15.     Attached hereto as **Exhibit M** is a true and correct copy of Temple presidents for the Seattle Washington Temple.

19.     Attached hereto as **Exhibit N** is a true and correct copy of copies of articles where Gordon G. Conger has been appointed as a spokesman on behalf of the Mormon Church.

I declare under penalty of perjury under the laws of the State of Washington that the above is true and correct.

Dated this 27th day of January, 2007 at Seattle, Washington

Michelle A. Menely

DECL. OF M. MENELY RE: PLTF. OPP. TO DEF. MSJ - 3
06-2-09825-1 SEA
[175059 v09.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON  98101-4185
(206) 676-7500 • FACSIMILE (206) 676-7575

Exhibit___ Page 392

1

## CERTIFICATE OF SERVICE

2   THIS IS TO CERTIFY that on this _29_ day of January, 2007, I did serve true and

3   correct copies of the foregoing via facsimile and via ABC Legal Messengers by directing

4   delivery to and addressed to the following:

5

6   *Counsel for COP.:*
    Charles Gordon, Esq.
    Jeffrey Tilden, Esq.

7   Michael Rosenberger, Esq.
    GORDON MURRAY TILDEN

8   1325 Fourth Avenue, Suite 1800
    Seattle, WA 98101

9   TEL:   206.467.6477
    FAX:   206.467.6292

10

11

12   *[signature]*

13   Fara Fusaro
     Legal Assistant to Michelle A. Menely

14

15

16

17

18

19

20

21

22

23

24

25

26

DECL. OF M. MENELY RE: PLTF. OPP. TO DEF. MSJ - 4

06-2-09825-1 SEA
[175059 v09.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

# EXHIBIT A

**Menely, Michelle**

| | |
|---|---|
| **From:** | Tim Kosnoff [timkosnoff@comcast.net] |
| **Sent:** | Thursday, April 20, 2006 9:35 AM |
| **To:** | Michelle 8Menely |
| **Subject:** | FW: FW: RE: Diversity etc. |

```
--- Original Message---
 To: Michael 2Pfau <pfaum@gth-law.com>
 Cc: John Schulz <JRS@mcgrannshea.com>
 From: TDK
 Sent: 4/20/2006  9:22AM
 Subject: FW: RE: Diversity etc.




>> --- Original Message---
>> To: "Tim Kosnoff" <timkosnoff@comcast.net>
>> Cc: "Jeff Tilden" <jtilden@gmtlaw.com>
>> From: "Chuck Gordon" <cgordon@gmtlaw.com>
>> Sent: 4/20/2006  9:20AM
>> Subject: RE: Diversity etc.
>>
>> >> Tim, we will follow up on this and review the issue with our
>> >> client. We will get back to you shortly. We will get your address
>> >> corrected. Regards, Chuck
>> >>
>> >> -----Original Message-----
>> >> From: Tim Kosnoff [mailto:timkosnoff@comcast.net]
>> >> Sent: Thursday, April 20, 2006 9:11 AM
>> >> To: Chuck Gordon; Michael 2Pfau
>> >> Subject: Diversity etc.
>> >>
>> >> Chuck,
>> >>
>> >> Attached is the docket in Scott v. COJCOLDS, et al from US Dist
>> >> Court D. Oregon in which your client successfully argued the same
>> >> position it would now be opposing if you remove. I believe the
>> >> complaint sufficiently reflects that both entities, COP and the
>> >> unincorporated association are named. If the court thinks
>> >> otherwise, we will merely amend to make that clear. To me, this is
>> >> a battle that doesn't make any sense for us to fight.
>> >>
>> >> On another note, I saw you have my old Bellevue address. You
>> >> should correct your files to reflect my present office address
>> >> noted below.
>> >>
>> >> Thank you for your cooperation.
>> >>
>> >> Tim
>> >>
>> >> Timothy D. Kosnoff
>> >> Law Offices of Timothy D. Kosnoff, P.C.
>> >> One Union Square
>> >> 600 University St., Suite 2101
>> >> Seattle, WA 98101
>> >>
>> >> 206-676-7610
>> >> 425-837-9690
```

1

```
>> >> 425-837-9692 Fax
>> >> timkosnoff@comcast.net
>> >> *********************************************************************
>> >> ******
>> >> *********
>> >> This e-mail may contain information that is privileged, confidential or
>> >> otherwise protected from disclosure. If you are not the intended
>> >> recipient or otherwise have received this message in error, you are not
>> >> authorized to read, print, retain, copy or disseminate this message or
>> >> any part of it. If you are not the intended recipient or otherwise have
>> >> received this message in error, please notify the sender immediately by
>> >> e-mail, discard any paper copies and delete all electronic files of the
>> >> message.
>> >> Thank you.
>> >> **********************************************************************
>> >> **********
>> >>
>> >>
>>
```

