# EXHIBIT C

Dockets.Justia.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROB RINDE f/k/a ROBERT LARRY LEROY PITSOR, JR.,<br><br>                    Plaintiff,<br><br>v.<br><br>THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, aka the "MORMON CHURCH" THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an unincorporated association,<br><br>                    Defendant. | No.  C06-556Z<br><br>ORDER |

This matter comes before the Court on Plaintiff's Motion to Amend Complaint to

Clarify Status of Defendants and Motion to Remand, docket no. 5. The Court being fully

advised now GRANTS the motions as set forth in this Order:

**Plaintiff's Motion to Amend Complaint to Clarify Status of Defendants**

Plaintiff, Rob Rinde, failed to plead the existence of two defendants in his Complaint.

See Compl., docket 3. The Court therefore construes Plaintiff's Motion to Amend

Complaint to Clarify Status of Defendants as a motion to join the "'Mormon Church' The

Church of Jesus Christ of Latter-Day Saints" (hereinafter referred to as the "Mormon

Church") as a defendant.

MINUTE ORDER  1–

1        The Mormon Church is an unincorporated association with members in all fifty states.

2 Rytting Decl., docket 7, ¶ 5; Def.'s Opp'n, docket 6, at 2. It is well-established that the

3 citizenship of unincorporated associations is the citizenship of each of the individual

4 members of the association. <u>Johnson v. Columbia Props. Anchorage</u>, 437 F.3d 894, 899 (9th

5 Cir. 2006). Thus, the Mormon Church is a non-diverse defendant.

6        "[T]he proper standard for deciding whether to allow post-removal joinder of a

7 diversity-destroying defendant is set forth in 28 U.S.C. § 1447(e)." <u>Boon v. Allstate Ins.</u>

8 <u>Co.</u>, 229 F. Supp. 2d 1016, 1020 n.2 (C.D. Cal. 2002). Section 1447(e) provides: "If after

9 removal the plaintiff seeks to join additional defendants whose joinder would destroy subject

10 matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to

11 the State court." 28 U.S.C. § 1447(e). Joinder of a diversity-destroying defendant pursuant

12 to Section 1447(e) is left to the discretion of the district court. <u>Newcombe v. Adolf Coors</u>

13 <u>Co.</u>, 157 F.3d 686, 691 (9th Cir. 1998).

14        Having considered the six factors described in <u>Boon</u>, 229 F. Supp. 2d at 1019-20, the

15 Court concludes that permitting joinder under Section 1447(e) is appropriate in the present

16 case. Permitting joinder of the Mormon Church would facilitate a just adjudication of the

17 matter. Conversely, disallowing joinder would hinder Mr. Rinde from asserting his rights

18 against an entity allegedly involved in the breach of duties and related causes of action. <u>See</u>

19 <u>IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion</u>, 125 F. Supp. 2d 1008, 1012

20 (N.D. Cal. 2000). The absence of the Mormon Church as a named defendant could preclude

21 Mr. Rinde from recovering damages for any fault attributable to the Mormon Church. <u>See</u>

22 <u>Kottler v. Wetherington</u>, 136 Wn.2d 437, 445-47 (1998). In contrast, "[t]here will be little

23 prejudice to Defendant[] from allowing amendment and remand at such an early stage in the

24 case." <u>Palestini v. Gen. Dynamics Corp.</u>, 193 F.R.D. 654, 657 (S.D. Cal. 2000). Although

25 Defendant Corporation of the President of the Church of Jesus Christ of Latter-Day Saints

26 ("COP") argues that Mr. Rinde's sole purpose for seeking joinder is to destroy diversity

MINUTE ORDER 2–

1  jurisdiction, the Court "declines to impute an improper motive to Plaintiff simply because

2  Plaintiff seeks to add a non-diverse defendant post-removal." IBC Aviation Servs., 125 F.

3  Supp. 2d at 1012.

4      COP also contends that the Mormon Church is not a proper party because once a

5  religious entity has chosen to incorporate, only the corporate form may be sued. The cases

6  cited by COP, however, merely support the general rule that religious controversies are not

7  the proper subject of civil court inquiry. See, e.g., Islamic Ctr. of Harrison, Inc. v. Islamic

8  Science Found., Inc., 628 N.Y.S. 2d 179, 179 (App. Div. 1995). Although the Free Exercise

9  Clause of the United States Constitution "restricts the government's ability to intrude into

10 ecclesiastical matters or to interfere with a church's governance of its own affairs," Bollard

11 v. California Province of the Soc'y of Jesus, 196 F.3d 940, 945 (9th Cir. 1999), a religious

12 association does not operate wholly free from civil law. "The First Amendment does not

13 provide churches with absolute immunity to engage in tortious conduct. So long as liability

14 is predicated on secular conduct and does not involve the interpretation of church doctrine or

15 religious beliefs, it does not offend constitutional principles." C.J.C. v. Corp. of Catholic

16 Bishop of Yakima, 138 Wn.2d 699, 728 (1999) (citing Sanders v. Casa View Baptist Church,

17 134 F.3d 311, 366 (5th Cir. 1998)).

18      For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Amend

19 Complaint to Clarify Status of Defendants, docket no. 5. The Clerk is directed to file the

20 Proposed Amended Complaint, attached as Exhibit A to the Kosnoff Decl., docket no. 5.

21      **Plaintiff's Motion to Remand**

22      Diversity jurisdiction requires complete diversity of citizenship between the parties to

23 an action. 28 U.S.C. § 1332(a); Cardon v. Arkoma Assocs., 494 U.S. 185, 187 (1990). Once

24 a non-diverse defendant is joined, remand becomes mandatory: "[a] district court may not

25 allow joinder of a non-diverse party and retain jurisdiction." Stevens v. Brink's Home

26 Security, Inc., 378 F.3d 944, 949 (9th Cir. 2004); see also 28 U.S.C. § 1447(e). Because the

MINUTE ORDER   3–

1    Court is granting Plaintiff's motion to join the Mormon Church as a non-diverse defendant,

2    remand is mandatory.  Accordingly, the Court GRANTS the Plaintiff's Motion to Remand,

3    docket no. 5.

4         The Clerk is directed to remand the case to King County Superior Court, Case No. 06-

5    2-09825-1SEA, in accordance with this Order.

6         IT IS SO ORDERED.

7         Filed and entered this 30th day of June, 2006.

8

9                                    Thomas S. Zilly

10                                   Thomas S. Zilly
                                     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MINUTE ORDER  4–

# EXHIBIT D

SC012-1         LF/JMH/BKB/GER

R E C E I V E D

AUG 04 1998

DUNN, CARNEY

BEST AVAILABLE IMAGE POSSIBLE

1   Stephen F. English, OSB 73084
    Lori R. Metz, OSB 85286
2   Karen M. Vickers, OSB 91381
    BULLIVANT, HOUSER, BAILEY
3   A Professional Corporation
    300 Pioneer Tower
4   888 SW Fifth Avenue
    Portland, OR  97204-2089
5   Telephone:  (503) 228-6351
    Facsimile:  (503) 295-0915
6   E-Mail:  stephen.english@bullivant.com
    E-Mail:  lori.metz@bullivant.com
7   E-Mail:  karen.vickers@bullivant.com

8       Attorneys for Defendants

9

10              IN THE UNITED STATES DISTRICT COURT

11              FOR THE DISTRICT OF OREGON

12  JEREMIAH SCOTT,                     )
                                        )
13              Plaintiff,              )
                                        )
14          v.                          )   Civil No. 98-366-AA
                                        )
15  CORPORATION OF THE PRESIDING        )   ANSWER OF DEFENDANTS GREGORY
    BISHOP OF THE CHURCH OF JESUS       )   FOSTER, THE CHURCH OF JESUS
16  CHRIST OF LATTER DAY SAINTS, a      )   CHRIST OF LATTER-DAY SAINTS,
    Utah corporation sole;              )   CORPORATION OF THE PRESIDENT
17  GREGORY LEE FOSTER, an              )   AND CORPORATION OF THE
    individual; THE CHURCH OF           )   PRESIDING BISHOP OF THE
18  JESUS CHRIST OF LATTER-DAY          )   CHURCH OF JESUS CHRIST OF
    SAINTS, a Utah corporation          )   LATTER-DAY SAINTS TO
19  sole; THE CORPORATION OF THE        )   PLAINTIFF'S THIRD AMENDED
    PRESIDENT OF THE CHURCH OF          )   COMPLAINT
20  JESUS CHRIST OF LATTER-DAY          )
    SAINTS, a Utah corporation          )
21  sole,                               )
                                        )
22              Defendants.             )
                                        )
23          For their Answer to plaintiff's Third Amended

24  Complaint, defendants Corporation of the Presiding Bishop of The

25  Church of Jesus Christ of Latter-day Saints ("CPB"), Corporation

26  of the President of The Church of Jesus Christ of Latter-day

Page 1 - ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

2

Exhibit ___ Page 407

1    Saints ("COP"), and The Church of Jesus Christ of Latter-day

2    Saints ("the Church") and Gregory Lee Foster ("Foster") (all four

3    are hereinafter collectively referred to as "Defendants") admit,

4    deny and affirmatively allege as follows:

5                              FIRST DEFENSE

6         Defendants respond to the specific allegations of the

7    Third Amended Complaint as follows:

8         1.    Defendants admit that Plaintiff's claim is civil

9    in nature and that Plaintiff alleges that it involves a sum,

10   exclusive of interest and costs, in excess of $75,000, but deny

11   that complete diversity of citizenship exists between the parties

12   to this matter.  Defendants deny the remaining allegations of

13   paragraph 1 of the Third Amended Complaint.

14        2.    Defendants admit that given the allegations of the

15   Complaint, venue appears to be proper in this Court.  Defendants

16   specifically deny that any events or omissions occurred that give

17   rise to any claim.  Defendants deny the remaining allegations of

18   paragraph 2 of the Third Amended Complaint.

19                              PARTIES

20        3. . Defendants are without knowledge and information

21   sufficient to form a belief as to the truthfulness of the

22   allegations of paragraph 3 and therefore deny the same.

23        4.    Defendants admit that Defendant CPB is a

24   nonprofit, Utah corporation sole organized and existing under the

25   laws of the State of Utah and with its principal operations in

26   Utah.  Defendants also admit that CPB is registered in the State

Page  2 -  ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

3

1   of Oregon.  Defendants deny the remaining allegations of

2   paragraph 4 of the Third Amended Complaint.

3          5.    Defendants admit that Defendant Foster is a

4   resident of Oregon and that he was the Bishop of the Brentwood

5   Ward located in Portland, Oregon.  Defendants deny the remaining

6   allegations of paragraph 5 of the Third Amended Complaint.

7          6.    Defendants deny the allegations of paragraph 6.

8   Defendants affirmatively allege that the Church is an

9   unincorporated association that is not subject to suit.

10         7.    Defendants admit that COP is a nonprofit, Utah

11  corporation sole formed in 1923 with its principal operations in

12  Utah.

13              RELATIONSHIPS BETWEEN THE DEFENDANTS

14         8.    Defendants admit the allegations of paragraph 8,

15  except to add that the Church has over 10 million members in over

16  150 countries.

