# EXHIBIT 10

Dockets.Justia.com

1
2
3
4
5
6
7
8

SUPERIOR COURT OF THE STATE OF WASHINGTON
9        FOR KING COUNTY

10
ROB RINDE, f/k/a ROBERT LARRY LEROY
11  PITSOR, JR.,                                      NO. 06-2-09825-1 SEA

12                            Plaintiffs,             PLAINTIFF ROBERT RINDE, f/k/a
                                                     ROBERT LARRY LEROY PITSOR, JR.'S
13        v.                                         ANSWERS AND RESPONSES TO
                                                     DEFENDANT CORPORATION OF THE
14  THE CORPORATION OF THE PRESIDENT                 PRESIDENT OF THE CHURCH OF
    OF THE CHURCH OF JESUS CHRIST OF                 JESUS CHRIST OF LATTER DAY
15  LATTER-DAY SAINTS, a Utah corporation            SAINTS' ("COP") FIRST
    sole, a/k/a the "MORMON CHURCH" THE              INTERROGATORIES AND FIRST
16  CHURCH OF JESUS CHRIST OF                         REQUESTS FOR PRODUCTION OF
    LATTER-DAY SAINTS, an unincorporated             DOCUMENTS TO PLAINTIFF
17  association,
18
                              Defendant.
19
20  TO:       THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS
              CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/k/a the
21            "MORMON CHURCH" THE CHURCH OF JESUS CHRIST OF
              LATTER-DAY SAINTS, an unincorporated association, Defendants;
22
    AND TO:   Charles C. Gordon and Jeffrey I. Tilden of Gordon Murray Tilden LLP,
23            Attorneys for Defendants.

24        Plaintiff, for his Answers and Responses to Defendants' First Interrogatories and First

25  Requests for Production of Documents, states as follows:

26

DEF LDS CHURCH'S 1ST INTERROGS/RFPS TO PLTF
AND PLAINTIFF'S ANSWERS THERETO - 1 of 30
[rinde discovery responses.DOC]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

ORIGINAL

Exhibit ___   Page 652

## INTERROGATORIES

**INTERROGATORY NO. 1.** Please state your full name, your date of birth, social security number, and your present residential address.

**ANSWER:**

Robert Paul Rinde
12/08/1969
104 East 8th Street
Starbuck, MN 56381
SSN:   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 (plaintiff provides this information with the strict understanding that defendant and their counsel will take steps and measures to protect this information).

**INTERROGATORY NO. 2.** List all addresses at which you have resided since 1980.

**ANSWER:**

3623 22nd Avenue W, Seattle, WA 98199
Sundowner Inn, 451 W Main, New Castle, Wyoming 82701
3048 ½ 22nd Avenue W, Seattle, WA 98199
4040 6th Avenue NE, Seattle, WA 98017
3623 22nd Avenue W, Seattle, WA 98199
14508 SE 24th Apt A-103, Bellevue, WA 98007
2312 N Hemlock, Spokane WA 98205
708 W Maxwell St Apt 2, Spokane, WA
1033 S Easy Street, Spokane, WA  99001
38 N Washington, Medical Lake, WA 99022
2312 N Hemlock, Spokane, WA 98205
POB 360, Loon Lake, WA 99148
2371 Jackson Hwy #D, Chehalis, WA 98532
720 NW Mariland Avenue, Chehalis, WA 98532
600 Black Lake Boulevard Apt 54 & Apt 76, Olympia, WA 98502
6640 Little Rock Road SE Apt 2, Tumwater, WA 98512
7015 Alderwood Court, Lacey, WA 98503
807 S Proctor, Tacoma, WA 98405
104 E 8th Street, Starbuck, MN 56381

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit ____ Page 653

EXHIBIT 11

Exhibit____ Page 654

1

2

3

4

5

6

7

8

SUPERIOR COURT OF THE STATE OF WASHINGTON

9                    FOR KING COUNTY

10

ROB RINDE, f/k/a ROBERT LARRY LEROY
11   PITSOR, JR.,                                          NO. 06-2-09825-1 SEA

12                           Plaintiffs,              PLAINTIFF ROBERT RINDE, f/k/a
                                                     ROBERT LARRY LEROY PITSOR, JR.'S
13              v.                                    ANSWERS AND RESPONSES TO
                                                     DEFENDANT CORPORATION OF THE
14   THE CORPORATION OF THE PRESIDENT                 PRESIDENT OF THE CHURCH OF
     OF THE CHURCH OF JESUS CHRIST OF                 JESUS CHRIST OF LATTER DAY
15   LATTER-DAY SAINTS, a Utah corporation            SAINTS' ("COP") FIRST
16   sole, a/k/a the "MORMON CHURCH" THE             INTERROGATORIES AND FIRST
     CHURCH OF JESUS CHRIST OF                        REQUESTS FOR PRODUCTION OF
17   LATTER-DAY SAINTS, an unincorporated             DOCUMENTS TO PLAINTIFF
     association,
18
                             Defendant.
19

20   TO:      THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS
              CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole, a/k/a the
21            "MORMON CHURCH" THE CHURCH OF JESUS CHRIST OF
              LATTER-DAY SAINTS, an unincorporated association, Defendants;
22

23   AND TO:  Charles C. Gordon and Jeffrey I. Tilden of Gordon Murray Tilden LLP,
              Attorneys for Defendants.

24         Plaintiff, for his Answers and Responses to Defendants' First Interrogatories and First

25   Requests for Production of Documents, states as follows:

26

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

ORIGINAL

**INTERROGATORY NO. 3.** State the full name, telephone number, last known address of every person known to you or your attorney who has any knowledge regarding the facts and circumstances and damages alleged in your Amended Complaint, along with a brief description of their knowledge.

**ANSWER:**

Objection to the extent this interrogatory seeks information protected by the attorney-client and/or work-product privileges. Plaintiff additionally objects to the extent this interrogatory seeks information which is in the possession of COP and/or its witnesses. Without waiving these or any other objections, and subject to plaintiff's right to supplement, plaintiff is aware of the following persons with knowledge:

<u>Individuals associated or formerly associated with the Mormon Church</u>

> Gordon Conger
> 2217 123rd Avenue SE
> Bellevue, WA 98005
> (425) 746-9658

>> Mr. Conger's knowledge includes, but is not necessarily limited to, general knowledge re: Lewis' abuse of children, including plaintiff Rob Rinde. Mr. Conger additionally has knowledge of accompanying Rinde to a meeting at the King County Courthouse/prosecuting attorneys' office and of the "advice" to Rinde that he should not tell the prosecuting attorney/victim's advocate of Lewis' abuse. Mr. Conger also has knowledge about his role and the role of other church officials in responding to the abuse allegations against Paul Lewis.
>> Discovery is continuing.

> Bishop Johannsen
> Bishop Lyman Nielsen
> Unknown address and telephone

>> Robert Rinde reported the abuse to both Bishop Johannsen and Bishop Nielsen. After Rob's notification, both Bishops discussed the abuse allegations with Anne Rinde. For further information relating to the nature and extent of the conversations between Anne Rinde and both Bishop Johannsen and Bishop Nielsen, *see,* Anne Rinde's deposition transcript. In addition, both Bishop Johannsen and Bishop Nielsen

DEF LDS CHURCH'S 1ST INTERROGS/RFPS TO PLTF
AND PLAINTIFF'S ANSWERS THERETO - 3 of 30
[rinde discovery responses.DOC]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit ___ Page 656

have knowledge about the actions or lack thereof of the Mormon Church, in responding to, or in failing to respond to, the allegations of the abuse. Discovery is continuing.

Paul Lewis
Unknown address and telephone

Perpetrator of the abuse. Mr. Lewis additionally has knowledge relating to actions taken or not taken by Mormon Church officials after the officials learned of the abuse.

Other Individuals

Kate Hall
104 E 8th Street
Starbuck, MN 56381
(320) 239-4700

Personal care assistant/friend of plaintiff. Ms. Hall has knowledge of plaintiff's emotional and physical damages. Ms. Hall additionally has knowledge relating to conversations and communications between Rob Rinde and Bishops Rosebrough and Pease relating to Paul Lewis (as indicated in more detail in response to Interrogatory No. 6 below).

Anne Mitchell Rinde
Grace Home
116 West 2nd Street
Graceville, MN 56240
(320) 748-7261

Plaintiff's mother. Among other things, Ms. Rinde has knowledge about the circumstances of the abuse inflicted upon plaintiff by Paul Lewis, and has knowledge of the some of the damages plaintiff has suffered as a result of the abuse and as a result of the actions, or inactions, of Mormon church officials, including Gordon Conger. Ms. Rinde also has knowledge of statements made and some of the actions of certain Mormon church officials as described in the Amended Complaint. For further information, see transcript of Anne Rinde's deposition.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit ____ Page 657

Health Care Providers/Therapists

Dr. Stacey Luetmer
Alexandria Clinic, P.A.
610 – 30th Avenue West
Alexandria, MN 56308

Dr. Luetmer is a general practitioner who has limited knowledge of the facts and circumstances of the abuse but is aware that plaintiff was sexually abused. Dr. Luetmer additionally has knowledge of plaintiff's general health issues and medication management.