2

Exhibit___ Page 396

# EXHIBIT B

1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10          WESTERN DISTRICT OF WASHINGTON
                      AT SEATTLE
11   ROB RINDE f/k/a ROBERT LARRY LEROY
     PITSOR, JR.                                    NO. 2:06-CV-00556TSZ
12
                    Plaintiff,                      DECLARATION OF TIMOTHY D.
13                                                  KOSNOFF RE: REPLY TO OPPOSITION
14   vs.                                            MOTION TO AMEND COMPLAINT TO
                                                    CLARIFY STATUS OF DEFENDANTS
15   THE CORPORATION OF THE PRESIDENT               AND MOTION TO REMAND
     OF THE CHURCH OF JESUS CHRIST OF
16   LATTER-DAY SAINTS, a Utah corporation          NOTED FOR: FRIDAY, MAY 26, 2006
     sole, aka the "MORMON CHURCH" THE
17   CHURCH OF JESUS CHRIST OF LATTER-
18   DAY SAINTS, an unincorporated association,
19                    Defendant.
20
21         TIMOTHY D. KOSNOFF, being first duly sworn on oath, states as follows:
22         1.      I am one of the attorneys for the plaintiff in this matter; I make this declaration
23   based on my own personal knowledge.
24         2.      Shortly before receipt of the defendant's Notice of Appearance/Notice of
25   Removal, I had a telephone conversation with defense counsel, Chuck Gordon.  During that
26
     KOSNOFF DECL. RE: REPLY TO OPP. TO MTN TO
     AMEND/REMAND - 1 of 3
     (2:06-CV-00556TSZ)
     [164446.v03.doc]                              LAW OFFICES
                                        GORDON, THOMAS, HONEYWELL, MALANCA,
                                              PETERSON & DAHEIM LLP
                                                ONE UNION SQUARE
                                             600 UNIVERSITY, SUITE 2100
                                            SEATTLE, WASHINGTON  98101-4185
                                        (206) 676-7500 · FACSIMILE (206) 676-7575

conversation, Mr. Gordon advised me that it was COP's intention to remove this action to this Court.

3.    In response, I advised Mr. Gordon that (a) that the Mormon Church was a defendant and (b) this issue of whether there was diversity of citizenship in an action in which the Mormon Church was a named defendant had already been resolved by a United States District Court Judge (and that the judge had found that the inclusion of the Mormon Church as a defendant indeed destroyed diversity). I specifically requested that in this circumstance COP not file the removal.

4.    Attached hereto as **Exhibit A** is a true and correct copy of the face sheets from the cases cited in Section C of Plaintiff's Reply to Defendant's Opposition to Motion to Amend/Remand.

5.    Attached hereto as **Exhibit B** is a true and correct copy of the Answer in the case of *Scott v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints,* U.S.D.C., Oregon District, Cause No. 98-366AA.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


DATED at Seattle, Washington, this 26th day of May, 2006.


                    /s/ Timothy D. Kosnoff
                    Timothy D. Kosnoff


KOSNOFF DECL. RE: REPLY TO OPP. TO MTN TO
AMEND/REMAND - 2 of 3
(2:06-CV-00556TSZ)
[164446.v3.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 • FACSIMILE (206) 676-7575

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF ELECTRONIC FILING

I hereby certify that on May 26, 2006, I electronically filed the foregoing **DECLARATION OF TIMOTHY D. KOSNOFF RE: REPLY TO OPPOSITION TO MOTION TO AMEND COMPLAINT TO CLARIFY STATUS OF DEFENDANTS AND MOTION TO REMAND** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| |
|---|
| Charles C. Gordon<br>cgordon@gmtlaw.com<br>Jeffrey I. Tilden<br>jtilden@gmtlaw.com<br>1001 Fourth Avenue, Suite 4000<br>Seattle, WA 98154<br>PH: 206.467.6477<br>FX: 206.467.6292 |

DATED this 16th day of May, 2006.

/s/ Bernadette Lovell
Legal Assistant to Michelle A. Menely

KOSNOFF DECL. RE: REPLY TO OPP. TO MTN TO
AMEND/REMAND - 3 of 3
(2:06-CV-00556TSZ)
[164446 v03.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 • FACSIMILE (206) 676-7575