17         9.    Defendants admit that the LDS Church is a

18  hierarchical church.  Defendants also admit that its highest

19  governing councils and quorum are the First Presidency, the

20  Council of the Twelve Apostles, the First and Second Quorums of

21  the Seventy, and the Presiding Bishopric.  Defendants also admit

22  that local congregation are known as wards or branches and groups

23  of wards or branches constitute stakes or districts.  Defendants

24  deny the remaining allegations of paragraph 9 of the Third

25  Amended Complaint.

26  ///

Page  3 -  ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

08/04/98  14:06 FAX 503 224 7324          DUNN CARNEY ONE                    ☒005/012

1          10.    Defendants admit that the Council of the

2     Disposition of Tithes consists of the First Presidency, the

3     Council of Twelve Apostles, and the Presiding Bishopric.

4     Defendants deny the remaining allegations of paragraph 10 of the

5     Third Amended Complaint.

6          11.    Church defendants are without knowledge and

7     information sufficient to form a belief as to the truthfulness of

8     the allegations that the Scotts regularly attended Church

9     meetings and therefore deny the same.  Defendants admit that the

10    Scott family has paid tithing to the Church.  Defendants also

11    admit that the law of tithing requires all to give 10% of their

12    annual increase to the Lord.   Defendants deny the remaining

13    allegations of paragraph 11 of the Third Amended Complaint.

14          12.    Defendants deny the allegations of paragraph 12 of

15    the Third Amended Complaint.

16          13.    Defendants admit that COP and CPB were organized

17    and exist to acquire, hold, and dispose of property on behalf of

18    the Church.  Defendants deny the remaining allegations of

19    paragraph 13 of the Third Amended Complaint.

20          14.    Defendants admit that CPB was organized in 1916 to

21    acquire, hold, and dispose of property for the Church.

22    Defendants also admit that CPB holds title to many ward buildings

23    and related real property.  Defendants deny the remaining

24    allegations of paragraph 14.

25          15.    Defendants deny the allegations of paragraph 15 of

26    the Third Amended Complaint.

Page 4 -  ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

Exhibit___ Page 410

1    16.   Defendants admit that a publication entitled
2    "Child Abuse, Helps for Ecclesiastical Leaders" was published in
3    1985.  Defendants deny the remaining allegations of paragraph 16
4    of the Third Amended Complaint.

5    17.   Defendants deny the allegations of paragraph 17 of
6    the Third Amended Complaint.

7                        GENERAL ALLEGATIONS

8    18.   Defendants admit that the Plaintiff and his
9    parents were members of the Brentwood Ward.  Defendants are
10   without knowledge and information sufficient to form a belief as
11   to the truthfulness of the allegations of paragraph 18 and
12   therefore deny the same.

13   19.   Defendant Foster admits that Sandra Scott was a
14   Sunday School instructor.  Defendant Foster denies that Franklyn
15   Richard Curtis was a Sunday School Teacher or that he had other
16   leadership positions in the Brentwood Ward.  Defendants are
17   without knowledge and information sufficient to form a belief as
18   to the truthfulness of the remaining allegations of paragraph 19
19   and therefore deny the same.

20   20.   Defendant Foster admits that Sandra Scott advised
21   him of her intent to have Curtis live with her family.
22   Defendants are without knowledge and information sufficient to
23   form a belief as to the truthfulness of the remaining allegations
24   of paragraph 20 and therefore deny the same.

25   21.   Defendants deny the allegations of paragraph 21 of
26   the Third Amended Complaint.

Page  5 -   ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

22.  Defendant Foster admits that Curtis lived at the Scott residence for a period of time in 1990.  Defendants are without knowledge and information sufficient to form a belief as to the truthfulness of the remaining allegations of paragraph 22 and therefore deny the same.

23.  Defendants are without knowledge and information sufficient to form a belief as to the truthfulness of the allegations of paragraph 23 and therefore deny the same.

24.  Defendants are without knowledge and information sufficient to form a belief as to the truthfulness of the allegations of paragraph 24 and therefore deny the same.

25.  Defendants are without knowledge and information sufficient to form a belief as to the truthfulness of the allegations of paragraph 25 and therefore deny the same.

26.  Defendants deny the allegations of paragraph 26 of the Third Amended Complaint.

27.  Defendants deny the allegations of paragraph 27 of the Third Amended Complaint.

28.  Defendants deny the allegations of paragraph 28 of the Third Amended Complaint.

29.  Defendants deny the allegations of paragraph 29 of the Third Amended Complaint.

30.  Defendants deny the allegations of paragraph 30 of the Third Amended Complaint.

31.  Defendants deny the allegations of paragraph 31 of the Third Amended Complaint.

Page  6 -  ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

SULLIVANT HOUSER BAILEY
A Professional Corporation
880 S.W. Fifth Avenue, Suite 800
Portland, Oregon 97204-2089
Telephone (503) 228-6351

7

1      32.  Defendants deny the allegations of paragraph 32 of

2    the Third Amended Complaint.

3      33.  Defendants deny the allegations of paragraph 33 of

4    the Third Amended Complaint.

5      34.  Defendants deny the allegations of paragraph 34 of

6    the Third Amended Complaint.

7      35.  Defendants deny the allegations of paragraph 35 of

8    the Third Amended Complaint.

9      36.  Defendants deny the allegations of paragraph 36 of

10   the Third Amended Complaint.

11     37.  Defendants deny the allegations of paragraph 37 of

12   the Third Amended Complaint.

13     38.  Defendants deny the allegations of paragraph 38 of

14   the Third Amended Complaint.

15     39.  Defendants deny the allegations of paragraph 39 of

16   the Third Amended Complaint.

17     40.  Defendants deny the allegations of paragraph 40 of

18   the Third Amended Complaint.

19     41.  Defendants deny the allegations of paragraph 41 of

20   the Third Amended Complaint.

21     42.  Defendants deny the allegations of paragraph 42 of

22   the Third Amended Complaint.

23     43.  Defendants deny the allegations of paragraph 43 of

24   the Third Amended Complaint.

25     44.  Defendants deny the allegations of paragraph 44 of

26   the Third Amended Complaint.

Page 7 -  ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

1          45.  Defendants deny the allegations of paragraph 45 of

2     the Third Amended Complaint.

3          46.  Defendants deny the allegations of paragraph 46 of

4     the Third Amended Complaint.

5          47.  Defendants deny the allegations of paragraph 47 of

6     the Third Amended Complaint.

7          48.  Defendants deny the allegations of paragraph 48 of

8     the Third Amended Complaint and deny that Plaintiff is entitled

9     to any relief in this matter.

10         49.  Defendants affirmatively deny each and every

11    allegation that has not been specifically admitted herein.

12                    SECOND AFFIRMATIVE DEFENSE

13         This Court lacks jurisdiction over this matter and the

14    Church Defendants, and this action violates constitutional

15    protections under Amendments I, IV, V, and XIV of the United

16    States Constitution, and Article I, §2, §3, §8 and §9 of the

17    Oregon Constitution and federal and state common law.

18                    THIRD AFFIRMATIVE DEFENSE

19         The Complaint fails to state a claim upon which relief

20    can be granted.

21                    FOURTH AFFIRMATIVE DEFENSE

22         Plaintiff's claims for punitive damages violate the

23    Constitutions of the United States and Oregon and federal and

24    state common law principles.

25    ///

26    ///

Page  8 -  ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

1           FIFTH AFFIRMATIVE DEFENSE

2           Plaintiff's Third Amended Complaint is barred, in whole

3    or in part, by the applicable state of limitations or the

4    equitable doctrines of waiver, estoppel and laches.

5           SIXTH AFFIRMATIVE DEFENSE

6           Defendants COP, CPB, and the Church are not proper

7    party defendants in this matter.

8           SEVENTH AFFIRMATIVE DEFENSE

9           The injury and damages, if any, sustained by plaintiff

10   were caused solely by the negligence or culpable conduct of

11   entities or individuals other than Defendants.

12          EIGHTH AFFIRMATIVE DEFENSE

13          Defendants assert the defense of charitable immunity.

14          NINTH AFFIRMATIVE DEFENSE

15          No vicarious liability can be imposed upon any of the

16   Church Defendants for any acts or omissions of any other person

17   in connection with this matter.

18          TENTH AFFIRMATIVE DEFENSE

19          Defendants assert the defense of comparative fault in

20   that individual and or entities other than the Defendants may

21   have fault in causing the alleged damage suffered by Plaintiff.

22          ELEVENTH AFFIRMATIVE DEFENSE

23          Defendants assert the defense that no duty statutory or

24   common law was owed to Plaintiff or breached in this matter.

25   ///

26   ///

Page  9 -   ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

BULLIVANT HOUSER BAILEY
A Professional Corporation
888 S.W. Fifth Avenue, Suite 300
Portland, Oregon 97204-2089
Telephone (503) 228-6351

10

1        TWELFTH AFFIRMATIVE DEFENSE

2        Defendants assert the defense of potential lack of

3    subject matter jurisdiction or diversity jurisdiction over this

4    matter may be lacking.

5        DATED:  August 4, 1998

6                    BULLIVANT, HOUSER, BAILEY
7                    A Professional Corporation
                     Telephone:  (503) 228-6351

8
9        By _Karen M. Vickers_
                    Stephen F. English, OSB 73084
10                   Lori R. Metz, OSB 85286
                     Karen M. Vickers, OSB 91381

11                   Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 10 - ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 1998, the foregoing .
ANSWER OF DEFENDANTS GREGORY FOSTER, THE CHURCH OF JESUS CHRIST
OF LATTER-DAY SAINTS, CORPORATION OF THE PRESIDENT AND
CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST
OF LATTER-DAY SAINTS TO PLAINTIFF'S THIRD AMENDED COMPLAINT was
served on the parties by delivering to their offices, by the
method indicated, copies thereof addressed as follows:

Gary E. Rhoades                                      HAND DELIVERY
Dunn Carney Allen Higgins & Tongue
851 SW Sixth Avenue, Suite 1500
Portland, OR  97204

    Attorneys for Plaintiffs

Joel T. Salmi
800 Bellevue Way NE, Ste. 300                        MAIL
Bellevue, WA 98004

    Attorneys for Plaintiffs


_Karen M. Vickers_
Karen M. Vickers

    Attorneys for Defendants


1 -   CERTIFICATE OF SERVICE

# EXHIBIT E

FILED

98 NOV 30 PH 3: 00

CLER... ...RICT COURT
DISTRICT OF OREGON
EUGENE. OREGON

BY_____

DOCKETE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JEREMIAH SCOTT, | ) | |
| Plaintiff, | ) | Civil No. 98-366-AA |
| vs. | ) | |
| CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole; GREGORY LEE FOSTER, an individual; THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole;) THE CORPORATION·OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, | ) ) ) ) ) ) ) ) ) ) ) | OPINION AND ORDER |
| Defendants. | ) | |

Gary Rhoades
Dunn, Carney, Allen, Higgins & Tongue
851 S.W. Sixth Avenue, Suite 1500
Portland, Oregon 97204-1357
        Attorney for plaintiff

Stephen F. English
Lori R. Metz
Karen M. Vickers
Bullivant, Houser, Bailey
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, Oregon 97204-2089
        Attorneys for defendants

1 - OPINION AND ORDER

EXHIBIT___1___
PAGE___1 OF 6___

AIKEN, Judge:

Defendants Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints, The Church of Jesus Christ of Latter-Day Saints, and the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints ("church defendants") bring this motion challenging this court's diversity jurisdiction, pursuant to Fed. R. Civ P. 16(a), (c). The church defendants move this court for a determination as to whether complete diversity exists between the parties. Rule 16 permits this court to address issues at an early stage of the litigation in order to "expedit[e] the disposition of this action," "discourag[e] wasteful pretrial activities," and address "the necessity or desirability of amendments to the pleadings." Fed. R. Civ. P. 16(a)(1), (2), and (c)(2). Specifically, the church defendants are concerned that inclusion of The Church of Jesus Christ of Latter-Day Saints ("LDS Church") may destroy diversity jurisdiction in this case.