Jan Nix, Ph.D.
2401 – East 4th Avenue
Suite 200
Olympia, WA 98586
(360) 786-9499

Dr. Nix is a therapist who saw plaintiff for therapy related to his divorce. Rinde disclosed the abuse to Dr. Nix. Dr. Nix also has knowledge of plaintiff's emotional and psychological damages.

Marilyn Tisserand, M.S.
110 – 6th Street East
Alexandria, MN 56308
(320) 763-9000

Ms. Tisserand is providing ongoing therapy to plaintiff and has knowledge regarding the facts, circumstances and damages suffered by plaintiff. Ms. Tisserand additionally has knowledge of abuse incidents as they were uncovered during therapy and has knowledge of the extent of the emotional and psychological damage plaintiff suffered and continues to suffer.

Two Rivers Psychiatric Hospital
5121 Raytown Road
Kansas City, MO 64133

John Klema, III, D.O. (history and physical at admission); Manley, M.D. (psychological testing); Kenneth A. Spaulding, M.D. (discharge summary, psychiatric evaluation) and other staff know of the sexual abuse and have knowledge of the severe emotional and psychological trauma that plaintiff suffered as a result. Plaintiff was hospitalized at

DEF LDS CHURCH'S 1ST INTERROGS/RFPS TO PLTF
AND PLAINTIFF'S ANSWERS THERETO - 5 of 30
[rinde discovery responses.DOC]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

Exhibit    Page 658

1

Two Rivers Psychiatric Hospital as an inpatient in November 2005 for approximately 1 week.

2

3    River Oaks Hospital
1525 River Oaks Road West
4    New Orleans, LA 70123

5

Thomas Hauth, M.D., the attending physician, and other staff at the hospital know of the sexual abuse and have knowledge of severe emotional and psychological trauma plaintiff suffered as a result of the abuse, particularly the dissociative identity disorder. Plaintiff was an inpatient at River Oaks Hospital April 2005 for approximately four (4) weeks.

6

7

8

9    Discovery is continuing and plaintiff specifically reserves the right to supplement these discovery responses.

10

11

12    **INTERROGATORY NO. 4.** State the full name, telephone number and last known

13    address of any person known to you or your attorney who claims to have seen or heard any

14    representative of any defendant herein make any statement or statements pertaining to any of

15    the events or happenings alleged in your Amended Complaint.

16    **ANSWER:**

17    Anne Mitchell Rinde
Grace Home
18    116 West 2nd Street
Graceville, MN 56240
19    (320) 748-7261

20

Rob Rinde
21    104 E 8th Street
Starbuck, MN 56381
22    (320) 239-4700

23

Kate Hall
24    104 E 8th Street
Starbuck, MN 56381
25    (320) 239-4700

26

DEF LDS CHURCH'S 1ST INTERROGS/RFPS TO PLTF
AND PLAINTIFF'S ANSWERS THERETO - 6 of 30
[rinde discovery responses.DOC]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

Exhibit ___ Page 659

# DEPOSITION OF GORDON CONGER, DATED FEBRUARY 15, 2007

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF KING

ROB RINDE f/k/a ROBERT LARRY LEROY    )

PITSOR, JR.,                          )

                                      )

                    Plaintiff,        )

                                      ) No. 06-2-00825-1 SEA

          vs.                         )

                                      )

THE CORPORATION OF THE PRESIDENT      )

OF THE CHURCH OF JESUS CHRIST OF      )

LATTER-DAY SAINTS, a Utah             )

corporation sole; and the "MORMON     )

CHURCH" THE CHURCH OF JESUS CHRIST    )

OF LATTER-DAY SAINTS, an              )

unincorporated association,           )

                                      )

                    Defendants.       )

DEPOSITION OF GORDON G. CONGER

February 15, 2007

Seattle, Washington

Byers & Anderson, Inc.

Court Reporters/Video/Videoconferencing

One Union Square      2208 North 30th Street, Suite 202

600 University St.    Tacoma, WA 98403

Suite 2300            (253) 627-6401

Seattle, WA 98101     (253) 383-4884 Fax

(206) 340-1316        scheduling@byersanderson.com

(800) 649-2034        www.byersanderson.com

Serving Washington's Legal Community

Since 1980

1          MR. GORDON:  Objection to the form.

2      But go ahead, if you know.

3   A   I -- I do not have personal knowledge of the truth.

4   Q   (By Ms. Menely)  Do you doubt that Rob Pitsor was

5      abused by Paul Lewis?

6          MR. GORDON:  Objection.  Form.

7      There's no foundation for this.

8      But go ahead.

9   A   Well, I'm assuming that he did.

10  Q   (By Ms. Menely)  When did you first become aware of

11     Paul Lewis's being an abuser of Rob Pitsor?

12  A   Well, I -- I first became aware that Rob Pitsor had

13     been abused when his mother called me and asked me to

14     take Rob for an interview with a King County deputy

15     prosecutor.  I don't think I knew the name at the

16     time.  I did not know the man.  I've never met the

17     man.

18  Q   You said that his mother called and asked you to take

19     Rob to a meeting with a King County prosecuting

20     attorney?

21  A   Yes.

22  Q   And do you recall when Anne -- was that Anne?  I'm

23     sorry.

24  A   That's Joyce Pitsor.

25  Q   Joyce Pitsor.

*Gordon G. Conger, 2/15/07 - By Ms. Menely*                22

1  Q  Was this the child -- you don't know if this was the

2     child abuse section or something of that nature?

3  A  Could have been.  I do not know.

4  Q  Do you happen to remember the room number?

5  A  No.  No.

6  Q  Do you remember who you met with?

7  A  We were greeted by a young woman.  I think we knocked

8     on the door, which was -- we were greeted by a young

9     woman.  We identified Rob for her.  I did.  I took

10    the lead.

11       I -- she knew -- she was expecting him.  I asked

12    if I could be in attendance at the meeting with him.

13    She said, "No.  You need to let us be alone."  And so

14    Bishop Johennesen and I sat down on a bench in the

15    hallway across from the entrance to the office.

16 Q  The young woman that you're referring to, was she the

17    deputy prosecuting attorney?

18 A  I don't know.  She was the one that was expecting

19    him.

20 Q  Can you describe her at all?

21 A  I don't remember what she looked like.

22 Q  Was she Caucasian?

23 A  I just don't remember.

24 Q  Was she -- do you know if she was young?

25 A  My impression, youngish.

*Gordon G. Conger, 2/15/07 - By Ms. Menely*                    30

1    Q    Well, you said "young."  So the young woman -- you

2         asked if you could be in attendance, and she said no,

3         so she took Rob into some other room somewhere?

4    A    Into that -- into that area where she greeted us, and

5         I don't know where they ended up.

6    Q    Do you know if Rob wanted you to be in attendance

7         with him at the meeting?

8    A    Well, his mother would have liked me to be in

9         attendance, and expressed that to me, and so I asked.

10        Rob was not vocal about it.

11   Q    When the young woman told you that you couldn't be in

12        attendance, did you talk with her at any length about

13        that, or was that -- how did that work?

14   A    I -- that was the end of the discussion.  She and Rob

15        left, and Bishop Johennesen and I went and sat down.

16   Q    Did you -- do you recall whether you advised the

17        woman whether you were Rob's lawyer, family friend,

18        father figure?

19   A    Well, I certainly didn't advise her that I was his

20        lawyer, because I wasn't.  I think I just introduced

21        myself as bringing Rob.  I might have said "friend."

22   Q    Do you know if Bishop Johennesen had any conversation

23        with the young woman?

24   A    He didn't.  He let me take the lead.

25   Q    But he was there with you the whole time?

Exhibit____ Page 664

1  A   Yes.

2  Q   How long was Rob -- did Rob meet with this young

3      woman?

4  A   I don't remember exact time.  It was long enough that

5      I realized how uncomfortable those wooden benches in

6      the courthouse are.  I have tried cases in the

7      courtrooms, and the one in the hall was the same kind

8      of bench as in those old courtrooms.

9      .And they are not built for comfort, and I

10     remember thinking, Boy, I'm glad that, when I try a

11     case, I don't have to sit in this monstrosity, so it

12     was long enough that I became uncomfortable.

13  Q   Do you recall what the conversation -- did you and

14     Bishop Johennesen have any conversation while you

15     were sitting on that uncomfortable bench?

16  A   I'm sure I did.  There was nothing else to do, but I

17     have no idea with we talked about.  It would have

18     been chitchat.

19  Q   I take it the young woman eventually brought Rob back

20     to the bench to where you were?

21  A   Yes.

22  Q   And did you have any further conversation with the

23     young woman at that point?

24  A   I just asked how it went, and she gave me some kind

25     of an ambiguous answer.  She didn't say.  She didn't

Exhibit___ Page 665 .