## DISCUSSION

All parties agree that plaintiff is a citizen of Washington, that defendant Gregory Lee Foster is a citizen of Oregon, and that defendants Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints and Corporation of the President of the Church of Jesus Christ of Latter-Day Saints are Utah corporations sole. To this extent, the parties agree that diversity jurisdiction exists. However, the church defendants have denied the allegation that the LDS Church is a Utah corporation sole. See Third Amended Complaint, ¶ 6; Defendants' Answer, ¶ 5. The LDS Church maintains that it is a

2 - OPINION AND ORDER

EXHIBIT ____ |
PAGE 2 OF 6

1    unincorporated association with millions of members worldwide.

2    See Answer, ¶ 8. The church defendants are concerned that the

3    LDS Church's proper status as an unincorporated association may

4    destroy diversity jurisdiction.

5        The citizenship of an unincorporated association for federal

6    diversity purposes is the citizenship of each of the individual

7    members of the association. Carden v. Arkoma Assoc., 494 U.S.

8    185, 189 (1990). The church defendants argue that, under this

9    rule, the citizenship of the Washington members of the LDS Church

10   must be taken into account and because the Washington members

11   share citizenship with plaintiff, there is not complete

12   diversity.

13       In certain circumstances, however, an unincorporated

14   association may be deemed a citizen of a single state where there

15   is a statute which clothes it with corporate status:

16       Whether a religious society is to be treated as a
         corporation or as an unincorporated association for
17       purposes of determining its citizenship depends on
         state law. Where, under state statute, church
18       officers are deemed bodies corporate and unincorporated
         religious societies are to have like powers as
19       unincorporated societies with respect to gifts or grants,
         and may elect officers to sue for rights vesting in
20       consequence of such gifts or grants, they are for such
         purposes corporations and citizens of the state for
21       diversity jurisdiction purposes. On the other hand,
         where an unincorporated religious society is not
22       treated as a corporation by statute, then it is not a
         citizen of the state in its own right, but its
23       citizenship depends upon the citizenship of its members.

24   AmJur2d, Vol. 32A, § 844 (footnotes and internal citations

25   omitted).

26       There is no Oregon or Utah statute that provides the LDS

27   Church with corporate status, and therefore, it may not be deemed

28   a citizen of a single state.

---

3 - OPINION AND ORDER

EXHIBIT ____1____

PAGE _3 OF 6_

1    Further, courts have held that mere "capacity to sue" does

2    not establish citizenship for diversity purposes. See Chapman v.

3    Barney, 129 U.S. 677 (1889). The Ninth Circuit has held:

4        The citizenship of each member of an unincorporated
         association must be alleged, even though the entity
5        might be recognized as having the ability to sue and
         the liability to be sued.
6

7    Fifty Associates v. Prudential Ins. Co. of America, 446 F.2d

8    1187, 1190 (9th Cir. 1970) (internal citation omitted).

9        The plaintiff does not dispute the church defendants'

10   argument and concedes that if the LDS Church is, in fact, an

11   unincorporated association, complete diversity does not exist.

12       Plaintiff, however, points to an Arizona case where,

13   plaintiff alleges, the LDS Church "admitted" that it was a "Utah

14   corporation sole." See The Church of Jesus Christ of Latter-Day

15   Saints v. Brown, 764 P.2d 759 (Ariz. App. 1988). The church

16   defendants state that, in fact, the LDS Church had been sued as

17   "The Church of Jesus Christ of Latter-Day Saints, a corporation."

18   The LDS Church Answered that complaint by stating that the true

19   name of this defendant is "THE CORPORATION OF THE PRESIDENT OF

20   THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah

21   corporation (sole)." (Capitalization in original). Plaintiff's

22   Response Memorandum, Ex. 1, Answer, ¶ 1. There were no "judicial

23   admissions" made by the LDS Church that it was in fact a

24   corporation; rather, the LDS Church corrected plaintiffs'

25   erroneous naming of the wrong defendant by answering in the name

26   of the proper defendant in that action.

27       Further, plaintiff requests "credible documentation or

28   testamentary evidence" that the LDS Church is, in fact, an

4 - OPINION AND ORDER

EXHIBIT ____
PAGE 4 OF 6

1    unincorporated association.

2        In response, the church defendants attach Certificates of

3    Good Standing for the two defendant corporations named as parties

4    to this lawsuit, The Corporation of the President of the Church

5    of Jesus Christ of Latter-Day Saints, and The Corporation of the

6    Presiding Bishop of the Church of Jesus Christ of Latter-Day

7    Saints.  See Defendants' Reply Memorandum, Exs. 2, 3.  Attached

8    as Exhibit 4 is an Affidavit of Dwayne Liddell, Director of Risk

9    Management.  This Affidavit establishes that although the two

10   previously named corporate defendants are Utah corporations sole,

11   the LDS Church is not, rather, it "is an unincorporated religious

12   association with a worldwide membership of approximately 10

13   million members, including members in all fifty states."

14   Defendants' Reply Memorandum, Ex. 4, Liddell Affidavit at ¶ 4.

15       Once the defendant in a diversity suit has challenged the

16   plaintiff's allegations of diversity of citizenship, and has met

17   its burden of production, as the church defendants have here, the

18   plaintiff has the burden of proving that diversity jurisdiction

19   exists.  Lee v. Moss, 797 F.2d 747, 751 (9th Cir. 1986).

20   Plaintiff has not satisfied this burden.

21                           CONCLUSION

22       The church defendants' motion for judicial determination of

23   diversity jurisdiction (doc. 35) is granted.  Defendant LDS

24   Church defeats diversity jurisdiction in this case.  Plaintiff is

25   allowed ten (10) days from the date of this Order to amend his

26   ///

27   ///

28   ///

5 - OPINION AND ORDER

EXHIBIT ____
PAGE  5 OF 6

1    complaint or to refile this action in state court.   The church

2    defendants' request for oral argument is denied as unnecessary.

3         Dated this 30th day of November 1998.

4

5

6

7                              _Ann Aiken_

8                              Ann Aiken
                          United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6 - OPINION AND ORDER

EXHIBIT____|

PAGE___6 of 6

# EXHIBIT F

BEST AVAILABLE IMAGE POSSIBLE

**1522**                    **741 FEDERAL SUPPLEMENT**

ORDERED that the defendant's motion to dismiss be, and the same hereby is, DENIED.



CHURCH OF JESUS CHRIST OF LAT-
TER-DAY SAINTS, Douglas Bennett,
Finley Eversole, Frieda Eversole &
Barry Seidel

v.

JEFFERSON COUNTY, John Katopodis,
Chris McNair, David Orange,
Reuben Davis & Jim Gunter.

No. CV89-PT-0711-S.

United States District Court,
N.D. Alabama, S.D.

Feb. 7, 1990.

Church which unsuccessfully applied for rezoning to allow development of land for place of worship filed action against county alleging violation of its First and Fourteenth Amendment rights. The District Court, Propst, J., held that First and Fourteenth Amendment rights of church were violated by county's procedure for obtaining rezoning to allow development of land for churches, subject to neighborhood approval, which imposed undue burden on church and was not least restrictive means of achieving governmental purpose.

So ordered.

See also 721 F.Supp. 1212.

Constitutional Law ⊕84.5(18), 278.2(1)
Zoning and Planning ⊕76

Zoning ordinance requiring church to apply for rezoning to allow development of land for place of worship, subject to neighborhood approval, violated the First and

1. When the County Commission rezoned the South Central Bell tract, across the Cahaba River Road from the "Eversole tract," it required a

Fourteenth Amendment rights of church; rezoning application process was unduly burdensome and not the least restrictive means of accomplishing the governmental purpose, which could be achieved by establishing zoning areas available to all churches or, at least, having objective standards for making the rezoning determination. U.S.C.A. Const.Amends. 5, 14; Ala. Code 1975, § 22-27-40 et seq.

Donald H. Brockway, Jr., Douglas P. Corretti, Mary D. Hawkins, James R. Scalco, Corretti & Newsom, Birmingham, Ala., for plaintiffs.

Charles S. Wagner, Jeffrey Monroe Sewell, Asst. County Attys., Birmingham, Ala., for defendants.

PROPST, District Judge.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

*Findings of Fact*

This cause came on to be heard at a bench trial. After considering the facts suggested by the parties, objections thereto, and the court's own copious notes, the court finds the following facts:

Plaintiff The Church of Jesus Christ of Latter-Day Saints ("LDS") entered into a contract to purchase from plaintiffs Finley Eversole and Freida S. Eversole ("the Eversoles") a parcel of real estate containing approximately eleven acres located at the northwest corner of Altadena Road and Cahaba River Road (Old U.S. Highway 280 —Florida Short Route) in an unincorporated area of Jefferson County, Alabama. Said tract of land adjoins a single family residential subdivision, and is relatively near U.S. Highway 280 (a four lane highway), and Interstate Highway I-459 and is approximately one-fourth mile from the Alabama State Offices of South Central Bell (Colonnade)[1] and the Colonnade commercial, office and retail development and,

strip of residential zoning along Cahaba River Road and permitted no access from the South Central Bell property to Cahaba River Road.

**1212**                    **721 FEDERAL SUPPLEMENT**

at the time the federal tax liens were filed. Although the mortgage when originally filed may have been deemed perfected under state law, such a conclusion is not binding upon the United States when asserting priority of its tax liens. *See generally* Annotation, *Federal Tax Lien—Competing Liens,* 94 A.L.R.2d 748, 760 (1964). The court finds there is no genuine issue of material fact concerning the priority of the federal tax liens. Accordingly,

IT IS HEREBY ORDERED that the Government's motion for summary judgment declaring its federal tax liens superior to the defendant's mortgage be, and the same hereby is, GRANTED.



The CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, et al., Plaintiffs,

v.

JEFFERSON COUNTY, ALABAMA, et al., Defendants.

Civ. A. No. 89-AR-0711-S.

United States District Court,
N.D. Alabama, S.D.

Sept. 23, 1989.

Vendors of property and purchaser, a church, brought action challenging denial of zoning change to all construction of worship facility on the property. The District Court, Acker, J., held that: (1) no claim for denial of substantive due process could be asserted against persons making zoning decision; (2) there was no taking without just compensation; (3) there was no showing of equal protection; but (4) genuine issue of material fact existed as to whether there had been a violation of church's First Amendment rights.

Ordered accordingly.

**1. Zoning and Planning ⟜351, 610**

Elected officials who vote on zoning request can act for purely political reasons as partisan, political decision making, even by unknowledgeable, closed-minded politicians fearful of harm more than political is automatically deemed rational and thus cannot be arbitrary and capricious unless it is the product of corruption, i.e., the result of an outright bribe, as contrasted to some "legitimate" promise to deliver votes or some "legitimate" threat to withhold votes or to harass the politician "legitimately."

**2. States ⟜4.2**

Fourteenth Amendment siphoned and made applicable to the states the Fifth Amendment prohibition against the taking of private property by a governmental entity without the payment of just compensation and unless due process is afforded. U.S.C.A. Const.Amends. 5, 14.