1  A    No.

2  Q    Had you forgotten that you had taken Rob to that trip

3       to Seattle to see the King County prosecuting

4       attorney at any time?

5  A    No.  I think I've always remembered that.

6  Q    Any other conversations that you can recall with Rob

7       over the years?

8  A    Well, to give you a little -- I guess I've identified

9       four conversations, one in '96 or '97.  The context

10      for that was that at that time I was in Area 70.

11      Part of my responsibilities were to conduct stake

12      conferences, which those are a semiannual meeting for

13      all church members in a stake.

14          And so it involved somewhere around 1,000 people.

15      I was responsible to preside and to speak, and at the

16      conclusion of the stake conference somewhere in the

17      Olympia area -- I don't remember which stake.  There

18      are three or four down there, but it was one of the

19      Olympia area stakes.

20          After the meeting was concluded, Rob came up to

21      the front where I was and greeted me.  I, of course,

22      remembered him.  He had a young woman with him who he

23      introduced to me as his wife and was very happy, and

24      we had a very warm conversation for three or four

25      minutes.

Exhibit____ Page 666

1        I believe they had a child.  I'm not sure that

2    they had the child with them, but he was there with

3    her, and he was proud to be married, and I was happy

4    to greet his wife, and it was a pleasant moment.

5  Q  And then the second meeting was at your home --

6  A  Yes.

7  Q  -- where Rob came?

8        Do you remember when that was?

9  A  That was sometime later, but not a long time later.

10    And, again, he and his wife stopped by.  I think they

11    had connected with perhaps the Stowell family who

12    lived very close in our neighborhood and who had

13    became his home teacher after I was no longer their

14    teacher.

15        And, again, that was a very pleasant

16    conversation.  We were happy to get better acquainted

17    with his wife.  I think he brought back a guitar that

18    we had loaned him.

19                    MR. GORDON:  Do you want to take a

20    break, Gordon?  Are you okay?

21                    THE WITNESS:  No.  Let's talk.

22  A  When we were his home teacher, we tried to give him a

23    special gift each Christmas.  We gave him a computer

24    one Christmas because they didn't have much.

25        And he expressed a desire, one of our visits, to

Exhibit____ Page 667

1    take guitar lessons, but he didn't have a guitar.  So

2    we bought a guitar, and the next time we went, we

3    loaned it to him.  It was not Christmastime.  We

4    couldn't say it was a gift, and I think he brought

5    that guitar back on that second visit, and we have it

6    today.

7  Q   (By Ms. Menely)  And there was no discussion about

8    the abuse or the trip to King County, just a pleasant

9    conversation?

10  A   No.  Just a pleasant conversation, warm conversation.

11  Q   And then the other two communications you've had with

12    Rob were the two phone calls?

13  A   Right.

14                    MS. MENELY:  Why don't we go ahead

15    and take a five-minute break, if it's okay with you

16    guys?

17                    MR. GORDON:  Sure.

18                         (Recess taken from 10:33

19                          a.m. to 10:43 a.m.)

20

21                    EXAMINATION (Continuing)

22    BY MS. MENELY:

23  Q   Mr. Conger, I'm trying to get my bearings here.  Do

24    you know Bishop Lymon Nielsen?

25  A   No.

*Gordon G. Conger, 2/15/07 - By Ms. Menely*                    40

Exhibit___ Page 668

```
 1   A   Well, we go by twos, and the home teacher is a church

 2       assignment, and we are asked to have a companion.  He

 3       also was a holder of the priesthood, and so this is a

 4       way for young men to learn how to serve.

 5   Q   What happens at a home teaching session?  Do you talk

 6       about -- for instance, do you talk about not having

 7       Christmas gifts or do you talk about spiritual

 8       matters?

 9                       MR. GORDON:  Are we talking about

10       when he was at the Pitsor residence?

11                       MS. MENELY:  Yes.

12                       MR. GORDON:  Okay.

13   A   We would spend some time in conversation, which was

14       to build friendship, build empathy.  We would try to

15       leave a short spiritual message and then always

16       conclude with prayer, a blessing on the home and

17       family.

18   Q   (By Ms. Menely)  And is this pretty generally how

19       home teachings work?

20   A   Yes.

21   Q   So there's nothing special about the Pitsor family?

22   A   Well, there were lots of needs there, so we spent

23       lots of time with the needs.

24   Q   And can you explain that to me?  Do you mean you went

25       there more often than you would other families where
```

Exhibit ____ Page 669

1   you were a home teacher, or you spent more time there

2   on your home visits, or --

3 A   Well, probably more time on the visits.  Joyce

4   unfortunately, because of obesity and other health

5   issues, was very minimally functional.  She could

6   barely walk around, and so that household needed a

7   lot of help.

8       The women's organization in our ward also visited

9   Joyce each month, two women called visiting teachers,

10  and they would periodically get a group of ladies

11  together to clean the place up and to give her a lift

12  with household needs.

13      And we helped coordinate that, and that was

14  conveniently done when Myrna was working, so Myrna

15  would visit part of the time, and David would visit·

16  with me part of the time.  I never went alone.

17 Q  Do you know who the two women were in the -- you said

18  two women of the women's organization also visited.

19      Did you mean that on somewhat of a regular basis?

20 A  Yes.  They would make monthly visits as well.  I

21  believe Bonnie Stowell was one of her visiting

22  teachers.  I'm not sure of that, but I believe so.  I

23  don't -- I don't remember who else that would have

24  been.  Myrna handled liaison with the visiting

25  teachers.

1   Q   So you got to know Joyce and the rest of the family

2       during these visits?

3   A   Excuse me?

4   Q   Did you get to know Joyce and the rest of the family

5       during these home teaching visits?

6   A   Yes.

7   Q   Did you ever visit the Pitsor family on an unofficial

8       basis, not as home teacher, just as a friend?

9   A   I used to take the little boys to the park, which is

10      across the street from the Pitsor home, and sometimes

11      Rob would be with me, and sometimes he would not.

12          They had a pretty limited existence because Joyce

13      wouldn't let them out to play in the play area around

14      the complex there because she couldn't keep an eye on

15      them, and so I tried to give them a little

16      broadening.

17          I took Rob and the little boys to the government

18      lots one Saturday for an extended outing.  I took

19      them to my office one Saturday for an extended

20      outing.  I wanted Rob to see another kind of life and

21      to have some broadening.

22          So I did some of those things, but I did those

23      really -- I mean, home teacher is supposed to be a

24      friend, so those were done as -- in both ways.

25   Q   Okay.  Did you -- was this taking the children out to

Exhibit____ Page 671

1          in context, the first sentence says, "In

2          approximately 1984/1985 Rinde disclosed the abuse and

3          his mother reported to the civil and church

4          authorities a criminal investigation of Lewis

5          ensued."

6              Do you see that?

7    A    Yes.

8    Q    I'm going to ask you some questions about what

9          follows, and the first -- the next sentence says,

10         "Church officials described herein above shielded

11         Lewis from the law."

12             Would you deny that you took any action in this

13         matter that shielded Mr. Lewis from the law?

14   A    I do deny that.

15   Q    It goes on.  "The same church officials urged Rinde,

16         then age 14, to not cooperate with the law

17         enforcement investigation of Lewis, thereby allowing

18         Lewis to evade criminal prosecution and to move to

19         another state where he eventually sexually molested

20         more children."

21             Do you agree or disagree with the allegation,

22         that you, as a church official, urged Rinde to not

23         cooperate with authorities?

24   A    I disagree.  I did not.

25   Q    It goes on.  These church officials -- and I want you

Exhibit___ Page 672

1   to assume that you're one of those as referenced

2   there -- told him that he would not be believed; that

3   it would be, quote, his word, closed quote, against

4   Lewis; that his allegations would hurt the image and

5   representation of the Mormon Church; that Rinde would

6   be ridiculed and denied -- derided by church members

7   in addition to other comments calculated to

8   intimidate Rinde from cooperating with the civil

9   authorities from investigating Lewis.

10       Would you agree or disagree that you took any

11  such actions?

12  A   I disagree.

13  Q   Would you -- did you see anything, from what you were

14      personally involved in with Bishop Johennesen, that

15      would suggest he participated in any such activity?

16  A   I saw none.

17  Q   Let's go to 4.2 -- 4.12.  "An abused victim advocate

18      in the King County prosecutor's office arranged a

19      meeting with Rinde at her office.  Before she can

20      meet privately with Rinde, Mormon Church leaders

21      interfered with the investigative process."

22       Do you agree or disagree with that allegation?

23  A   As to my involvement in such a thing?

24  Q   Yes.

25  A   I was never involved in interfering with an

*Gordon G. Conger, 2/15/07 - By Mr. Gordon*                78

1    investigative process.

2  Q  It says, "The three adult male officials" -- and I

3    want you to assume one of whom is you -- "went to

4    Rinde's home and told him that they would take him to

5    the meeting at the prosecutor's office downtown.  On

6    the ride downtown in the car the three adult Mormon

7    Church officials pressured Rinde not to cooperate

8    with law enforcement officials."