**3. Eminent Domain ⟜2(1.2)**

There is no taking of property as a result of zoning decision where the property, as zoned, has substantial value and can be exploited economically. U.S.C.A. Const. Amend. 14.

**4. Eminent Domain ⟜277**

Property owners who had not pursued state claim of inverse condemnation had not exhausted their remedy before bring § 1983 action claiming an unconstitutional taking without compensation. 42 U.S.C.A. § 1983; U.S.C.A. Const.Amend. 5.

**5. Constitutional Law ⟜228.2**
   **Zoning and Planning ⟜167**

There was no denial of equal protection to those seeking change of zoning to permit construction of worship center in residential area where all applicants for rezoning of property for future construction and operation of a worship center on residential property are turned down. U.S. C.A. Const.Amend. 14.

**6. Constitutional Law ⟜274(3)**

Fourteenth Amendment incorporates the First Amendment and guarantees the right to exercise religion freely. U.S.C.A. Const.Amends. 1, 14.

CHURCH OF JESUS CHRIST v. JEFFERSON COUNTY, ALA.    1213

Cite as 721 F.Supp. 1212 (N.D.Ala. 1989)

**7. Constitutional Law ⇐42.2(1)**

Vendors of property which purchasers wished to use for construction of worship center did not assert violation of First Amendment rights by denial of zoning change and did not have standing to challenge denial on that basis. U.S.C.A. Const. Amend. 1.

**8. Constitutional Law ⇐42.2(1)**

Church which sought to purchase property and to build worship center thereon had standing to complain of violation of First Amendment rights by denial of zoning, even though it did not yet have title to the property. U.S.C.A. Const.Amend. 1.

**9. Federal Civil Procedure ⇐2491.5**

Genuine issues of material fact precluding grant of summary judgment existed as to whether there was a violation of church's First Amendment rights by denial of zoning change for property on which church sought to construct worship center. U.S.C.A. Const.Amend. 1.

---

Douglas P. Corretti, Mary D. Hawkins, James R. Scalco, Corretti & Newsom, Birmingham, Ala., for plaintiffs.

Jeffrey Monroe Sewell, Birmingham, Ala., for defendant Jefferson County, Ala.

Charles S. Wagner, Asst. County Atty., Birmingham, Ala., for all other defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

This court has for consideration a motion to dismiss or, in the alternative, a motion for summary judgment filed by defendants, Jefferson County, Alabama; David Orange; Reuben Davis; Jim Gunter; John Katopodis; and Chris McNair. The individual defendants are members of the Jefferson County, Alabama, Commission, the governing body of Jefferson County, and are sued in their representative capacities. The court will consider this motion as one invoking Rule 56, F.R.Civ.P.

## Pertinent Undisputed Facts

Plaintiffs Finley Eversole and Frieda Eversole own real property located in an unincorporated area of Jefferson County, Alabama. Plaintiff, The Church of Jesus Christ of Latter-Day Saints (herein "Church"), entered into a contract with the Eversoles to purchase their said property contingent on obtaining a zoning classification which will permit the construction of a worship facility. Plaintiffs Barry W. Seidel and Douglas Bennett are members of the Church. The Church wishes to construct and maintain a sanctuary and allied structures. The Eversoles' property is zoned E-1 (Estate Residential). Jefferson County's zoning ordinance does not allow churches to be constructed or maintained in an E-1 zone. Consequently, the Church and the Eversoles sought to have the property rezoned to a classification which would permit a place of worship.

Defendants concede that Jefferson County's zoning scheme permits churches only in an Institutional-1 (I-1) zoning district. In other words, to construct a church a property owner must either own property now located within an I-1 zone or have its classification changed to I-1. Defendants do not contradict plaintiffs' allegation that Jefferson County now contains no unoccupied property zoned I-1. Therefore, any proposed new church location in Jefferson County would necessitate a zoning change. (Complaint at 3). In compliance with the procedure provided by state law and the zoning ordinance, plaintiffs applied to the Jefferson County Planning and Zoning Commission to rezone this property. After a hearing, the Planning Commission unanimously recommended to the Commission that plaintiffs' application for rezoning be approved. The Commission then held its own public hearing on April 4, 1989, in accordance with required procedure. Rejecting the recommendation of the Planning Commission, the Commission denied plaintiffs' application for rezoning on a 3–2 vote.

After the Commission's action, plaintiffs filed their complaint in this court, invoking 42 U.S.C. § 1983. They allege the violation

| Citation | Found Document | Rank 1 of 1 | Database |
|---|---|---|---|
| 882 P.2d 1106 | | | OK-CS |
| (Cite as: 882 P.2d 1106) | | | |

Harold Ralph STOTTS, Esther Elizabeth Stotts, individually and as parents and
next friend[s] of Matthew John Stotts, a minor, Plaintiffs,

v.

CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS and Gregory Louis Turner,
Appellants and Third-Party Plaintiffs,

v.

LINDSEY CONSTRUCTION CO., INC., and Advanced Warnings, Inc., Appellees.
No. 83931.
Released for Publication by Order of the Court
of Appeals of Oklahoma, Division No. 1.

Court of Appeals of Oklahoma,
Division No. 1.
Sept. 13, 1994.

In personal injury action arising from automobile accident, defendants filed combined answer and third-party petition in which they denied they were negligent and also impleaded construction company and sign company, alleging that they had been negligent in manner that they warned motorists about ongoing construction work on street where accident occurred. The District Court, Muskogee County, William H. Bliss, J., granted third-party defendants' motions to dismiss third-party complaint. Defendants appealed. The Court of Appeals, Jones, J., held that: (1) fact that defendants denied all liability for negligence alleged by plaintiff did not preclude defendants' third-party claim for contribution, and (2) construction company waived any argument it may have had that third-party petition failed to state cognizable claim for contribution.

Reversed and remanded.

Stotts v. Church of Jesus Christ of Latter Day Saints
[1]
96    CONTRIBUTION
96k9    Actions
96k9(.5) k. In general.
Okl.App.,1994.
Third-party plaintiff need not state present claim for relief against third- party defendant;  rather, applicable statute requires only that third-party defendant "is or may be liable" to third-party plaintiff "for all or part of" liability that plaintiff in main action seeks to establish.  12 Okl.St.Ann. § 2014, subd. A.

Stotts v. Church of Jesus Christ of Latter Day Saints
[1]
96    CONTRIBUTION
96k9    Actions
96k9(3) k. Time for bringing action.
Okl.App.,1994.
Third-party plaintiff need not state present claim for relief against third- party defendant;  rather, applicable statute requires only that third-party defendant "is or may be liable" to third-party plaintiff "for all or part of" liability that plaintiff in main action seeks to establish.  12 Okl.St.Ann. § 2014, subd. A.

Stotts v. Church of Jesus Christ of Latter Day Saints
[2]
287    PARTIES
287IV    New Parties and Change of Parties
287k49    Bringing in New Parties

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

882 P.2d 1106
(Cite as: 882 P.2d 1106)

287k56 k. Proceedings in cause after adding parties.
Okl.App.,1994.
Combined answer and third-party petition is not subject to dismissal merely because it includes both denial of negligence in answer to plaintiff's allegations, and assertion of contribution rights over against third-party defendant. 12 Okl.St.Ann. §§ 2008, subd. E, par. 2, 2014, subd. A.

Stotts v. Church of Jesus Christ of Latter Day Saints
[3]
287    PARTIES
287IV   New Parties and Change of Parties
287k49    Bringing in New Parties
287k56 k. Proceedings in cause after adding parties.
Okl.App.,1994.
Third-party petition, just as original petition, should not be dismissed for failure to state claim unless it appears beyond doubt that third-party plaintiff can prove no set of facts in support of its claim that would entitle third-party plaintiff to relief. 12 Okl.St.Ann. § 2014, subd. A.

Stotts v. Church of Jesus Christ of Latter Day Saints
[4]
287    PARTIES
287IV   New Parties and Change of Parties
287k49    Bringing in New Parties
287k56 k. Proceedings in cause after adding parties.
Okl.App.,1994.
By delaying its quest for dismissal of third-party petition beyond date it answered, and by omitting its grounds for dismissal from its answer, third- party defendant waived any argument it may have had that third-party petition failed to state cognizable claim for contribution. 12 Okl.St.Ann. § 2012, subd. F, par. 1b.
*1107 Appeal from the District Court of Muskogee County; William H. Bliss, District Judge.

REVERSED AND REMANDED.

Dan S. Folluo and Edward J. Main, Secrest, Hill & Folluo, Tulsa, for appellants.

Ronald D. Wood, Ronald D. Wood & Associates, Tulsa, for appellee, Advanced Warnings, Inc.

Stephen C. Wilkerson, Knight, Wilkerson & Parrish, Tulsa, for appellee, Lindsey Const. Co., Inc.

MEMORANDUM OPINION

JONES, Judge:

On May 4, 1992, a vehicle driven by Harold Ralph Stotts collided with a vehicle driven by Gregory Turner. Turner was driving a vehicle on behalf of the Church of Jesus Christ of Latter Day Saints ["Church"]. Stotts sued Turner and Church for negligence. Church and Stotts filed a combined answer and third-party petition in which they denied they were negligent and also impleaded Appellees Lindsey Construction Company and Advanced Warnings, Inc. Appellants' third-party petition alleged Lindsey Construction and Advanced Warnings had been negligent in the manner that they warned motorists about ongoing construction work on the street where the accident occurred, and in other respects which would be disclosed by discovery. Advanced Warnings moved to dismiss Church's third-party petition, arguing that a third-party claim for contribution will not lie when the third-party plaintiff denies all liability for the negligence alleged by the plaintiff. The trial court granted the motion. Appellants filed a motion for new trial to challenge that ruling. Lindsey Construction, which had previously answered and cross-claimed against Advanced Warnings, then filed its own motion to dismiss, relying on the arguments and authorities previously made by Advanced Warnings. The trial court, by combined order, granted Lindsey Construction's motion to dismiss, and denied Appellants' motion for new trial.

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

We hold that Appellants' third-party petition stated a claim against Advanced Warnings and Lindsey Construction, and the trial court erred by dismissing the third-party petition.

Third-party practice in Oklahoma is governed by the following general provision of the Pleading Code:
> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and petition to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him or who is liable to him on a claim arising out of the transaction or occurrence that is the subject matter of a claim that is asserted against him....

12 O.S.1991 § 2014(A).

[1] A third-party plaintiff need not state a present claim for relief against third-party defendant(s). Section 2014 requires only that the third-party defendant "is or may be *1108 liable" to the third-party plaintiff "for all or part of" the liability which the plaintiff in the main action seeks to establish. Third-party practice in this way "accelerates" the presentation of the comparative rights between third-party plaintiff and third-party defendant. See 3 Moore's Federal Practice ¶ 14.08 (1994). Impleader "may also accelerate the right of contribution among joint tortfeasors even though such right is 'inchoate, unascertainable and contingent until [the joint tort-feasor] pays more than his proportionate share of the common liability.' " Id., at 14-61 [footnote omitted]; Oklahoma Gas & Electric Co. v. District Court, 784 P.2d 61, 66 n. 22 (Okla.1989).

> Contribution among joint tortfeasors is a right which exists "even though judgment has not [yet] been recovered against [the joint tortfeasor]." The fact that a claim for contribution may not accrue until the judgment's rendition does not bar the earlier assertion of the claim. The right of contribution may be asserted before judgment as either a permissive counterclaim, crossclaim, or as a third-party action.

Id., 784 P.2d at 67.