9       Do you agree or disagree with that allegation?

10 A  I never engaged in that kind of conduct.

11 Q  Let's go to 4.13.  "At the meeting the church

12    official that was a licensed Washington attorney" --

13    and I want you to assume that's you -- "told the

14    victim's advocate that he was Rinde's attorney which

15    was untrue.  The church official/lawyer told the

16    victim advocate he would not permit her to interview

17    Rinde in private."

18       Do you agree or disagree?

19 A  Well, I never told a prosecuting attorney or a

20    victim's advocate that I was Rinde's attorney.  I

21    couldn't.  I wasn't.  My law firm procedures would

22    preclude it and had not been observed.  I never told

23    them that he -- they would not be permitted to

24    interview Rinde, ever.

25 Q  In fact, did a private interview occur between Rinde

Exhibit____ Page 674

1    and whoever represented King County?

2  A  Yes, as I've testified.

3  Q  Okay.  Go to Page 7 of 10.  I'm looking at pages at

4    the bottom there.  Do you see at the bottom, 6.2?

5  A  Yes.

6  Q  And I want you to assume that you're representing

7    what the defendant -- it says, "Defendant knew or in

8    exercise of reasonable care should have known that

9    tampering with a witness was unlawful and that such

10    conduct as pressuring victims not to disclose would

11    be harmful to the best interest and psychological

12    well-being of child victims of sexual abuse including

13    plaintiff."

14        Do you agree or disagree or deny that you engaged

15    in any activity that would constitute tampering with

16    a witness?

17                    MS. MENELY:  Objection.  Calls for

18    legal conclusion.

19  Q  (By Mr. Gordon)  You may answer.

20  A  I, of course, have always known that tampering with a

21    witness is unlawful, that is, always during my time

22    as a lawyer since law school.  I would never tamper

23    with a witness.  I would not ever pressure victims

24    not to disclose or be harmful -- whatever the rest of

25    these words say.

Exhibit___ Page 675

1   Q   Okay.  Let's go to complaint 8 of 10.  You see 6.5

2       there?

3   A   Let's see.

4   Q   It's complaint 8 of 10.

5   A   Yes.

6   Q   It says, "Of the church being more concerned about

7       shielding itself from scandal and potential civil

8       liability and intent on protecting the public

9       interest of its all-male/Mormon priesthood.

10          "At the expense of aiding a gravely injured

11      child" -- that was a plaintiff -- "pressured

12      plaintiff into not cooperating with the civil

13      authorities with full knowledge of and with reckless

14      disregard of the emotional and psychological injuries

15      its conduct was certain to inflict."

16          Do you agree or disagree if that is intended to

17      include you as an actor in this that's accurate or

18      not?

19  A   It is not only not accurate, it's an outrage.

20  Q   Let's go to Exhibit 3, if you would.

21  A   (Witness complies.)

22  Q   Exhibit 3, Mr. Conger.  It's the next one.  It's the

23      interrogatory answer.  Do you have it?

24  A   I don't have it.

25  Q   Oh, here it is.  I'm sorry.  I'm just going to ask

Gordon G. Conger, 2/15/07 - By Mr. Gordon                    81



The Honorable William L. Downing

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

ROB RINDE f/k/a ROBERT LARRY LEROY
PITSOR, JR.,

           Plaintiff,

    v.

THE CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, a Utah corporation
sole; a/k/a the "MORMON CHURCH" THE
CHURCH OF JESUS CHRIST OF LATTER-
DAY SAINTS, an unincorporated association,

           Defendants.

NO.  06-2-09825-1 SEA

[PROPOSED] ORDER DENYING
PLAINTIFF'S MOTION TO AMEND
COMPLAINT

THIS MATTER came before the Court on the Plaintiff's Motion to Amend the

Complaint to add several causes of action against Gordon Conger. The Court has considered

plaintiff's motion, the Declaration of Michelle A. Menely and attached exhibits, defendant's

opposition to the motion, the Declaration of Michael Rosenberger and attached exhibits and

plaintiff's reply.

Having considered the parties' submissions, the Court hereby denies the motion.  While

motions to amend are usually freely given, a trial court appropriately denies a motion to amend

ORDER - 1

**GORDON MURRAY TILDEN LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154-1007
Phone (206) 467-6477
Fax (206) 467-6292



when a claim is without merit. To the extent plaintiff has any claims against Mr. Conger based

upon his conduct in 1984 or 1985, they accrued at that time and the statute of limitations began

to run when plaintiff turned 18 in 1987. They are now time-barred, and thus plaintiff's motion

must be denied.

DATED this _____ day of _____, 2007.


_____

The Honorable William L. Downing


Presented by:

**GORDON MURRAY TILDEN** LLP


By_____

    Charles C. Gordon, WSBA #1773
    Jeffrey I. Tilden, WSBA #12219
    Michael Rosenberger, WSBA #17730
Attorneys for Defendant


ORDER - 2

**GORDON MURRAY TILDEN** LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154-1007
Phone (206) 467-6477
Fax (206) 467-6292

# ORIGINAL COURT MINUTES

PAGE  22

** PREPARED **
02-22-07□13:18

SHOW CAUSE COMPLIANCE HEARING - SEATTLE
THURSDAY, MARCH 1, 2007
JUDGE JOHN P ERLICK     COURT CLERK MAUREEN ANN BELL
*90 DAYS PRIOR DATE* DECEMBER 1, 2006

*Not Reported*

06-2-09825-1 SEA

RINDE, ROB

KOSNOFF, TIMOTHY DAVID

VS  CORPORATION OF THE PRESIDENT OF
THE CHURCH OF JESUS CHRIST OF
GORDON, CHARLES COOPER
TILDEN, JEFFREY IVER

ORDER OF CONTINUANCE /SHOW CAUSE

_____ Case is on track; parties to follow civil case schedule.

___✓___ Status conference continued to _4-5-2007_ unless before
____*then*____ A confirmation of joinder, a statement of arbitrability or a
dismissal of all claims and parties is filed.

_____ Case transferred to Mandatory Arbitration; Statement of Arbitrability to
be filed by_____.

_____ Case is dismissed without prejudice.

___✓___ Order is signed.

_____ Stricken no appearances.

## SCOMIS CODE:

_____STAHRG    _____HSTKIC    __✓__HSTKNA    _____HCNTU

FILED

KING COUNTY, WASHINGTON

MAR 0 1 2007

SUP~ ~·: COURT CLERK
BY MAUREEN ANN BELL
DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

RINDE FKA

Plaintiff / Petitioner

vs.

CORP OF THE PRES OF THE CHURCH OF LATT

Defendant / Respondent

NO.    06-2-09825-1 SEA

**ORDER ON SHOW CAUSE HEARING**
**(Clerk's Action Required)**

SCOMIS Code:  ORSTAC/ORDSM/ORCNT

**I.  The Court finds upon initial review that:**

1.1    The parties were not in compliance with the Case Schedule.  The Court further finds:

1.2    [ ] The parties appeared for the hearing.

1.3    [X] The parties/_____ failed to appear for the hearing.

1.4    [ ] A Confirmation of Service, showing service on all named parties, has not been filed.

1.5    [ ] The case appears to be subject to mandatory arbitration, but is not yet at issue.

1.6    [ ] Mandatory pleadings having not been filed, the _____ has not moved for default.

1.7    [ ] _____
_____

**II.  It is hereby ordered:**

2.1    [ ] This action / _____ is **dismissed** without prejudice.

2.2    [ ] The case is **on track** because it is in substantial compliance with the Case Schedule.

2.3    [ ] The case is fully at issue and subject to **mandatory arbitration.**  The Court hereby transfers
        this case to mandatory arbitration, and a Statement of Arbitrability shall be filed by
        _____ with payment of $220.

2.4    [ ] The Court further requires that:
        _____
        _____

2.5    [ ]  **Sanctions / Terms**  in the amount of $_____ shall be paid by _____
        to the King County Clerk / _____ no later than _____
        for failure to appear as ordered / comply with court rules / _____.

2.6    [X] This matter is continued until _____4-5-2007_____. Hearing will be stricken if
        _amended confirmation of joinder is filed with Box 1 checked or case will be dismissed_

2.7    **FAILURE TO COMPLY WITH ANY TERMS OF THIS ORDER MAY RESULT IN DISMISSAL OR**
        **FURTHER SANCTIONS.**

DATED: ____MAR 0 1 2007_____

_John P. Erlick_

Superior Court Judge John P. Erlick

rptORSC

06-2-09825-1 SEA

Exhibit    Page 680

GORDON, CHARLES COOPER
1001 4TH AVE STE 4000
SEATTLE, WA  98154-1007


KOSNOFF, TIMOTHY DAVID
600 UNIVERSITY ST STE 2100
SEATTLE, WA  98101-4161


TILDEN, JEFFREY IVER
1001 4TH AVE STE 4000
SEATTLE, WA  98154-1007

FILED

2007 MAR -5  AM 11: 15  THE HONORABLE WILLIAM L. DOWNING

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA.