Appellees misread this Court's decision in Daugherty v. Farmers Cooperative

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

# EXHIBIT G

BEST AVAILABLE IMAGE POSSIBLE

**640** Mont.                852 PACIFIC REPORTER, 2d SERIES

more broadly than the Federal Constitution to permit the exercise of expressional rights on private property"); *Planned Parenthood League of Mass., Inc. v. Operation Rescue* (1990), 406 Mass. 701, 550 N.E.2d 1361 (preliminary injunction enjoining Operation Rescue members from engaging in trespass and other illegal activities was not overbroad and did not prohibit exercise of First Amendment rights); *People v. Yutt* (1992), 231 Ill.App.3d 718, 173 Ill.Dec. 500, 597 N.E.2d 208, cert. denied, 147 Ill.2d 696, 180 Ill.Dec. 157, 606 N.Ed.2d 1234 (1992) (criminal trespass conviction did not violate the defendants' free speech rights because the clinic, which leased a portion of a shopping center including the adjoining sidewalk and parking lot, had not opened its property as a public forum and had excluded all demonstrators regardless of their beliefs); and *City of Sunnyside v. Lopez* (1988), 50 Wash.App. 786, 751 P.2d 313 (criminal trespass conviction upheld because the complex of professional offices in which the defendant was arrested was not sufficiently open to the public to lose its character as private property).

We hold that neither the First Amendment nor Art. II, § 7 of the Montana constitution entitles Krautter to have access to Planned Parenthood's property in order to exercise her right of free speech.

Affirmed.

TURNAGE, C.J., and GRAY, WEBER and HUNT, JJ., concur.



Jonnie Musgrove DAVIS, Plaintiff, Appellant/Cross-Respondent,

v.

The CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS; Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints; Corporation of the President of the Church of Jesus Christ of Latter Day

Saints; Risk Management Division, Kalispell Stake Center of the Church of Jesus Christ of Latter Day Saints; and John Does I–X (unknown divisions, departments, subsidiaries, affiliates, associations, whether incorporated or unincorporated, agents, employees, bishops, presidents, assigns, or any other entity or person related to any of the above named Defendants), Defendants, Respondents/Cross Appellants.

No. 91–525.

Supreme Court of Montana.

Submitted Feb. 4, 1993.

Decided May 18, 1993.

Church member sued church for breach of fiduciary duty, fraud and negligent misrepresentation, and intentional infliction of emotional distress. The District Court, Eleventh Judicial District, Flathead County, Leif B. Erickson, J., dismissed all claims except that for breach of fiduciary duty, and both parties appealed. The Supreme Court, Weber, J., held that: (1) court properly dismissed claims; (2) fact issue precluded summary judgment on fiduciary duty claim; (3) evidence of religious sanctions imposed was inadmissible; (4) member could recover for pain and suffering; and (5) doctrine of charitable immunity does not exist in Montana.

Affirmed in part; reversed in part and remanded.

Trieweiler, J., concurred in part and dissented in part and filed opinion in which Hunt, J., joined.

Harrison, J., dissented and filed opinion.

**1. Fraud ⟨⟩12**

Church did not commit fraud by promising member injured on church property that it would immediately pay her medical bills if she submitted to physical examination; promise to pay was promise to do something in the future, rather than misrepresentation of existing fact.

**642** Mont.        852 PACIFIC REPORTER, 2d SERIES

for harm resulting from breach of duty imposed by the relationship.

**14. Judgment ⊜715(3)**

Doctrine of res judicata did not preclude church member who recovered damages for pain and suffering in negligence action against church from seeking damages for pain and suffering in later claim against same church for breach of fiduciary duty; pain and suffering alleged in later claim was caused by church's attempts to dissuade member from pursuing personal injury action rather than by the injury itself.

**15. Judgment ⊜540**

Doctrine of res judicata bars later claim if the following conditions are met: parties or their privies must be the same; subject matter of action must be the same; issues must be the same and must relate to same subject matter; and capacities of parties must be the same in reference to subject and issues before them.

**16. Charities ⊜45(2)**

Charitable immunity defense is not recognized in Montana.

**17. Charities ⊜45(2)**

Doctrine of "charitable immunity", where recognized, is exception to general principle of liability for tortious conduct.

See publication Words and Phrases for other judicial constructions and definitions.

---

Dana L. Christensen, Kendra L. Kawaguchi, Murphy, Robinson, Heckathorn & Phillips, Kalispell, for plaintiff, appellant.

Kenneth E. O'Brien, Hash, O'Brien & Bartlett, Kalispell, for defendants, respondents.

WEBER, Justice.

This is an appeal and cross-appeal from an order of the District Court of the Eleventh Judicial District, Flathead County. Plaintiff appeals the District Court's summary judgment order dismissing claims of negligent misrepresentation, fraud, and intentional infliction of emotional distress. Defendants' cross-appeal challenges the

District Court's failure to dismiss a claim for breach of fiduciary duty and denial of their request to include the defense of charitable immunity. Both plaintiff and defendants appeal the District Court's ruling on motions in limine. We affirm in part and reverse in part.

The issues for our review are:

1. Did the District Court err in granting summary judgment in favor of the defendants on the claims of fraud and misrepresentation?

2. Did the District Court err in granting summary judgment in favor of the defendants on the claim of intentional infliction of emotional distress?

3. Did the District Court err in failing to dismiss the breach of fiduciary duty claim?

4. Did the District Court err in its rulings on motions in limine relative to exclusion of evidence based on the doctrine of separation of church and state?

5. Did the District Court err when it denied the defendants' motion in limine to exclude physical and mental pain and suffering as elements of damage relative to the remaining counts alleged by Davis?

6. Did the District Court err in refusing to allow defendants to amend their answer to include the defense of charitable immunity?

On July 20, 1987, Jonnie Musgrove Davis (Davis) sued the defendants, herein collectively referred to as the Church, to recover for injuries suffered as a result of a fall on February 25, 1985, on the premises of the Kalispell Stake Center of the Church of Jesus Christ of Latter Day Saints. In addition to the claims of negligent misrepresentation, fraud and intentional infliction of emotional distress which are covered by this appeal, Davis also filed negligence claims.

At the request of the Church, the District Court bifurcated the negligence claims from the claims involved in this action. Evidence in the negligence trial showed that Davis had undergone six separate surgeries to her cervical spine and one surgery

HOTALING v. CHURCH OF LATTER-DAY SAINTS                199
Cite as 118 F.3d 199 (4th Cir. 1997)

closely reviewing the very piece of evidence at issue. It was a single comment in an otherwise unobjectionable argument by the government. The proof of Sanchez's guilt was quite strong and the comment being contested was, at best, peripheral to the credibility of one single source of incriminating evidence. We are satisfied that it could not unfairly have affected the jury's decision in any way given the other persuasive evidence against Sanchez.

VI

[14] Sanchez finally challenges the instructions given to the jury regarding the presumption of innocence. He argues that by including in those instructions a statement that a defendant begins a criminal trial with a "clean slate," the court unfairly minimized the depth and importance of the presumption of innocence. We find no merit in that contention.

The instruction in whole, as largely derived from § 12.10 of Devit's *Federal Jury Practice and Instructions*, was:

Now, as you know, this is a criminal case. There are three basic rules about a criminal case that you must keep in mind. First, the defendant is presumed innocent until proven guilty. The indictment against the defendant brought by the government is only an accusation, nothing more. It is not proof of guilt or anything else. The defendant, therefore, starts out with a clean slate.

Second, the burden of proof is on the government until the very end of the case. The defendant has no burden to prove his innocence or to present any evidence or to testify....

Third, the government must prove the defendant's guilt beyond a reasonable doubt. And I will give you further instructions on this point later. But bear in mind, in this respect, that a criminal case is different from a civil case.

Joint 81.

We can find no error in these instructions. Sanchez points to no decision finding error in comparable "clean slate" references. Instructions incorporating such a refer-

ence have been expressly upheld by several other circuits. See *United States v. Littlefield*, 840 F.2d 143, 146 (1st Cir.1988); *United States v. Walker*, 861 F.2d 810, 813 nn. 7 & 8 (5th Cir.1988); *United States v. Hollister*, 746 F.2d 420, 424 (8th Cir.1984); *United States v. Cummings*, 468 F.2d 274, 280 (9th Cir.1972). We agree with those circuits that the reference in the context made could not constitute reversible error.

*AFFIRMED.*



Donna R. HOTALING; William W. Hotaling, Jr.; James P. Maher; Dorothy C. Sherwood, Plaintiffs-Appellants,

v.

CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, Defendant-Appellee.

No. 96-1399.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 29, 1997.

Decided June 30, 1997.

Holders of copyrights in genealogical research materials brought infringement action against church which had added materials to its library collection and made copies for its branch libraries. The United States District Court for the Eastern District of Virginia, Claude M. Hilton, J., granted summary judgment for church, and copyright holders appealed. The Court of Appeals, Butzner, Senior Circuit Judge, held that: (1) act of adding work to library's collection, listing work in library's index or catalog system, and making work available to borrowing or browsing public was "distribution" of work within meaning of Copyright Act; (2) fact issues as to whether copy of copyrighted work was being distributed by library to public within

**200**           **118 FEDERAL REPORTER, 3d SERIES**

three-year limitation period precluded summary judgment for library on grounds that action was time-barred; and (3) copyright holder's alleged knowledge, before three-year limitation period, that library held unlawful copy did not preclude action based on distribution occurring with limitations period.

Reversed and remanded.

K.K. Hall, Circuit Judge, filed dissenting opinion.

**1. Federal Courts ⟷776**

Court of Appeals reviews entry of summary judgment de novo, applying same standard as district court.

**2. Limitation of Actions ⟷95(7)**

Cause of action for copyright infringement accrues when one has knowledge of violation or is chargeable with such knowledge. 17 U.S.C.A. § 507(b).

**3. Copyrights and Intellectual Property ⟷80**

Party does not waive right to sue for copyright infringements that accrue within three years of filing by not asserting related claims that accrued beyond three years and are thus barred by statute of limitations. 17 U.S.C.A. § 507(b).

**4. Copyrights and Intellectual Property ⟷80**

Party cannot reach back, based on acts of copyright infringement that accrued within limitations period, and recover for infringement claims that accrued outside limitations period. 17 U.S.C.A. § 507(b).

**5. Copyrights and Intellectual Property ⟷38.5**

Pursuant to first-sale doctrine, copyright owner's right to distribute copyrighted work does not generally prevent owner of lawful copy of work from selling, renting, lending, or otherwise disposing of lawful copy. 17 U.S.C.A. § 109(a).

**6. Copyrights and Intellectual Property ⟷53(1)**

Distributing unlawful copies of copyrighted work violates copyright owner's distribution right and, as result, constitutes

copyright infringement. 17 U.S.C.A. §§ 106(3), 501(a).

**7. Copyrights and Intellectual Property ⟷53(1)**

Library operator's act of adding work to library's collection, listing work in library's index or catalog system, and making work available to borrowing or browsing public constituted "distribution" of work within meaning of Copyright Act. 17 U.S.C.A. § 106(3).

See publication Words and Phrases for other judicial constructions and definitions.

**8. Copyrights and Intellectual Property ⟷89(2)**

Material issue of fact as to whether copy of copyrighted work was being distributed by defendant library to public within three-year limitations period under Copyright Act precluded summary judgment for library in infringement action brought by copyright holders. 17 U.S.C.A. §§ 106(3), 507(b).