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

| ROB RINDE f/k/a ROBERT LARRY LEROY PITSOR, JR., | NO. 06-2-09825-1 SEA |
|---|---|
| Plaintiff, | REPLY ON MOTION TO AMEND PLAINTIFF'S AMENDED COMPLAINT |
| v. | NOTED FOR: MARCH 5, 2007 WITHOUT ORAL ARGUMENT |
| THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a Utah corporation sole. | |
| Defendant. | |

COMES NOW Plaintiff Rob Rinde, by and through his attorneys of record, and replies to the Opposition by the Corporation of the President of the Church of Jesus Christ of Latter-Day Saints to Plaintiff's Motion to Amend Complaint.

I.    THE DEFENDANT'S IMPROPER ATTEMPT TO CONVERT THIS MOTION INTO A SUMMARY JUDGMENT MOTION SHOULD BE REJECTED

Defendant Corporation of the President of the Church of Jesus Christ of Latter-Day Saints ("COP"), has improperly tried to turn this motion to amend into a motion for summary judgment. Plaintiff presented a basic motion to amend to add claims against a person who is not only well known to COP, but is a person COP has long known to be someone that the plaintiff may add as a party to this litigation. Following Conger's deposition, plaintiff has

REPLY ON MOTION TO AMEND COMPLAINT - 1
(06-2-09825-1 SEA)
[176457 v18.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

ORIGINAL

chosen to add him as a party. On a motion to amend to add claims against a new party, the plaintiff is not required to establish its claims to a summary judgment standard. *See* CR 15, CR 56. It would be impossible for plaintiff to prepare an adequate response to all the issues raised by COP within the time constraints and page limits imposed for a reply to a motion to amend. If a summary judgment standard was applied to a motion to amend, before significant discovery and expert evaluations could be completed, then motions to amend to add claims would likely never be granted Instead, the rule provides that leave to amend should be freely given where justice so requires. CR 15. Here, in light of the facts regarding Mr. Conger's actions and his relationship with COP and the plaintiff, justice requires that the plaintiff be allowed to add claims against Mr. Conger in this lawsuit for the damages he has suffered. COP can bring its substantive and dispositive motions (to the extent they have any merit) another day.

## II.    COP HAS NOT ALLEGED IT WILL SUFFER ANY PREJUDICE BY THE AMENDMENT

COP's entire brief is an outline of its trial defenses (essentially blaming the victim and his family), but does not provide **any** evidence that it will suffer any prejudice as a result of the addition of the claims against Conger. COP does not even attempt to argue it will suffer prejudice, implicitly conceding that it will not be prejudiced in any way by the amendment. As stated in the original Motion, trial is many months away, discovery is just starting, and plaintiff has no objection to a continuance of the trial if necessary. Where COP cannot show that it will suffer from any prejudice by the addition of Conger, the plaintiff should be allowed to amend his complaint to add claims against Conger. *O'Kelly v. Sali,* 67 Wn.2d 296, 298, 407 P.2d 467 (1965); *Lind v. Fick,* 15 Wn. App. 614, 550 P.2d 709 (1976); *Grant v. Morris,* 7 Wn. App. 134, 498 P.2d 336 (1972).

REPLY ON MOTION TO AMEND COMPLAINT - 2
(06-2-09825-1 SEA)
[176457 v18.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit    Page 633

III.    **PLAINTIFF STATES VALID CLAIMS AGAINST CONGER THAT ARE NOT
BARRED BY THE STATUTE OF LIMITATIONS**

Despite COP's improper attempt to convert this motion to amend into a summary judgment motion, COP's arguments regarding the validity of the plaintiff's claims against Mr. Conger still fail. COP's primary argument is that the claims against Conger are without merit because they are time barred, relying on the conclusory determination that RCW 4.16.340 does not apply to the claims against Conger. However, a correct reading of the statute and the case law interpreting the statute leads to the conclusion that RCW 4.16.340 applies directly to plaintiff's claims against Conger. The statute applies to "[a]ll claims or causes of action based on" sexual abuse. RCW 4.16.340. Consistent with the language of the statute, the Washington Supreme Court has interpreted this statute very broadly to include negligence claims if they are based on sexual abuse inflicted by a third party. *C.J.C. v. Corporation of the Catholic Bishop of Yakima*, 138 Wn.2d 699, 709-711, 985 P.2d 262 (1999). Here, plaintiff alleges that he suffered from significant damages as a result of **both** Mr. Conger's **intentional** and **negligent** conduct in failing to help him obtain appropriate aid following the rape and in pressuring him to recant his allegations of sexual abuse committed by a Mormon Church scoutmaster and priest in an effort to cover up the abuse and protect the Mormon Church. Under the plain language of the statute and the analysis set out in *C.J.C.*, plaintiff's claims against Mr. Conger are based on the sexual abuse he suffered and fall clearly within the statute of limitations provided by 4.16.340.[1]

COP also fails to recognize the applicability of the doctrine of emotional disability tolling of the statute of limitations, which has long served as a legal protection for those crippled by emotional disability like plaintiff. RCW 4.16.190. This doctrine applies to any

---

[1] COP also incorrectly argues that plaintiff's claims are time barred because he was aware of some of the actions of Conger on the day of the meeting with the prosecutor. However, this argument is without any merit where RCW 4.16.340 provides that the cause of action accrues at the time that the victim connects the damages suffered with the actions, regardless of whether the victim was aware and retained a recollection of the actions giving rise to the claim. Either way this is a question for the jury.

REPLY ON MOTION TO AMEND COMPLAINT - 3
(06-2-09825-1 SEA)
[176457 v18.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit___ Page 684

cause of action, not just those based on intentional conduct or sexual abuse. Moreover, the emotional disability that forms the basis for the equitable tolling need not have been the consequence of the defendant's tortious conduct but can be wholly unrelated. Here, the plaintiff's well-documented medical disability, as conceded by COP in its Opposition, is buttressed by the fact that COP and Conger were the cause of the emotional disability and should not derive a legal benefit from the harm their conduct has caused plaintiff. Even if RCW 4.16.340 did not apply to the plaintiff's claims, the emotional disability tolling doctrine applies so that plaintiff's claims against Mr. Conger are timely and he should now be granted leave to pursue those claims.[2]

COP also argues that plaintiff's Outrage claim fails as a matter of law where "allowing the claim to go to the jury would improperly permit double recovery." Opposition at p. 11. COP's argument on this point is simply premature. Plaintiff is seeking an amendment to add a new party and, as is warranted and frequently observed, plaintiff has stated all potential causes of action that are justified on the facts known to him at this time. Plaintiff is entitled to assert all potential claims at this point, even if plead in the alternative. Whether or not all claims are ultimately submitted to the jury is not germane to this Motion to Amend.[3]

Finally, COP argues that plaintiff's Motion to Amend to add claims against Conger should be denied because no duty may be imposed on Conger to support a negligence claim where he was simply engaging in acts of friendship and companionship. This is clearly a factual question for the jury. COP's argument on this issue is based on the self-serving testimony of Conger.[4] However, a review of Conger's deposition actually provides further

---

[2] As a practical matter, questions concerning whether the case is time-barred and whether the statute is tolled are both premature future questions for the jury, and in this case involve complex psychological issues which require significant expert work-up.

[3] For the same reasons, COP's arguments that the conspiracy claim and the negligence claim are without merit because of plaintiff's alternative pleading fails.

[4] COP's entire Opposition, which attempts to paint an unduly favorable picture of Mr. Conger and is essentially a defense of the claims against Mr. Conger, causes one to further notice the significance of the relationship between COP and Mr. Conger.

REPLY ON MOTION TO AMEND COMPLAINT - 4
(06-2-09825-1 SEA)
[176457 v18.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 • FACSIMILE (206) 676-7575

support for plaintiff's claims that Conger and COP sought to cover up plaintiff's allegations of abuse. Conger agreed to act in the place of a parent and accompany the twelve year old boy to a meeting with the prosecutor's office to report to authorities that he had been sexually molested, but now claims in deposition all he did was give him a ride and wait outside during the interview. *Opposition at 5*. Conger's testimony strains credulity, where Conger had a long relationship with the family as a church-appointed "home teacher," who was regularly and deeply involved with the plaintiff and his family. *Conger Deposition, pp. 46-48*. Conger was assigned by the COP to assist the plaintiff and his family in personal matters, assumed further obligation to the plaintiff by agreeing to accompany him to a meeting to report the horrific and sadistic abuse by another member of his Mormon Church and then failed in his responsibilities by making no effort to ensure that the plaintiff reported the abuse, received the help he needed, the Mormon Scoutmaster was removed, and the child received medical treatment. These facts alone support a negligence claim against Conger. RESPECTFULLY SUBMITTED this 5th day of March 2007.