**9. Copyrights and Intellectual Property ⟷83(4)**

Evidence that paper copy of copyrighted work was discovered in library did not support conclusion that library unlawfully distributed that copy to public, as unrebutted evidence indicated that paper copy was made and left behind by library patron, and there was no evidence to show that copy was made part of library's collection or listed in library's catalog file. 17 U.S.C.A. § 106(3).

**10. Copyrights and Intellectual Property ⟷83(3.1)**

Fact that branch libraries returned six copies of copyrighted work to main library within limitations period did not support conclusion that such copies were unlawfully distributed to public within limitations period, for purpose of copyright infringement action, as evidence did not reveal where branch libraries found those copies or whether copies had been available for public use. 17 U.S.C.A. §§ 106(3), 507(b).

HOTALING v. CHURCH OF LATTER-DAY SAINTS    **201**
Cite as 118 F.3d 199 (4th Cir. 1997)

**11. Copyrights and Intellectual Property**
⊂⟐80

Copyright holder's alleged knowledge, before three-year limitations period, that library operator held unlawful copy of copyrighted work for distribution did not bar infringement action based on operator's distribution of work during limitations period, since copyright holder may recover for infringements that occurred within three years before suit was filed, even if earlier claims were not pursued. 17 U.S.C.A. §§ 106(3), 501(a).

**12. Copyrights and Intellectual Property**
⊂⟐74, 80

Each act of copyright infringement is distinct harm giving rise to independent claim for relief.

**13. Copyrights and Intellectual Property**
⊂⟐83(3.1)

Even if actual use of copyrighted work by public had to be shown to establish distribution of that work by library, copyright holder would not be required to prove particular instances of use by public when proof was impossible to produce because infringing library had not kept records of public use.

ARGUED: Hunter Craycroft Harrison, Jr., McLean, VA, for Appellants. Michael Abbott Grow, Vorys, Sater, Seymour & Pease, Washington, DC, for Appellee.

Before HALL and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Reversed and remanded by published opinion. Senior Judge BUTZNER wrote the majority opinion, in which Judge LUTTIG joined. Judge HALL wrote a dissenting opinion.

## OPINION

BUTZNER, Senior Circuit Judge:

In this appeal we hold that a library distributes a published work, within the meaning of the Copyright Act, 17 U.S.C. §§ 101 et seq., when it places an unauthorized copy of the work in its collection, includes the copy in its catalog or index system, and makes the copy available to the public. Because the district court ruled that these actions, by themselves, were insufficient to constitute distribution, we reverse the district court's summary judgment for the library and remand this case for further proceedings.

[1] Summary judgment is appropriate only if the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review the entry of summary judgment de novo, applying the same standard as the district court. Stone v. Liberty Mutual Ins. Co., 105 F.3d 188, 191 (4th Cir.1997).

### I

We present the facts in the light most favorable to the plaintiffs, Donna Hotaling, William Hotaling, Jr., James Maher, and Dorothy Sherwood (collectively the Hotalings). See Yarnevic v. Brink's, Inc., 102 F.3d 753, 756 (4th Cir.1996). The Hotalings compiled and copyrighted a number of genealogical research materials. The validity of the copyrights is not at issue at this stage of the litigation. The Hotaling research materials were published in microfiche form and marketed by All-Ireland Heritage, Inc. At some point, most likely between 1985 and 1989, the defendant, the Church of Jesus Christ of Latter-Day Saints (Church), acquired a single legitimate copy of the microfiche and added it to its main library's collection in Salt Lake City, Utah. Sometime before 1992, the Church made microfiche copies of the works without the Hotalings' permission and sent the copies to several of its branch libraries, located throughout the country. The legitimately acquired copy had a black background, and the copies that were made by the Church had purple backgrounds.

In July, 1991, Donna Hotaling learned that the Church was making copies and placing them in its branch libraries. She contacted the Church and demanded that it stop this activity. After receiving her complaint, the Church recalled and destroyed many of the copies that it had made. According to the

## CHURCH OF JESUS CHRIST v. SUPERIOR COURT    Ariz. 431
Cite as 714 P.2d 431 (Ariz.App. 1985)

148 Ariz. 261

The CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, and the City of Tucson, Petitioners,

v.

SUPERIOR COURT of the State of Arizona, In and For the County of Pima and Honorable Robert Buchanan, a judge thereof, Respondents,

and

Susan CONNELLY, Real Party in Interest.

Nos. 2 CA–SA 0261, 2 CA–SA 0262.

Court of Appeals of Arizona, Division 2, Department B.

Aug. 29, 1985.

Rehearing Denied Oct. 16, 1985.

Review Denied Feb. 12, 1986.

Parent of 11-year-old child who was killed after being struck by an automobile when he rode from church parking lot into city street without stopping brought action against various defendants including city and church. Both church and city brought special actions following denial of their motions for summary judgment. The Court of Appeals, Hathaway, P.J., held that: (1) church parking lot did not constitute an attractive nuisance, and (2) city did not breach its duty to keep streets reasonably safe.

Orders vacated; summary judgment granted.

1. Negligence ⚖33(1)

Possessor of land is not liable to trespassers for physical harm caused by failure to exercise reasonable care to put land in a condition reasonably safe for their reception.

2. Negligence ⚖35

Owner of sloping parking lot was not liable to trespassing 11-year-old boy struck by automobile in city street after he had ridden down driveway from parking lot into

street without stopping on theory that parking lot constituted an attractive nuisance absent evidence showing that child was unable to appreciate clear danger of riding bicycle into street without yielding.

3. Municipal Corporations ⚖763(1), 795

City has a duty to keep its streets reasonably safe for travel which extends to removing obstructions and hazards and requiring warning of known dangerous conditions on streets.

4. Automobiles ⚖257

City did not breach its duty to keep streets reasonably safe to protect 11-year-old child from injury where he broke usual "rules of the road" by failing to yield right-of-way to an oncoming vehicle in riding his bicycle from private parking lot into city street without stopping.

---

Bury, Moeller & Humphrey by Marshall Humphrey, III, Tucson, for petitioner Church of Jesus Christ of Latter Day Saints.

Kimble, Gothreau, Nelson & Cannon, P.C. by Daryl A. Audilett, Tucson, for petitioner City of Tucson.

Haralson, Kinerk & Morey, P.C. by Michael E. Larkin and Denneen L. Peterson, Tucson, for real party in interest.

HATHAWAY, Presiding Judge.

These special actions have been taken from the trial court's denial of motions for summary judgment filed by the two petitioners. Since the trial court's denials of the petitioners' motions were interlocutory, non-appealable orders, see A.R.S. § 12-2101, and since these cases present no disputed issues of material fact which necessitate presention to a trier of fact, special action jurisdiction is appropriate and we grant relief.

The facts show that on July 27, 1983, Chris Stewart, an eleven-year-old boy, was struck by an automobile while riding his bicycle on Chapel Avenue in Tucson. The boy subsequently died of injuries sustained in the accident. Prior to the accident, Chris

432  Ariz.        714 PACIFIC REPORTER, 2d SERIES

and his brother Matthew had been riding their bicycles several times down a sloped, paved driveway leading from the private parking lot situated behind the Church of Jesus Christ of Latter Day Saints (Mormon Church) directly onto Chapel Avenue, without stopping.  In January 1984 the boy's surviving mother, Susan Connelly, the real party in interest in both special actions, filed suit for wrongful death against the City of Tucson, the Mormon Church, and the driver of the vehicle which struck the boy.  The driver is no longer a party to the action.  Both the City and the Mormon Church filed motions for summary judgment, the denials of which are the basis of these special actions.

Generally, summary judgment is not appropriate in negligence cases.  *Barnhizer v. Paradise Valley Unified School District*, 123 Ariz. 253, 599 P.2d 209 (1979); *Boozer v. Arizona Country Club*, 102 Ariz. 544, 434 P.2d 630 (1967).  However, it is proper when a record demonstrates no material issues of fact and that the moving party is entitled to judgment as a matter of law.  *Jabczenski v. Southern Pacific Memorial Hospitals*, 119 Ariz. 15, 579 P.2d 53 (App.1978).

[1, 2]  We first address the duty owed by the Mormon Church to the decedent.  Ordinarily, a landowner's duty to a trespasser (there is no dispute that the decedent was trespassing on church property at the time just prior to the accident) is not to wilfully or wantonly injure him.  *Barnhizer, supra; Buckeye Irrigation Company v. Askren* 45 Ariz. 566, 46 P.2d 1068 (1935).  As stated in the Restatement of Torts (Second) § 333 (1965), a possessor of land is not liable to trespassers for physical harm caused by failure to exercise reasonable care to put land in a condition reasonably safe for their reception.  To overcome this hurdle, the real party in interest relied on an exception to the rule commonly known as the doctrine of attractive nuisance.  *Spur Feeding Company v. Fernandez*, 106 Ariz. 143, 472 P.2d 12 (1970); W. Prosser Law of Torts at 364 (4th Ed.1971).  Section 339 of the Restatement provides:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

*    *    *    *    *

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling within or in coming within the area made dangerous by it ..."

As the court stated in *McHugh v. Reading Company*, 346 Pa. 266, 30 A.2d 122 (1943):

"The purpose of the *duty* [of the landowner to trespassing children] is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger."  346 Pa. at 269, 30 A.2d at 123.  (Emphasis in original)

In *Barnhizer, supra*, the thirteen-year-old decedent trespassed on school property, climbing to the roof of a school building, falling, and eventually dying.  The court found as a matter of law that a condition which must exist before a duty arose to protect the decedent against his own folly was that the decedent be unable *to* appreciate the harm which might result from his own immature recklessness in the case of unknown danger.  In *Barnhizer*, the court found that the decedent, just shy of his fourteenth birthday, and of the age and intelligence to appreciate the clear danger of falling, made the attractive nuisance doctrine inapplicable.  Similarly, in *Carlson v. Tucson Racquet and Swim Club*, 127 Ariz. 247, 619 P.2d 756 (App.1980), the sixteen-year-old plaintiff trespassed on the grounds of a swim club, dove into the pool and sustained a paralyzing spinal cord injury.  We cited *Barnhizer, supra*, finding that the attractive nuisance doctrine was limited to dangerous conditions which could not be understood or appreciated by a youthful plaintiff.  We stated, "Where the plaintiff is of the age and experience to appreciate the danger that produces his injury the doctrine does not apply."  127 Ariz. at 249, 619 P.2d at 758.

The evidence was that the decedent's death was caused by his desire to drive his bicycle fast down the sloped driveway out onto Chapel Avenue. The evidence before the trial court reflected that the decedent had ridden his bike since the age of five and had participated in a school guard crossing program in which he apparently had led other students across intersections on their way to school. There is nothing in the record to show that the decedent, because of age and/or intelligence, was unable to appreciate the clear danger of riding his bicycle out into a city street without yielding to oncoming traffic. Under comment *m* to § 339 of the Restatement at 204, "the possessor [of land] is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but none the less chooses to encounter it out of recklessness or bravado." The facts of this case fit squarely within the comment to the Restatement and the above-cited cases, and we find that the attractive nuisance doctrine is inapplicable. Accordingly, the Mormon Church had no duty to the decedent-trespasser other than to not willfully or wantonly injure him.

The church's motion for summary judgment should therefore have been granted.