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP

By _____
      Michael T. Pfau, WSBA No. 24649
      mpfau@gth-law.com
      Michelle A. Menely, WSBA No. 28353
      mmenely@gth-law.com
      Co-Counsel for Plaintiff

LAW OFFICES OF TIMOTHY D. KOSNOFF

By _____
      Timothy D. Kosnoff, WSBA No. 16586
      timkosnoff@comcast.net
      Co-Counsel for Plaintiff

REPLY ON MOTION TO AMEND COMPLAINT - 5
(06-2-09825-1 SEA)
[176457 v18.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit___ Page 686

1

2

## CERTIFICATE OF SERVICE

3      COMES NOW Tanya Garbell and declares:

4      1.      I am employed at the law office of Gordon, Thomas, Honeywell, Malanca,

5   Peterson & Daheim, LLP.;

6      2.      On March 5, 2007, I served true and correct copies of the foregoing via ABC

7   Legal Messengers (or other method indicated below) by directing delivery to and addressed to

8   the following:

9                          ***Counsel for Defendant COP***
                            Charles C. Gordon, Esq.
10                          Michael R. Rosenberger, Esq.
                            GORDON MURRAY TILDEN
11                          1001 Fourth Avenue, Suite 4000
                            Seattle WA 98154
12                          Phone: 206.467.6477
                            Fax:    206.462.6292
13

14      I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE

15   STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT.

16      EXECUTED this 5th day of March, 2007 at Seattle, Washington.

17

18                          *Tanya Garbell*

19                          Tanya Garbell, Legal Assistant

20

21

22

23

24

25

26

REPLY ON MOTION TO AMEND COMPLAINT
(06-2-09825-1 SEA)
[176457 v18.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

Exhibit ___ Page 687



Ri      ~TON

MAR 0 6 2007

SUPERIOR COURT ...RIK
BY DEBRA BAILEY TRAIL
       ~ DEPUTY

1
2
3
4
5
6
7
8
9
10                                                      The Honorable William L. Downing
11
12                SUPERIOR COURT OF THE STATE OF WASHINGTON
13                            FOR KING COUNTY
14
15   ROB RINDE f/k/a ROBERT LARRY LEROY
16   PITSOR, JR.,                              NO.  06-2-09825-1 SEA
17
18              Plaintiff,                     [PROPOSED] ORDER DENYING
19                                             PLAINTIFF'S MOTION TO AMEND
20       v.                                    COMPLAINT
21
22   THE CORPORATION OF THE PRESIDENT
23   OF THE CHURCH OF JESUS CHRIST OF
24   LATTER-DAY SAINTS, a Utah corporation
25   sole; a/k/a the "MORMON CHURCH" THE
26   CHURCH OF JESUS CHRIST OF LATTER-
27   DAY SAINTS, an unincorporated association,
28
29              Defendants.
30
31
32
33       THIS MATTER came before the Court on the Plaintiff's Motion to Amend the
34
35   Complaint to add several causes of action against Gordon Conger.  The Court has considered
36
37   plaintiff's motion, the Declaration of Michelle A. Menely and attached exhibits, defendant's
38
39   opposition to the motion, the Declaration of Michael Rosenberger and attached exhibits and
40
41   plaintiff's reply.
42
43       Having considered the parties' submissions, the Court hereby denies the motion.  While
44
45   motions to amend are usually freely given, a trial court appropriately denies a motion to amend

ORDER - 1                                      GORDON MURRAY TILDEN LLP
                                               1001 Fourth Avenue, Suite 4000
                                               Seattle, WA  98154-1007
                                               Phone (206) 467-6477
                                               Fax (206) 467-6292

when a claim is without merit.  To the extent plaintiff has any claims against Mr. Conger based upon his conduct in 1984 or 1985, they accrued at that time and the statute of limitations began to run when plaintiff turned 18 in 1987.  They are now time-barred, and thus plaintiff's motion must be denied.

DATED this ____5____ day of _M a r c h_, 2007.

The Honorable William L. Downing

Presented by:

**GORDON MURRAY TILDEN LLP**

By _____
   Charles C. Gordon, WSBA #1773
   Jeffrey I. Tilden, WSBA #12219
   Michael Rosenberger, WSBA #17730
Attorneys for Defendant

ORDER - 2

**GORDON MURRAY TILDEN LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154-1007
Phone (206) 467-6477
Fax (206) 467-6292

FILED

07 MAR -7 PH 4: 48

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

The Honorable William L. Downing

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

ROB RINDE f/k/a ROBERT LARRY LEROY
PITSOR, JR.,

                Plaintiff,

      v.

THE CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, a Utah corporation
sole, and the "MORMON CHURCH" THE
CHURCH OF JESUS CHRIST OF LATTER-
DAY SAINTS, an unincorporated association,

                Defendant.

NO.  06-2-09825-1 SEA

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 7, 2007, copies of the following

document:

      1.  NOTICE TO CLERK OF SUPERIOR COURT OF FILING NOTICE OF
          REMOVAL; and
      2.  this CERTIFICATE OF SERVICE

were served at the following addresses via the methods indicated:

      Michael T. Pfau
      Michelle A. Menely

CERTIFICATE OF SERVICE - 1

ORIGINAL

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Exhibit ____ Page 690

Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim LLP
600 University, Suite 2100
Seattle, WA 98101-4185
Co-Counsel for Plaintiff Rob Rinde
() Mail        ( XX ) Hand Delivery          () Via e-mail
( ) Fax        ( ) Federal Express

Timothy D. Kosnoff
Law Offices of Timothy D. Kosnoff
One Union Square
600 University Street, Suite 2101
Seattle, WA 98101
Co-Counsel for Plaintiff Rob Rinde
() Mail        ( XX ) Hand Delivery          () Via e-mail
( ) Fax        ( ) Federal Express

DATED this 7th day of March, 2007.

_Jacqueline Lucien_

Jacqueline Lucien

CERTIFICATE OF SERVICE - 2

**GORDON MURRAY TILDEN LLP**
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Exhibit ____ Page 691 )



FILED

07 MAR -7 PH 4:48

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA

1
2
3
4
5
6
7
8
9
10
11                                                              The Honorable William L. Downing
12
13                   SUPERIOR COURT OF THE STATE OF WASHINGTON
14                               FOR KING COUNTY
15
16   ROB RINDE f/k/a ROBERT LARRY LEROY
17   PITSOR, JR.,                                   NO. 06-2-09825-1 SEA
18
19                   Plaintiff,                     NOTICE TO CLERK OF SUPERIOR
20                                                  COURT OF FILING NOTICE OF
21          v.                                      REMOVAL
22
23   THE CORPORATION OF THE PRESIDENT             (Clerk's Action Required)
24   OF THE CHURCH OF JESUS CHRIST OF
25   LATTER-DAY SAINTS, a Utah corporation
26   sole,
27
28                   Defendant.
29
30
31
32   TO:    Clerk of the Superior Court of the State of Washington for King County
33
34          NOTICE IS HEREBY GIVEN pursuant to 28 U.S.C. § 1446(e) that on March 7, 2007,
35
36   CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-
37
38   DAY SAINTS, the sole defendant in the above-entitled action, filed a Notice of Removal, a copy
39
40   of which is attached to this Notice, removing the above-entitled action to the United States
41
42   District Court for the Western District of Washington at Seattle.
43
44
45
46

NOTICE TO CLERK OF REMOVAL - 1

**ORIGINAL**

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154-1007
Phone (206) 467-6477
Fax (206) 467-6292

Exhibit_____ Page 692

1
2
3
4
5    YOU ARE ALSO ADVISED that upon this filing of a copy of the notice with the Clerk
of the Superior Court of Washington for King County, such Court shall proceed no further unless
and until the case is remanded.

6        DATED this _____7_____ day of March, 2007.
7
8
9
10
11                          **GORDON MURRAY TILDEN LLP**
12
13
14                          By _____
15                               Charles C. Gordon, WSBA #1773
16                               Jeffrey I. Tilden, WSBA #12219
17                               Michael Rosenberger, WSBA #17730
18                               Attorneys for Defendant The Corporation of the
19                               President of the Church of Jesus Christ of Latter-Day
20                               Saints
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45
46

NOTICE TO CLERK OF REMOVAL - 2

Exhibit    Page 693

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35
36
37
38
39
40
41
42
43
44
45

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

ROB RINDE f/k/a ROBERT LARRY LEROY
PITSOR, JR.,

                    Plaintiff,

          v.

THE CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, a Utah corporation
sole,

                    Defendant.

NO.

NOTICE OF REMOVAL
(DIVERSITY JURISDICTION)

Defendant Corporation of the President of the Church of Jesus Christ of Latter-day Saints

("COP")[1] removes this action from the Superior Court of Washington State in and for King

County, to the United States District Court for the Western District of Washington, upon the

following grounds:

    1.     COP is the sole defendant in a civil action filed in the Superior Court of

Washington in and for King County, styled Rob Rinde f/k/a Robert Larry Leroy Pitsor, Jr. v. The

Corporation of the President of The Church of Jesus Christ of Latter-day Saints, a Utah

---

[1] Defendant's name is as stated; the Complaint incorrectly places "the" before "Corporation."