[3, 4]  As to the case against the City of Tucson, the real party in interest's claim of liability was predicated on the city's having repaved Chapel Avenue, dropping its grade three feet and thereby increasing the angle of the slope of the church's driveway. Additionally, it was alleged that the city's easement extended halfway up the paved driveway and that the city itself paved the bottom half of the driveway at one time. The case is similar to the facts presented in our case of *Coburn v. City of Tucson*, 143 Ariz. 76, 691 P.2d 1104 (App. 1984), approved as modified in *Coburn v. City of Tucson*, 143 Ariz. 50, 691 P.2d 1078 (1984). The city has a duty to keep its streets reasonably safe for travel. *Lowman v. City of Mesa*, 125 Ariz. 590, 611 P.2d 943, (App.1980). The duty extends to removing obstructions and hazards, *Beach v. City of Phoenix*, 136 Ariz. 601, 667 P.2d 1316 (1983), and the city must warn of

known dangerous conditions on the streets. *Ofstedahl v. City of Phoenix*, 129 Ariz. 85, 628 P.2d 968 (App.1981). As the Supreme Court pointed out in its *Coburn* decision, the city's duty is to conform to the recognized standard of conduct, which is to keep its streets reasonably safe for travel, citing *City of Phoenix v. Weedon*, 71 Ariz. 259, 226 P.2d 157, (1950) and *City of Phoenix v. Clem*, 28 Ariz. 315, 237 P. 168 (1925). However, the Supreme Court pointed out that motorists (and the extension to bicyclists in this case is appropriate) have a concomitant duty to drive with reasonable care. Liability does not attach unless there is also a duty.

As in *Coburn*, here the issue is not whether the city had a duty toward the decedent, since it did have the duty to keep the streets reasonably safe for travel by the decedent and other people. Rather, the issue is whether there is "evidence sufficient to create a question of fact on the issue of whether the city's [action in lowering the grade of Chapel Avenue and failing to warn of a possibly dangerous condition] was conduct which fell below the standard of care and thus breached the duty." 143 Ariz. at 53, 691 P.2d at 1081. Since we can answer that question in the negative, the trial court erred in failing to grant summary judgment. The reason it can be answered in the negative is because the city is not bound to provide perfect streets for travel, "but only those which are 'reasonably safe.' What is 'reasonably safe' takes into consideration certain minimal expectations that travelers follow the usual rules of the road." 143 Ariz. at 54, 691 P.2d at 1082. Cf. *Beach v. City of Phoenix*, supra; *Rodgers v. Ray*, 10 Ariz.App. 119, 457 P.2d 281 (1969). In this case, it is undisputed that the decedent broke the "usual rules of the road" by failing to yield the right-of-way to an oncoming vehicle. Accordingly, as in *Coburn*, while the city had a duty to keep the streets reasonably safe, there was no breach of that duty and therefore no liability. Therefore, the motion for summary judgment of the City of Tucson should have been granted as well. The orders of



CHURCH OF JESUS CHRIST v. SUPERIOR COURT    Ariz.  759
Cite as 764 P.2d 759 (Ariz.App. 1988)

on discovery of facts or opinions of experts, expected to testify at trial, acquired or developed in anticipation of litigation or for trial. The Committee Note anticipates in general that discovery from trial experts should be granted perfunctorily. Rule 26(b)(4), Committee Note at 217.

The order of the trial court is affirmed. Relief is denied.

BROOKS, P.J., and EUBANK, J., concur.



You have a complete copy of this case.

159 Ariz. 24

The CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Cheryl K. Hendrix, a Judge thereof, Respondent Judge,

Cynthia BROWN, as Guardian for Adriene Leigh Brown; Willa Ray; Kenneth Ray, Real Parties in Interest.

No. 1 CA-SA 267.

Court of Appeals of Arizona, Division 1, Department B.

July 21, 1988.

Review Denied Dec. 20, 1988.

Mother of victim of child abuse brought suit against alleged molestor and against church, charging that church was negligent in counseling and treating alleged molester and in failing to report his conduct to law enforcement officials. Discovery was sought from three church officials, who claimed that information sought was privileged under clergyman/penitent privilege. The Superior Court, Maricopa County, Cause No. C-517976, Cheryl K.

Hendrix, J., compelled discovery in part. Church brought special action in Court of Appeals. The Court of Appeals, Fidel, J., held that: (1) special action was proper means to seek relief from order requiring disclosure of material claimed to be protected by privilege; (2) clergyman/penitent privilege could be impliedly waived; (3) alleged molester, by making disclosures to police department concerning his communications with church officials, waived any privilege that might otherwise have applied to his conversations with those officials or to conversations among officials; and (4) church officials had no statutory privilege independent of alleged molestor's.

Review accepted, relief denied.

1. Courts ⟐207.1

Special action is proper means to seek relief when trial court orders disclosure that party or witness believes to be protected by privilege.

2. Witnesses ⟐217

Statutory clergyman/penitent privilege belongs to penitent, and clergyman may not disclose penitent's confidences without penitent's consent. A.R.S. § 12-2233.

3. Witnesses ⟐219(1)

Clergyman/penitent privilege is susceptible to implied waiver through conduct inconsistent with maintenance of conversational privacy. A.R.S. §§ 12-2231 et seq., 12-2231 to 12-2237.

4. Witnesses ⟐219(1)

Legislature by its silence on issue of implied waiver of clergyman/penitent privilege has left grounds for waiver of privilege entirely to commonlaw. A.R.S. §§ 12-2231 et seq., 12-2231 to 12-2237.

5. Witnesses ⟐219(1)

Where, during investigation into charges of abuse, alleged child molester revealed to police not only fact, but also substance of his communications with church officials regarding his sexual conduct, alleged abuser impliedly waived clergyman/penitent by inconsistent conduct for

# EXHIBIT H

CHURCH OF JESUS CHRIST, ETC. v. INDUS. COM'N    Ariz. **581**
Cite as 724 P.2d 581 (Ariz.App. 1986)

## ATTORNEY'S FEES

[5, 6] Both parties, pursuant to A.R.S. § 12–341.01(A), have requested attorney's fees incurred on appeal and in the trial court. Although attorney's fees were requested in both the complaint and the answer, they were not mentioned in the motion or cross-motion for summary judgment, and attorney's fees were neither awarded nor addressed in the judgment.

Arizona Revised Statutes § 12–341.01(A) provides for recovery of attorney's fees in an action "arising out of a contract, express or implied." In *Ash, Inc. v. Mesa Unified School Dist.*, 138 Ariz. 190, 673 P.2d 934 (App.1983), we interpreted this provision, stating, "Thus, as used in A.R.S. § 12–341.01, the words, 'arising out of a contract' describe an action in which a contract was a factor causing the dispute." 138 Ariz. at 192. Analogously, in *Sparks v. Republic Nat'l Life Ins. Co.*, 132 Ariz. 529, 647 P.2d 1127 (1982), our supreme court, in discussing attorney fee awards for claims sounding in tort, stated, "The fact that the two legal theories are intertwined does not preclude recovery of attorney's fees under A.R.S. § 12–341.01(A) as long as the cause of action in tort could not exist *but for* the breach of the contract." 132 Ariz. at 543, 647 P.2d 634. Here, but for the two insurance contracts with Long's, there would be no dispute. Further, recovery of attorney's fees under the statute may be granted even if the successful party plaintiff was not a party to the contract which formed the basis of the claim. *See Nationwide Mut. Ins. Co. v. Granillo*, 117 Ariz. 389, 573 P.2d 80 (App. 1977) (to be awarded attorney fees under A.R.S. § 12–341.01, a successful party defendant need not have been a party to the contract).

## CONCLUSION

For the above-stated reasons, the matter is reversed and remanded with instructions to the trial court to grant National's motion for summary judgment. We also grant appellant's request for attorney's fees incurred before the trial court and on appeal.

724 P.2d—14

Appellants are directed to submit an affidavit in accordance with Rule 21(c), Arizona Rules of Civil Appellate Procedure, and *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

KLEINSCHMIDT, P.J., concurs in the substantive result.



150 Ariz. 495
## CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, Petitioner Employer,

Church of Jesus Christ of Latter Day Saints, c/o Risk Management Division, Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Gilbert Estrada, Respondent Employee.

No. 1 CA-IC 3334.

Court of Appeals of Arizona, Division 1, Department D.

Feb. 20, 1986.

Insurer issued notice of claim status closing claim of injured employee with unscheduled permanent impairment. After Industrial Commission employee notified insurer that medical report might not support finding of permanent impairment, second notice of claim status was issued which stated claimant had no permanent disability. Employee protested the second notice. Administrative law judge, William E. Smith, ICA Claim No. 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, entered award finding that first notice of claim status was res judicata as to employee's physical condition. Insurer sought review. The Court of Appeals, Jacobson, J., held that: (1) medical report raised inferences of

stationary conditioning and lessening of postinjury working capabilities; (2) first notice of claim status was not void; (3) claims technician could not bind the Commission as to effect of doctor's report; and (4) neither insurer nor claimant could avoid effect of the notice of claim status, after 90-day period has expired, by simply claiming it was erroneous.

Award affirmed.

### 1. Workers' Compensation ⟨key⟩1990

Medical report, which stated that injured employee was just about the same and could not return to his preinjury employment, raised inferences of stationary condition and lessening of postinjury working capabilities, and thus was not "directly contrary" to the notice of claim status indicating permanent disability; therefore, notice of claim status was not void on its face, even though report did not unambiguously find "stationary condition" with "permanent function impairment."

### 2. Workers' Compensation ⟨key⟩2001

Insurer had duty and privilege under law to make initial ex parte decisions relating to the processing of claims and payments of benefits under Workers' Compensation Act, and therefore insurer could not avoid res judicata effect of first notice of claim status, which indicated permanent disability, on theory that second notice of claim status was given as result of Industrial Commission's employee's representation that first notice of claim status was not supported by medical report and that time limit of 90 days would not commence until proper notice was filed.

### 3. Workers' Compensation ⟨key⟩2001

Claims technician could not bind the Industrial Commission as to the effect of doctor's report concerning disability of injured employee, as such procedure would be completely contrary to right of insurer to process its claims.

1. The employer is a self insurer and will hereaf-

### 4. Workers' Compensation ⟨key⟩2001

Both claimant and insurer could void binding effect of notice of claim status within 90 days of issuance, but, after the 90-day period had expired, neither claimant nor insurer could avoid the effect of the notice by simply claiming it was erroneous; therefore, insurer was bound by its own notice of claim status after 90 days, even if this resulted in claimant being unjustly enriched.

Law Office of John F. Day, P.C. by John F. Day, Phoenix, for petitioner employer and petitioner carrier.

Dennis P. Kavanaugh, Chief Counsel Industrial Com'n of Arizona, Phoenix, for respondent.

Schiffman, Hozier & Kurth, P.C. by Dennis R. Kurth and Chris T. Johnson, P.C., Phoenix, for respondent employee.

JACOBSON, Judge.

The issue raised in this review of an award of the Industrial Commission is whether a carrier may "correct" a Notice of Claim Status, finding a permanent disability, more than 90 days after the Notice is issued.

The facts are basically undisputed. The claimant, Gilbert Estrada, was injured while employed by the Church of Jesus Christ of Latter-Day Saints [1] on the L.D.S. Church Farm. On April 14, 1983, the carrier issued a Notice of Claim Status closing the claim as of March 8, 1983, with an unscheduled permanent impairment. No medical report supporting the closing was filed with the Commission.

On April 17, 1983, the Commission notified the carrier of the lack of a medical report and requested submission of form 107, which triggers a determination of benefits. In early May, 1983, the carrier responded to this inquiry by sending the Commission a medical report authored by Dr. John Whisler. This report opined that "patient is just about the same and is at

ter be referred to as the "carrier".