NOTICE OF REMOVAL - 1
No.

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA  98154
Phone (206) 467-6477
Fax (206) 467-6292

Exhibit ___ Page 694

corporation sole, aka the "Mormon Church" the Church of Jesus Christ of Latter-Day Saints, an unincorporated association, No. 06-2-09825-1 SEA (the "state court action"). Plaintiff commenced the state court action by filing a complaint on March 22, 2006, a copy of which is attached to this Notice. Undersigned counsel accepted service on behalf of the defendant and defendant filed an answer.

2.    Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

3.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship. The Plaintiff's interrogatory responses state that he resides in the State of Minnesota. Defendant is a citizen of Utah, incorporated under the laws of Utah, with its principal place of business in Utah. The complaint filed in the state court action does not set forth the dollar amount of damages sought by plaintiff. Given the complaint alleges multiple acts of sexual abuse, including one described as "brutal," all of which are alleged to have occurred while plaintiff was a minor, defendant has a good faith belief that the plaintiff is seeking damages in excess of $75,000, exclusive of interest and costs.

4.    COP previously removed this action, which was assigned cause number C06-0556 TSZ. Plaintiff thereafter filed motions to amend the complaint to "clarify" the status of "the Mormon Church" as an additional, independent defendant and to remand. This Court granted the motion to amend and remanded the case to state court, finding the Mormon Church to be an unincorporated association that is a citizen of each state in which it has a member, and thus a non-diverse defendant. On February 13, 2007, the Superior Court dismissed the Mormon

NOTICE OF REMOVAL - 2
No.

GORDON MURRAY TILDEN LLP
1001 Fourth Avenue, Suite 4000
Seattle, WA 98154
Phone (206) 467-6477
Fax (206) 467-6292

Church as a defendant, again leaving only COP as a defendant. The court's order granted

plaintiff 14 days to file a motion to amend his complaint to add another non-diverse defendant,

Gordon Conger. On March 5, 2007, the Superior Court denied plaintiff's motion to amend to

add Mr. Conger. COP then timely removed.

WHEREFORE, Corporation of the President of the Church of Jesus Christ of Latter-day

Saints hereby removes this action from the Superior Court of Washington State in and for King

County to the United States District Court for the Western District of Washington at Seattle.

DATED this _7_ day of March, 2007.

GORDON MURRAY TILDEN LLP

By _[signature]_

Charles C. Gordon, WSBA #1773
Jeffrey I. Tilden, WSBA #12219
Michael Rosenberger, WSBA #17730
Attorneys for CORPORATION OF THE
PRESIDENT OF THE CHURCH OF JESUS
CHRIST OF LATTER-DAY SAINTS

NOTICE OF REMOVAL - 3
No.

Exhibit____ Page 696

1

**PHOTOCOPY**.

FILED

06 MAR 22 PH 2: 31

KING COUNTY
SUPERIOR COURT CLERK
SEATTLE, WA.

SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KING COUNTY

ROB RINDE f/k/a ROBERT LARRY LEROY
PITSOR, JR.

            Plaintiff,

vs.

THE CORPORATION OF THE PRESIDENT
OF THE CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS, a Utah corporation
sole, aka the "MORMON CHURCH" THE
CHURCH OF JESUS CHRIST OF LATTER-
DAY SAINTS, an unincorporated association,

            Defendant.

NO.
**06-2-09825-1 SEA**
COMPLAINT

**WILLIAM L. DOWNING**

I.    **GENERAL ALLEGATIONS**

This case alleges child sexual abuse, sexual assault and sexual battery, intentional infliction of emotional distress (aka the Tort of "Outrage"), civil conspiracy, fraudulent concealment and gross negligence. It arises out of the brutal victimization of plaintiff when he was twelve years old by PAUL H. LEWIS, a Mormon Church Scoutmaster and Melchesidek priest. LEWIS sodomized plaintiff, beat and choked him and forced a wire coat

COMPLAINT - 1 of 10
0
[160316 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7675

hangar up his penis inflicting permanent injury to his urogenital system that resulted in excruciating physical and emotional pain that persists to this day.    When he was approximately fourteen years old Plaintiff disclosed the abuse to civil authorities. Three church officials, including one who was a Seattle attorney, a Bellevue ward bishop and another local church leader knowing that plaintiff's accusations were true pressured plaintiff into not cooperating with law enforcement officials who were investigating LEWIS.    These church officials acted as part of a coordinated effort to shield fellow priest LEWIS from the law and to protect the Mormon Church from scandal and civil liability.

## II.    PARTIES

2.1     Plaintiff ROB RINDE, (known as Larry Pitsor at relevant times), is an adult and at all times relevant hereto was a boy residing with his mother and siblings first in Seattle, and then in Bellevue, Washington. Plaintiff was born December 8, 1969.  ROB RINDE, his mother and his four siblings were recruited into the Church of Jesus Christ of Latter-day Saints (hereinafter the "Mormon Church")1.

2.2     Defendant THE CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST LATTER-DAY SAINTS, a Utah corporation sole, is a corporation duly organized and operating pursuant to the laws of Utah.  This defendant also operates as the "MORMON CHURCH" THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, which is an unincorporated association. The defendant will hereinafter be referred to as COP. In both capacities, COP operates churches within the State of Washington.

## III.    JURISDICTION AND VENUE

3.1     Jurisdiction and venue are proper in this Court because the acts giving rise to this claim occurred in Bellevue, King County, Washington.

COMPLAINT - 2 of 10
0
[160316 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 · FACSIMILE (206) 676-7575

## IV.    FACTS

4.1    "COP" is a corporation governed by a single individual, the President of the Mormon Church, Gordon B. Hinckley. The President wields ultimate and absolute authority within the Mormon Church. Mr. Hinckley, is the "Divine Prophet, Seer and Revelator" of the Church and has the authority to appoint and remove anyone in the Mormon Church, including all members of wards and stakes, at will. The President of the Mormon Church controls everything in the Mormon Church and all of its wards and stakes. As such, the President of the Church has authority to dictate changes in Church policy, discipline, ecclesiastical doctrine or anything else he so chooses. The acts of the President, in his capacity as head of the Mormon Church, are the acts of COP. COP is registered to do business within, and conducts continuous and systematic activities within, the State of Washington. At all relevant times, plaintiff was a member of and attended a Seattle and/or a Bellevue ward of the Mormon Church.

4.2    Adult male members of the Church are eligible to be ordained as "Priests." There are various levels of priesthood, including elevation to the rank of "Elder," "Melchesidek Priest," "High Priest." Elders, Melchesidek Priests and High Priests are held out by the Mormon Church as men that are "morally worthy" and deserving of the trust of its members.

4.3    At all relevant times, the Mormon Church assumed special responsibilities toward its members including a disciplinary and red-flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent members from harm they might inflict.

4.4    The Mormon Church is closely affiliated with the Boy Scouts of America. The Mormon Church is the oldest and one of the largest sponsoring organizations of boy scouting in the United States. Since 1913 the Mormon Church has used the Scouting program as an

COMPLAINT - 3 of 10
0
[160316 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

integral part of its ministry to boys and young men. Scouting is the exclusive youth activity for males in the Mormon Church.

4.5    During the relevant time period, COP adopted guidelines for handling victims of child sexual abuse and sex offenders. They failed to follow their guidelines with respect to LEWIS.

4.6    During the approximate time period of 1981-1983, when RINDE was around twelve years old, LEWIS was RINDE's ward scoutmaster. At that time LEWIS was in the United States Navy and was a transient with no ties or history to the area prior to the church placing LEWIS in the position of Scoutmaster of a Seattle ward to which RINDE was a member.

4.7    Using his position of authority as Scoutmaster and Mormon Priest, LEWIS was able to gain access to RINDE and use that access to groom and then molest, rape and sadistically torture him.

4.8    LEWIS sexually molested RINDE at various locations in the Seattle area including at an apartment to which LEWIS had unrestricted access, in the swimming pool, locker room/shower and steam bath at Sand Point Naval Air Station, and in a motel room in Issaquah.

4.9    The most appalling acts of abuse occurred in a room at Motel 6 in Issaquah in approximately 1983. LEWIS used physical violence against RINDE, sodomizing him and forcing RINDE to orally copulate LEWIS. LEWIS then took a wire coat hangar and forced it into RINDE's urethra causing him to hemorrhage and causing chronic and irreparable injury to his penis and urogenital system. These were acts of childhood sexual abuse, which acts were also violations of chapter 9A.44 RCW or RCW 9.68A.040 or prior laws of similar effect at the time the acts were committed.

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

4.10   In approximately 1984 or 1985, RINDE disclosed the abuse and his mother reported it to the civil and church authorities. A criminal investigation of LEWIS ensued. Church officials described herein above shielded LEWIS from the law. The same church officials urged RINDE, then age fourteen (14), to not cooperate with the law enforcement investigation of LEWIS thereby allowing LEWIS to evade criminal prosecution and to move to another state where he eventually sexually molested more children. These church officials told him that he would not be believed, that it would be "his word" against LEWIS, that his allegations would hurt the image and reputation of the Mormon Church, that RINDE would be ridiculed and derided by church members in addition to other comments calculated to intimidate RINDE from cooperating with the civil authorities investigating LEWIS.