Church referred to as "carrier."

ment of the amounted specified may be granted.

For example, the third exemption stated:

3.  Evidence Of Final Adjudication of Nonliability—that is, evidence that you have been found not liable in a civil action at law arising out of the accident. (Accordingly, evidence of a police court's having found you not guilty of a traffic violation is not evidence);  .  .  .

A review of the entire notice reveals a serious deficiency or incompleteness in imparting essential knowledge to the licensee; so that he might make an intelligent and informed decision as to whether to waive his constitutional right to a pre-suspension hearing. Specifically, the notice is not designed to inform the licensee that he is entitled to a pre-suspension hearing to determine whether there was a reasonable probability that he was at fault, and a judgment might be rendered against him as a result of the accident.

Due process is not a technical conception with a fixed content unrelated to time, place, and circumstances; it is flexible and requires such procedural protections as the particular situation demands. In an analysis of a procedure an important factor is the risk of an erroneous deprivation of a private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.[6]

The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it'. [Citation] All that is necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard' [Citation] to insure that they are given a meaningful opportunity to present their case  .  .  .[7]

6.  Id. at pp. 334–335 of 424 U.S., 96 S.Ct. 893.

7.  Id. at pp. 348–349 of 424 U.S., at p. 909 of 96 S.Ct.

To comport with the requirements of due process, the notice must be of such nature as reasonably to convey the required information.[8] . In assessing the adequacy of a notice the central issue is whether the communication contains the type of information which is reasonably calculated to afford the informant an opportunity to be heard at a meaningful time and in a meaningful manner.[9]

In *Bell v. Burson,* a constitutional standard was established; the legislature implemented this standard in Sec. 41–12–2(c). The notice sent to plaintiff cannot be deemed to contain the type of information reasonably calculated to inform him of the type and nature of pre-suspension hearing to which he was entitled under the due process clause.

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.



The CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, Plaintiff,

v.

INDUSTRIAL COMMISSION of Utah, and Ivan L. Thurman, Defendants.

No. 15640.

Supreme Court of Utah.

Jan. 16, 1979.

Janitor filed claim for workmen's compensation benefits. The Industrial Commission awarded compensation to janitor for

8.  *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314–315, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

9.  *Aguchak v. Montgomery Ward Co., Inc.,* Alaska, 520 P.2d 1352, 1356–1357 (1974).

CHURCH OF JESUS CHRIST, ETC. v. INDUS. COM'N    Utah    329
Cite as 590 P.2d 328

injuries allegedly sustained while working, and employer petitioned for review. The Supreme Court, Hall, J., held that evidence in proceedings filed by janitor, who suddenly experienced sharp pain in his lower back while following his typical routine and who was later determined to have herniated disc, was insufficient to establish that an "accident" had arisen out of or in the course of janitor's employment, as required for award of benefits.

Reversed and remanded with instruction.

Wilkins, J., dissented and filed opinion in which Maughan, J., concurred.

Workers' Compensation ⟐1532

In proceedings on claim for worker's compensation benefits filed by janitor who suddenly experienced sharp pain in his lower back while following his typical routine and who was later diagnosed as having herniated disc, evidence was insufficient to support conclusion that an "accident" had arisen out of or in the course of janitor's employment, as required for award of benefits. U.C.A.1953, 35-1-45.

Joseph C. Rust of Kirton, McConkie, Boyer & Boyle, Salt Lake City, for plaintiff.

Robert B. Hansen, Atty. Gen., Salt Lake City, for Industrial Comm.

Ralph R. Tate, Jr., Salt Lake City, for Thurman.

HALL, Justice:

Review of an order of the Industrial Commission awarding workmen's compensation to one Ivan Thurman for injuries he allegedly sustained while working for Plaintiff. We reverse.

Thurman is employed by Plaintiff as a janitor of a meetinghouse. On March 31, 1976, he was following his typical routine of setting up chairs and tables in preparation for a weekly scheduled meeting. He en-

gaged in only his usual activities and had no complaint of pain while working. When he became somewhat tired, he sat down and rested for about five minutes. Upon hearing the telephone ring, he stood up suddenly and for the first time, felt a sharp pain in his lower back. The pain caused him to sit down again and rest. After resting, Thurman was able to continue work but not without pain. He reported the problem to his supervisor the next day and subsequently sought medical assistance. It was determined that he had suffered a herniated disc which ultimately required an operation. The administrative law judge ruled that a compensable "accident" had occurred while Thurman was "working" in plaintiff's meetinghouse and the Industrial Commission gave an award. Subsequently a petition for writ of review was filed with this Court pursuant to U.C.A., 1953, 35-1-83.

The sole question we are called upon to answer is whether there is sufficient evidence in the record to support the finding that Thurman sustained an accidental injury on the job.[1] The only facts relating to the claimed accident were presented by the testimony of Thurman, and there is nothing contained therein that warrants a conclusion that an accident occurred. There is nothing in his testimony that shows anything unusual about his activities that shows any unusual exertion or strain, or that shows any contact with objects or a fall. There was simply nothing different about his activities on the day in question than on any other such working day.

The following excerpts from Thurman's testimony are demonstrative of the fact that no accident occurred:

Q. When you were setting up those tables on that, I believe you said a Wednesday morning, was this a routine that you normally engage in every Wednesday?
A. Yes.

Q. You talked about the pattern of activity that you'd had on Wednesdays over the many years that you've been a jani-

---

[1]. As a prerequisite to obtaining an award of compensation under Utah's Workmen's Compensation Act, a claimant must establish that he was injured "by accident arising out of or in the course of his employment." U.C.A., 1953, 35-1-45.

| Citation | Found Document | Rank 1 of 1 | Database |
|---|---|---|---|
| 343 S.E.2d 551 | | | NC-CS |

(Cite as: 81 N.C.App. 140, 343 S.E.2d 551)

Elyse C. SCHMOYER, General Guardian and natural mother of Robert Wesley Harmon,
Jr., minor child of Robert Wesley Harmon, Sr., Deceased, Plaintiff-Employee,
v.
CHURCH OF JESUS CHRIST OF LATTER DAY SAINTS, Employer, Defendant-Employer,
United States Fidelity & Guaranty Insurance Company, Defendant-Insurance
Carrier.
No. 8510IC1390.
Court of Appeals of North Carolina.
June 3, 1986.

Mother of accident victim filed workers' compensation claim against his employer and their insurer. The Industrial
Commission denied claim and mother appealed. The Court of Appeals, Wells, J., held that employee was not on
"special errand" for employer at time of death.

Affirmed.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[1]
413   WORKERS' COMPENSATION
413XVI  Proceedings to Secure Compensation
413XVI(F)  Hearing or Trial
413XVI(F)3  Questions of Law and Fact
413k1718     Arising Out of and in the Course of Employment
413k1719  k. In general.
N.C.App.,1986.
Whether injury serving as basis for workers' compensation claim "arose out of" and "in the course of" worker's
employment is mixed question of law and fact.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[2]
413   WORKERS' COMPENSATION
413VIII  Injuries for Which Compensation May Be Had
413VIII(C)  Injuries Arising Out of and in Course of Employment in General
413k605  k. Construction and application of statutory provisions in general.
N.C.App.,1986.
Requirements that injury "arise out of" worker's employment and occur "in the course of" employment are separate and
distinct and must both be satisfied in order to render injury compensable under workers' compensation statute. G.S. §
97-1 et seq.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[3]
413   WORKERS' COMPENSATION
413VIII  Injuries for Which Compensation May Be Had
413VIII(C)  Injuries Arising Out of and in Course of Employment in General
413k607     Arising Out of Employment in General
413k610  k. What injuries arise out of employment in general.
N.C.App.,1986.
Term "arising out of" in workers' compensation statute refers to origin of injury or causal connection of injury to
employment, and term "in the course of" refers to time, place, and circumstances under which injury occurred. G.S. §
97-1 et seq.
See publication Words and Phrases for other judicial constructions and definitions.

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

343 S.E.2d 551
(Cite as: 81 N.C.App. 140, 343 S.E.2d 551)

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[3]
413   WORKERS' COMPENSATION
413VIII Injuries for Which Compensation May Be Had
413VIII(C) Injuries Arising Out of and in Course of Employment in General
413k614    In Course of Employment in General
413k617  k. What are injuries in course of employment in general. .
N.C.App.,1986.
Term "arising out of" in workers' compensation statute refers to origin of injury or causal connection of injury to employment, and term "in the course of" refers to time, place, and circumstances under which injury occurred. G.S. § 97-1 et seq.
See publication Words and Phrases for other judicial constructions and definitions.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[4]
413   WORKERS' COMPENSATION
413VIII Injuries for Which Compensation May Be Had
413VIII(D) Particular Causes, Circumstances, and Conditions of Injury
413VIII(D)17 Place of Injury with Reference to Plant or Premises of Employer
413k718  k. On errand by specific request or direction of employer or to transact specific business.
N.C.App.,1986.
"Special errand" exception to general rule that injuries to worker traveling to and from place of employment are not compensable provides that injury during travel related to special duty for employer is "in the course of" employment.
See publication Words and Phrases for other judicial constructions and definitions.

Schmoyer v. Church of Jesus Christ of Latter Day Saints
[5]
413   WORKERS' COMPENSATION
413XVI  Proceedings to Secure Compensation
413XVI(N) Weight and Sufficiency of Evidence
413XVI(N)7  Accident or Injury and Consequences Thereof
413k1487  k. Injuries arising out of and in course of employment in general.
N.C.App.,1986.
Evidence that worker had planned to spend the night before work at place of employment because of predicted snow storm and was killed in accident at place on usual route to work did not establish that worker was on "special errand" when he met his death and therefore entitled to compensation from employer.
See publication Words and Phrases for other judicial constructions and definitions.
**552 *141 Robert Wesley Harmon was killed in an automobile accident in Greensboro in the late evening of 5 February 1984. This claim for benefits under the Workers' Compensation Act was brought by plaintiff as the natural guardian of Robert Wesley Harmon, Jr., the only child of Robert W. Harmon.

On 5 February 1984, Robert Harmon was employed as a custodian at the Church of Jesus Christ of Latter Day Saints located on Pinetop Road in Greensboro. Harmon worked for hourly wages, his usual hours of employment being from 8:00 a.m. until 4:00 p.m. One of Harmon's duties was to open the church in the morning. On the day he was killed, Harmon worked at the church until about 5:00 p.m., then went to visit his fiancee, Ms. Cynthia Howle, at her residence about three miles from the church. Harmon left Ms. Howle's residence at about 11:00 p.m., intending to spend the night with his parents who lived in Pleasant Garden, a town located between Climax and Greensboro. After Harmon arrived at his parents' home, he received a telephone call from Ms. Howle who told him that she was distraught and upset. Harmon offered to return to her home and console her, saying that afterwards he would probably go to the church and spend the night. While en route to Ms. Howle's residence, Harmon was involved in the accident which caused his death. Other facts will be discussed as necessary in the body of our opinion.

Following a hearing, Deputy Commissioner Rush denied plaintiff's claim for benefits. Upon appeal, the Full Commission adopted and affirmed Commissioner

Copr. © West 1998 No Claim to Orig. U.S. Govt. Works

# BULKY SUB

## CASE# *06-2-09825-1 SEA*

## SEGMENT *2* OF *2*

# EXHIBIT I