4.11   Church leaders told RINDE that the church would "take care of things," that they would help him with therapy and that they would help his family financially.

4.12   An abuse victim advocate in the King County Prosecutor's office arranged a meeting with RINDE at her office. Before she could meet privately with RINDE, Mormon Church leaders interfered in the investigative process. The three adult male Church officials went to RINDE'S home and told him that they would take him to the meeting at the prosecutor's office downtown.  On the ride downtown in the car the three adult Mormon church officials pressured RINDE not to cooperate with law enforcement officials.

4.13   At the meeting, the church official that was a licensed Washington attorney told the victim's advocate that he was RINDE'S attorney which was untrue.  The church official/lawyer told the victim advocate he would not permit her to interview RINDE in private.

4.14   RINDE succumbed to the Church's pressure not to cooperate.  As a result, charges against LEWIS were not filed.  Soon thereafter LEWIS moved to another state and joined a another ward of the Mormon Church.

COMPLAINT – 5 of 10
0
[160316 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 – FACSIMILE (206) 676-7575

Exhibit   Page 701

## V.    FIRST CAUSE OF ACTION
### (Negligence based on Common Law and breach of Fiduciary Duty)

5.1    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further alleges:

5.2    Defendants COP and Mormon Church had a common law duty to plaintiff to protect him from the criminal acts of LEWIS.

5.3    Defendants COP and the Mormon Church breached their duty to protect plaintiff and plaintiff damaged thereby.

5.4    Defendants COP had a "special relationship" with plaintiff and with LEWIS. They knew or should have known that LEWIS was a sadistic serial pedophile that was actively abusing children. COP had a duty to use reasonable care in the hiring, supervision or retention of LEWIS as scoutmaster and also had a duty to warn or protect foreseeable victims including plaintiff. LEWIS' positions within the defendants' church were causally connected to and served to enable LEWIS to gain access to and abuse plaintiff.

5.5    The Mormon Church's bishops, stake presidents and Boy Scout leaders within the State of Washington breached both a duty of reasonable care in hiring, supervising or retaining LEWIS as scoutmaster and by failing to warn or protect children and/or by failing to report their knowledge of LEWIS's sexual abuse of children to civil authorities,.

5.6    But for the breach of duty, acts, omissions and intentional misconduct of COP and the Mormon Church, church bishops, boy scout leaders, stake presidents and area presidents, LEWIS would not have been able to abuse plaintiff.

5.7    COP's failure to adhere to its previously adopted guidelines for handling victims of child sexual abuse and sex offenders caused harm to the plaintiff. The harm plaintiff suffered as a result of defendant's negligence was the harm contemplated in COP's Handbook of Instruction to its clergy.

COMPLAINT - 6 of 10
0
[160316 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

5.8    Notwithstanding Defendant's duties, defendant failed to train and supervise its hierarchal clergy in the proper implementation of its guidelines, policies and procedures regarding the treatment of victims of child sexual abuse, to monitor and insure compliance with their guidelines, policies and procedures, treatment of child sexual abusers and reporting of child sexual abuse.

5.9    Defendants knew, or in the exercise of reasonable care should have known, that its failure to report LEWIS to appropriate law enforcement or social services agencies would result in LEWIS sexually abusing children including plaintiff, and in plaintiff failing to obtain adequate treatment.

5.10    As a result of the molestation, breach of trust, and statutory violations, plaintiff has suffered and will continue to suffer physical and emotional pain and dysfunction to his general, non-economic damage in an amount to be determined. As a further result of the sexual abuse, plaintiff incurred and/or will continue to incur costs for counseling and psychological treatment, and has lost earning capacity to his damage in an amount to be proved at trial.

## VI.    SECOND CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

6.1    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further allege:

6.2    Defendant knew, or in the exercise of reasonable care should have known, that tampering with a witness was unlawful and that such conduct as pressuring victims not to disclose, would be harmful to the best interests and psychological well-being of child victims of sexual abuse, including plaintiff.

6.3    Defendants knew or should have known that pressuring plaintiff not to cooperate with the civil authorities' investigation of LEWIS would greatly exacerbate

COMPLAINT - 7 of 10

0
[160316 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

plaintiff's physical, emotional and psychological injuries and, in fact, the defendant's conduct greatly exacerbated plaintiff's physical, emotional and psychological injuries.

6.4    Defendant knew that plaintiff had been subjected to horrific sexual abuse at the hands of its Scoutmaster and Melchesidek Priest PAUL LEWIS and knew that plaintiff had and would continue to suffer emotional, psychological and physical injuries and that unless he received appropriate assistance from civil authorities, that his injuries would be greatly exacerbated and much more difficult to treat with the passage of time.

6.5    The Church, being more concerned about shielding itself from scandal and potential civil liability and intent on protecting the public image of its all-male Mormon priesthood at the expense of aiding a gravely injured child that was plaintiff, pressured plaintiff in to not cooperating with the civil authorities with full knowledge of or with reckless disregard of the emotional and psychological injuries its conduct was certain to inflict.

6.6    Defendant's conduct was an outrageous violation of societal norms and went so far beyond all possible bounds of decency, so as to be regarded as atrocious, and utterly intolerable in a civilized community, and resulted in severe emotional distress.

6.7    As a further result of the defendant's intentional conduct, plaintiff has incurred and/or will continue to incur costs for counseling and psychological treatment, and has lost earning capacity to his damage in an amount to be proved at trial. As a result of the defendant's conduct, plaintiff has suffered and will continue to suffer physical and emotional pain and dysfunction to his general, non-economic damage in an amount to be proved at trial.

## VII.    THIRD CAUSE OF ACTION
### (Estoppel and Fraudulent Concealment)

7.1    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further allege:

7.2    Church defendants engaged in a plan of action to cover up incidents of the sexual abuse of minors by its Melchesidek priests and scout leaders and to prevent disclosure,

COMPLAINT - 8 of 10

O

[160316 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

prosecution and civil litigation including, but not limited to: failure to report incidents of abuse to law enforcement or child protection agencies, denial of abuse it had substantiated, the transfer of abusive Melchesidek priests and scoutmasters, coercion of victims and their families and by failure to seek out and redress the injuries these men had caused. Based on these actions, the defendants engaged in fraudulent concealment and are estopped from asserting defense of limitations.

## VIII.  FOURTH CAUSE OF ACTION
### (Civil Conspiracy)

8.1    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth under this count and further allege:

8.2    Defendant and others conspired to cover up incidents of sexual abuse of minors by its Mormon priests and scout leaders, including LEWIS and to prevent disclosure, prosecution and civil litigation including, but not limited to: failure to report incidents of abuse to law enforcement or child protection agencies, denial of abuse it had substantiated, aiding criminal child molesters in evading detection, arrest and prosecution, allowing them to cross state and international borders for purposes of gaining access to uninformed parents whose innocent children could be sexually abused, failure to warn, and by failure to seek out and redress the injuries its Melchesidek priests and scoutmasters had caused.  Based on these actions, the defendants conspired for the unlawful purpose of concealing and suppressing information on the danger and threat that scoutmaster and priests like LEWIS posed to unsuspecting children, including the plaintiff.

COMPLAINT - 9 of 10
0
[160316 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 - FACSIMILE (206) 676-7575

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter a judgment against the defendant and in plaintiff's behalf, for the following:

1.    For special damages for medical treatment expenses, lost earnings, and lost earnings capacity, and the expenses of medication and other special expenses, both in the past and continuing into the future, in amounts to be determined at the time of trial;

2.    For all general damages, for physical, mental and emotional injury and disturbance, and other disorders resulting from the acts complained of herein;

3.    For attorney's fees, prejudgment interest, costs and exemplary damages allowed by RCW 9.68A.130 and other law; and

4.    For such other and further relief as this Court determines just in the premises.

Dated this 22 day of March, 2006.

GORDON, THOMAS, HONEYWELL,
MALANCA, PETERSON & DAHEIM LLP

By:_____
    Michael T. Pfau, WSBA No. 24649
    mpfau@gth-law.com
    Michelle A. Menely, WSBA No. 28353
    mmenely@gth-law.com
    Co-Counsel for Plaintiff


LAW OFFICES OF TIMOTHY D. KOSNOFF

By:_____
    Timothy D. Kosnoff, WSBA No. 16586
    timkosnoff@comcast.net
    Co-Counsel for Plaintiff

COMPLAINT - 10 of 10
0
[160316 v05.doc]

LAW OFFICES
GORDON, THOMAS, HONEYWELL, MALANCA,
PETERSON & DAHEIM LLP
ONE UNION SQUARE
600 UNIVERSITY, SUITE 2100
SEATTLE, WASHINGTON 98101-4185
(206) 676-7500 • FACSIMILE (206) 676-7575